Docket # _____   TN # _____

**Docket #** (vertical, right margin)

## The State of New Hampshire
## COMPLAINT

☐ **VIOLATION**      ☐ **CLASS A** **MISDEMEANOR**
                      ☐ **CLASS B**                        ☐ **FELONY**

YOU ARE TO APPEAR BEFORE THE COURT LISTED BELOW
AT _____ O'CLOCK IN THE AM/PM ON _____ YR. ___
UNDER PENALTY OF LAW TO ANSWER TO A COMPLAINT
CHARGING YOU WITH THE FOLLOWING OFFENSE:

TO THE .................... COURT, COUNTY OF ....................

**THE UNDERSIGNED COMPLAINS THAT:** PLEASE PRINT

NAME ...........................................................................
       Last Name                    First Name                 Mi

.................................................................................
Address                          State                              Zip

DOB ......... OP. LIC.# .............................................

| Sex | Race | Height | Weight | Color of Hair | Color of Eyes |

WRITE OUT:

☐ COMM. VEH.  ☐ COMM. DR. LIC.  ☐ HAZ. MAT.  ☐ 16+ PASSENGER

AT ...............................................................................
                          (Location)                              A.M.

ON THE .......... DAY OF ............... YR. ...... at ..... P.M.

on/at in said county and state, did commit the offense of ...............

........................................... contrary to RSA ...........

and the laws of New Hampshire for which the defendant should be held to

answer, in that the defendant did

against the peace and dignity of the State.

☐ SERVED IN HAND

Complainant _____   Printed Name _____  Dept. ____

**Making a false statement on this complaint may result in criminal prosecution.**

Oath below not required for police officers unless complaint charges class A misdemeanor or felony (RSA 592-A:7, I).

Personally appeared the above named complainant and made oath that the above
complaint by him/her subscribed is, in his/her belief, true.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH  03864

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

**June 16, 2016**

**JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH  03896**

Case Name:   **State v. Josephine Amatucci**
Case Number:   **464-2014-CR-00836**

The following Order was entered regarding Defendant's "Motion Ordering Judge Patten to Remove My Conviction Immediately":

6/9/2016 - This judge has recused himself from any further matters or pleadings
involving or filed by Ms. Amatucci.

Elaine J. Lowe
Clerk of Court

(464260)

C:  Simon Robert Brown, ESQ

# THE STATE OF NEW HAMPSHIRE

CARROLL, SS                                              SUPERIOR COURT

## IN RE: JOSEPHINE AMATUCCI

(Circuit Court Docket Number 464-2014-CR-00836)

### ORDER

On August 23, August 29, and September 1, 2016, Josephine Amatucci

("Amatucci") presented the Superior Court with three pleadings and corresponding

attachments. All three of her pleadings address her request for an expedited jury trial

regarding an incident that occurred in the Spring of 2014.  The matter went to trial,

heard by Circuit Court (Patten, J.) in June 2014.

Amatucci was found not guilty in the Circuit Court on one count of speeding and

guilty of one count of disobeying an officer. The disobeying an officer charge was

initially brought as a class A misdemeanor.  Ms. Amatucci was sentenced to a monetary

fine, to be suspended for one year conditioned upon good behavior, as well as a

suspended driver's license and a suspended motor vehicle registration.  Both

suspensions were held in abeyance for one year conditioned upon good behavior.

In April 2016, the New Hampshire Supreme Court issued an Order in this case -

affirming Amatucci's conviction. See, State of New Hampshire v. Josephine Amatucci,

No. 2015-0562 (April –, 2016).  The Supreme Court unanimously affirmed the Circuit

Court's decision.  For the above stated reasons, Amatucci is barred from a jury trial in

the Superior Court.



9-17-14

# The State of New Hampshire

COUNTY OF CARROLL    3RD CIRCUIT–DISTRICT DIVISION–OSSIPEE

### State of New Hampshire v. Josephine Amatucci
### Docket No: 464-2014-CR-00838

#### ORDER REGARDING PRODUCTION OF EVIDENCE

Violation TR
Speedy

Defendant, Josephine Amatucci, was scheduled this date for trial in connection with a Class A Misdemeanor complaint charging Disobeying an Officer and a violation level offense of Speed-Basic Rule. Ms. Amatucci had filed a Motion for Jury Trial on September 16, 2014. The court explained that the district court could not convene a jury trial and could not simply transfer her case to the superior court. The court explained District Court Rule 2.14 as an alternative method for her to get the case before the superior court for jury trial. Ms. Amatucci would not accept that the court would need to find her guilty based on the State's offer of proof in order to comply with a Rule 2.14 transfer to the superior court. It did not assuage her to remind her that she would be maintaining her plea of not guilty.

The court moved on to a discovery issue raised by Ms. Amatucci. In a prior hearing, Judge Patten had ordered the Wolfeboro Police Department to provide Ms. Amatucci with a copy of a video tape depicting Ms. Amatucci in the lobby of the Wolfeboro Police Department's lobby on May 7, 2014. Prosecutor Morgan advised the court that a copy had been provided to her by mail on September 5, 2014. Ms. Amatucci asserts that the disc supplied to her does not depict her interaction in the lobby on May 7, 2014, but rather at some other time. Attorney Morgan explained that the security camera in the lobby is a constant feed system which records over itself. In order to comply with Judge Patten's order, the department contacted the installer of the system, Knight Security, to have the data for May 7, 2014 retrieved. The disc sent to Ms. Amatucci was the result of Knight Security's efforts. In that there was no one present from Knight Security, the court ordered the Wolfeboro Police Department to produce for further hearing the representative who did the retrieval in order for Ms. Amatucci and the court to inquire

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
NH CIRCUIT COURT

Carroll County                                          3rd Circuit Court-District Division

IN RE: STATE OF NEW HAMPSHIRE V. JOSEPHINE AMATUCCI

464-2014-CR-00836

ORDER AFTER TRAIL ON THE MERITS

This matter came on for a trial on the merits of two complaints entered against the defendant. The State and defendant participated. After due consideration of the testimony and other evidence submitted, as well as the court's view of the roadway area involved, the court enters the following findings of fact, rulings of law and order. The defendant is found NOT GUILY of the violation offense of speeding, complaint and GUILTY of the class B misdemeanor for disobeying a police officer.

The State entered two complaints against the defendant. The violation level offense alleges an event of what is commonly referred to as speeding. The specific allegations are that on May 7, 2014, the defendant drove her vehicle on a way, identified as Center Street, Wolfeboro, NH, at a speed greater than was reasonable and prudent under the conditions prevailing, and specified that defendant was traveling at a speed of 42 mile per hour, when the prima [sic] "facia" lawful speed at the time and place of violation being 30 mph. The class B misdemeanor offense alleges that on the same date and location, while operating her motor vehicle, she purposely neglected to stop when signaled to stop by law by a law enforcement officer, who was in a fully marked police cruiser and who signaled defendant to stop by use of emergency lights and sirens.

The evidence presented at trial shows, beyond a reasonable doubt, that defendant was operating her motor vehicle on a public way in New Hampshire, being Center Street in Wolfeboro, NH, on May 7, 2015. The evidence also shows that the officer who filed the complaint was a certified radar operator and that the radar unit in the officer's cruiser was certified and still within the certification period when the event occurred. The officer testified that he checked on the operational accuracy of the radar unit in his

the radar unit to be operating properly and accurately.

The evidence presented through the officer's testimony shows that he was traveling toward the downtown area of Wolfeboro on Center Street, and was advised by dispatch that the person of interest involved in the incident he was responding to had left that location. It is shown by dispatch log, State's exhibit 7, that the officer had been advised of description of the defendant's car. Although he testified that he was not on the look-out for her, it is reasonable to infer that he was indeed on the look-out for the defendant. The dispatch log, State's Exhibit 7, appears to support this inference.

The officer testified that when he was near what is commonly referred to as the "Mast Landing" area, he observed a vehicle come around the curve which appeared to be speeding. He testified that he activated his radar at a point that two vehicles were in the radar's range of interception. The radar picked up the signal from the car moving the fastest. It was ultimately determined that vehicle was driven by the defendant and the radar readout showed that defendant was traveling 42 miles per hour in a posted 30 mile per hour zone. This area, showing the officer's point of view, is depicted on the two photographs entered as State's exhibit 6.

It is at this point that the officer advised dispatch that he was "attempting to stop her on Center Street" and gives dispatch the defendant's license plate number. Exhibit 7 at 1252. At 1253, the officer advises dispatch that the "reason for the stop was 42 in a 30 by Mast Landing". Exhibit 7. Clearly the implication of this exchange is that the officer knew that the vehicle he observed was the defendant and he was going to try and stop her. In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his cell phone about who he should be pursuing.

The officer testified that he activated his blue strobe lights and siren on his cruiser, pulled into the Mast Landing parking lot to turn around and began to pursue the defendant. The defendant continued to travel northbound on Center Street, Route 28, albeit apparently not speeding along the way, for approximately four miles, before she pulled over in response to a Carroll County Sheriff's Department standing in the road and signaling her to stop.

There was some conflicting evidence presented in the officer's report which referred to two cars being situated ahead of the defendant's vehicle, whereas in his testimony, he stated that there only two cars, of which defendant was one, and the one that was traveling the fastest. Otherwise, there was no specific testimony about the road or whether conditions, the amount of traffic on the road generally, or on any side street, any pedestrian activity, or any other specific evidence of actual or potential hazards under those circumstances on the date and time of the alleged offense. The court's view of the location where defendant is alleged to have been speeding shows a well-traveled, narrow roadway, with multiple intersecting streets and driveways, but a clear view of the roadway ahead in either direction for some distance.

RSA 265:60, I prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in the posted 30 miles per hour zone, "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Here we have the seemly conflicting evidence of no specific conditions presented that there were actual or potential hazards at that place and time that the defendant was traveling 12 miles per hour over the posted speed limit, but that that speed is prima facie unreasonable and imprudent. This conflicting evidence leaves the court with no basis for a finding, beyond a reasonable doubt, that the defendant was traveling at a speed which was unreasonable and imprudent for the conditions existing, having in mind the actual and potential hazards associated with those conditions. Therefore, there must be a finding of not guilty.

As to the complaint alleging the class B misdemeanor for disobeying a police officer, RSA 265:4, I, (c) instructs that while driving a vehicle, no person shall purposely neglect to stop when signaled to stop by any law enforcement officer who signals the person to stop by means of audible or visual emergency warning signals. Clearly the evidence presented shows, beyond a reasonable doubt, that the defendant did not stop when signaled to do so by the officers, using his emergence warning lights and siren, for upwards to a 4 mile distance. While there is no direct evidence of the defendant's state of mind

esented, the circumstances presented by the evidence allows for no other conclusion than that the defendant acted purposefully in choosing to not stop as directed by the officer. Therefore, she is found guilty of the charge of disobeying a police officer.

While the specific statute specifies that a person who violates the provisions of RSA 265:4, I, (c) shall be guilty of a class A misdemeanor, the State made the choice before the beginning of trial to prosecute the matter as a class B misdemeanor, even after the defendant had had the benefit of a court appointed counsel through portions of the pre-trial proceedings, and then discharged her counsel by her own choice, and pursued the matter as a self-presented defendant.

The clerks' office will scheduled the matter for a sentencing hearing on the class B misdemeanor conviction for disobeying a police officer.

So Ordered.

_____6/25/2015_____
Date

_____
Judge
James R. Patten, Justice
3rd Circuit Court

4 a

```
 1    this information, so I want to make sure you get it.
 2              They've provided me redacted copies from the
 3    Attorney General.  I'm providing you with unredacted
 4    copies that we have apparently and I will -- I'll get
 5    you those copies with no redactions.  Okay?
 6              MS. AMATUCCI:  I'm surprised.
 7              THE COURT:  Okay.
 8              MS. AMATUCCI:  Okay.
 9              THE COURT:  Now, there's --
10              MS. AMATUCCI:  Now, an important issue --
11              THE COURT:  I'm not done.
12              My order -- I want to amend my order of the
13    21st where I granted your motion to seal the defendant's
14    motion to seal the -- I want to unseal the memorandum,
15    document number 162, and the privilege log document,
16    162-1, and I want to provide those documents to
17    Mrs. Amatucci.  Let's give them to her today --
18              THE CLERK:  Okay, judge.
19              THE COURT:  -- after the hearing.
20              Okay.  Now, go ahead.
21              MS. AMATUCCI:  Okay.  I want to make it clear
22    that the reason why you said you wasn't going to do
23    anything but have a hearing was because of the two
24    issues that I had to -- I had to do, which I handed you
25    this morning, that I had to add -- that I had asked you
```

PAGE 72

1    THE COURT:  Yes, absolutely.

2    MS. AMATUCCI:  So I say you are not

3  determining the law.

4    THE COURT:  I'm determining --

5    MS. AMATUCCI:  So we have to clear the law.

6    THE COURT:  Let me tell you what I'm

7  determining; that the way you just described Monell, the

8  Monell doctrine as applied to a town, is incorrect.

9  It's not correct.  That's the ruling.

10    MS. AMATUCCI:  All right.  What are you --

11  what -- how -- what is correct, according to your

12  interpretation?

13    THE COURT:  I've already repeated it three

14  times.  It is not --

15    MS. AMATUCCI:  You said --

16    THE COURT:  It is not -- it is not that

17  policymakers are the proximate cause of your injury, the

18  proximate cause of the violation.  It is that the -- it

19  is that the conduct undertaken by everyone involved in

20  the case -- or anyone involved in the case -- is based

21  on a policy or practice of the town.  All right?  That':

22  what you have to prove --

23    MS. AMATUCCI:  Okay.

24    THE COURT:  -- not just that -- not just that

25  a policymaker is the one that committed it.  That's a

1   different type of claim.  It's a different burden of

2   proof.

3            I'm not going to belabor it.  I'm just going

4   to ask you --

5            MS. AMATUCCI:  Okay.  I -- I have it clear now

6   what you're trying to say.

7            Are we talking about my Fourth Amendment

8   malicious prosecution?

9            THE COURT:  Yes.

10           MS. AMATUCCI:  And you're saying the town has

11  to be the one which -- what do you mean by the town --

12           THE COURT:  Yeah.

13           MS. AMATUCCI:  -- and --

14           THE COURT:  What the law --

15           MS. AMATUCCI:  -- isn't Chase the town and the

16  prosecutor the town?

17           THE COURT:  Chase and the prosecutor, yes, are

18  agents of the town, and the town can be liable for their

19  conduct under certain circumstances that the law

20  provides for.  One of them is your Monell claim.  But to

21  prove it -- you don't just have to prove that they were

22  policymakers and that they undertook this conduct.  You

23  have to prove that the conduct was pursuant to a policy

24  or practice of the town.

25           MS. AMATUCCI:  That's right.  So what they



1  did, what Chase and -- what Chase and the prosecutor did

2  proved -- as policymakers of the town shows that that

3  was a pattern by the town because they are the town.

4  Who's more the town than the chief and the prosecutor?

5          THE COURT:  I understand.

6          MS. AMATUCCI:  Okay?

7          THE COURT:  Yeah.

8          MS. AMATUCCI:  So now --

9          THE COURT:  But here's the difference.  Here's

10  the difference.  Here's maybe what you're not

11  appreciating.  I -- I mean this when I say this.  I'm

12  not going to stand here with you today and argue about

13  the law all day, but here's the difference.

14          The fact that they are the town, as you say,

15  the -- the chief and the prosecutor, the fact that they

16  are the town isn't always enough because suppose this

17  was like an isolated incident -- I'm not suggesting it

18  is, I have no idea -- but suppose it was an isolated

19  incident and what they did went against the town's

20  policy; the town had a policy and they adhered to it in

21  their practice every day to do something different to

22  a -- to operate differently than the way they did with

23  you, your evidence would not be enough to establish a

24  Monell claim of liability against the town because you

25  have to show not just that they did it, not just that



Monell CLAIM

```
1    they caused it, but they did it pursuant to a policy or
2    practice of the town; it's the town's custom or policy
3    to do to citizens what it did to you.  That's your
4    burden.
5            MS. AMATUCCI:  Okay.  Wait.  Even if they did
6    it once --
7            THE COURT:  Yeah.          .
8            MS. AMATUCCI:  -- that is a policy and
9    pattern --
10           THE COURT:  No.
11           MS. AMATUCCI:  -- if it is the policymakers.
12   Yes.
13           THE COURT:  I see your argument --
14           MS. AMATUCCI:  Yes.
15           THE COURT:  I see --
16           MS. AMATUCCI:  I have the evidence.  It
17   isn't -- it is accepted that even if it has been done --
18           THE COURT:  But look at --
19           MS. AMATUCCI:  -- once --
20           THE COURT:  It doesn't make it -- you already
21   have a case against Chase.  You have a case against
22   Chase.
23           MS. AMATUCCI:  No, I want this issue cleared.
24   I want --
25           THE COURT:  Listen, I'm telling you --
```

Page 87

1   of her rate of speed?

2          MR. MULLEN:  I have not found any evidence

3   where she -- about her rate of speed.  I did see one

4   comment, I believe, in a pleading where I think the

5   Court said I was not speeding.

6          THE COURT:  Yeah.

7          MR. MULLEN:  I -- but I have not seen any

8   evidence in -- in this case and in a previous case that

9   was dismissed last year, your Honor, where she said what

10  her rate of speed was.

11         THE COURT:  Okay.  Let me ask -- she has her

12  hand up.  I want to give her a chance to add something.

13         Yes, Mrs. Amatucci?

14         MS. AMATUCCI:  Hello?  This is not about

15  speeding.

16         THE COURT:  I knew you were going to say that.

17         MS. AMATUCCI:  It's about the Fourth

18  Amendment, which is the arrest.  So tell him to stop it.

19  I don't want to hear about speeding.

20         THE COURT:  Please proceed.

21         MR. MULLEN:  Okay.  So, your Honor, I think

22  I've talked about with regard to his affidavit, he's

23  that's not been contradicted by anybody.  So on that

24  basis, we believe that he had probable cause and having

25  probable cause, the malicious prosecution claim fails.

[handwritten annotation: NOT TALKING ABOUT ARREST FOR SPEEDING]

1    speeding?  Why was I prosecuted for the speeding?

2              MR. MULLEN:  I believe that I did put it in

3    the record with the documents from the appeal to the

4    New Hampshire Supreme Court.  I think those were

5    attached.  But if the Court would like, I can get those

6    documents to you.

7              THE COURT:  I -- I actually -- well, the

8    reason I -- I raised that is because that citation to

9    appear, in conjunction with this bond, which is for --

10   which shows that her detention appears to have been for

11   disobeying and failure to stop, that would -- that would

12   strengthen the inference that the arrest, detention,

13   prosecution -- well, at least the -- not the

14   prosecution, but the arrest and detention, actually

15   don't attach to the speeding charge.

16             MR. MULLEN:  And I -- I can get a copy of

17   that.  I thought I provided it to your Honor, but I have

18   not -- and I will look at one of my attachments.

19             THE COURT:  Yeah.

20             MR. MULLEN:  If I haven't, I can -- I can get

21   that for you, your Honor.  I have a copy of the

22   citations.

23             THE COURT:  All right.  I'm curious to see

24   that.  But go ahead.

25             I don't think I'm going to ask you to

1  prosecution.  The fact was -- all right, I was going a

2  hundred miles an hour.  Okay?  You want to hear that?

3  Let's say I was going a hundred miles an hour.  He still

4  could not have arrested me because speeding is not a

5  crime in New Hampshire.

6          So if you don't -- listen.  You are giving me

7  a hard time because you're not fair.  You're not

8  actually coming out and saying this is all baloney.

9          THE COURT:  It's not baloney.

10          MS. AMATUCCI:  I --

11          THE COURT:  It's not baloney.

12          MS. AMATUCCI:  My foot -- you're sitting there

13  to determine the law, the federal law.  That's all

14  you're supposed to do.  You only have to say that I was

15  arrested unlawfully, seized unlawfully, because speeding

16  is not a crime.

17          THE COURT:  It appears to --

18          MS. AMATUCCI:  That's all you have to say.

19          THE COURT:  It appears to me you were arrested

20  lawfully for disobeying a police officer and failing to

21  stop.

22          MS. AMATUCCI:  This is not about disobeying a

23  police officer.  This is not about that.  That's a

24  separate claim.

25          THE COURT:  That's what -- that's what you

75

```
 1            Did you look at all the evidence?
 2            THE COURT:  Yes.
 3            MS. AMATUCCI:  Okay.  Did you see where the
 4   arrest is considered unlawful in New Hampshire for
 5   speeding?  Did you see that?
 6            THE COURT:  I -- what I saw was that you were
 7   arrested for -- you were arrested for failing to obey a
 8   police officer and failing to stop.  That's what I saw
 9   happened in this case.
10            MS. AMATUCCI:  A Fourth Amendment malicious
11   prosecution, which is what you allowed, is all about the
12   unlawful arrest, not about --
13            THE COURT:  I know, but the evidence
14   doesn't -- the evidence does not establish that you were
15   arrested for speeding.  The evidence establishes that
16   you were arrested for failing to obey and disobeying a
17   police officer and refusing to stop.  That's what the
18   evidence suggests.  And you haven't done anything --
19            MS. AMATUCCI:  I was --
20            THE COURT:  -- to rebut that.
21            MS. AMATUCCI:  -- prosecuted for speeding.
22            THE COURT:  But I --
23            MS. AMATUCCI:  Is that evidence?
24            THE COURT:  Yes, but you were also prosecuted
25   at the very same time --
```

Amendment violation she has alleged was caused by a Town policy
of refusing to address police misconduct. "An underlying
constitutional tort is required to proceed under a municipal
liability theory. Where, as here, there is no constitutional
violation by the employees of the municipality, there can be no
liability predicated on municipal policy or custom." Leavitt v.
Corr. Med. Servs., Inc., 645 F.3d 484, 504 (1st Cir. 2011). As
the evidence before the court demonstrates that no Town employee
violated Mrs. Amatucci's Fourth Amendment rights, the Town is
entitled to judgment as a matter of law as to the malicious
prosecution claim asserted against it under a theory of
municipal liability.

V.    Qualified Immunity

The defendants argue that they are entitled to qualified
immunity with regard to Mrs. Amatucci's Fourth Amendment
malicious prosecution claims. "Qualified immunity protects
government officials from trial and monetary liability unless
the pleaded facts establish '(1) that the official violated a
statutory or constitutional right, and (2) that the right was
"clearly established" at the time of the challenged conduct.'"
Marrero-Mendez v. Calixto-Rodriguez, 830 F.3d 38, 43 (1st Cir.
2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).

23  (EG)

*EXHIBIT*
*G*

Federal Rules of Civil Procedure › TITLE VII. JUDGMENT › Rule 56. Summary Judgment

# Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

*IN the Record*

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

THE STATE OF NEW HAMPSHIRE

CARROLL, SS.                                                    SUPERIOR COURT

Town of Wolfeboro

v.

Josephine Amatucci

Case No. 212-2015-CV-00090

## PLAINTIFF'S SUPPLEMENTAL POST-TRIAL MEMORANDUM

At the trial in this matter on April 13, 2016, Plaintiff Town of Wolfeboro submitted

evidence of two matters now pending in the United States District Court ("USDC") based on the

Defendant's arrest on May 7, 2014 for speeding and failure to obey police officers. See Exhibits

99-101 and 105 (pp. 40-41).  Subsequent to the trial and the filing of Plaintiff's Post-Trial

Memorandum, Plaintiff has become aware of three additional lawsuits that Defendant has filed in

USDC that are relevant to the issues in this case and which may be of aid to this Court.  The

three additional cases are as follows:

1.  Josephine Amatucci v. Stuart Chase, Wolfeboro Police Department and Town of
    Wolfeboro (16-cv-00206-SM) filed on April 11, 2016;

2.  Josephine Amatucci v. Greg Dube (16-cv-00207-JD) filed on April 28 2016; and

3.  Josephine Amatucci v. Stuart Chase (Police Chief) and Wolfeboro Police Department
    (16-cv-00208-JL) filed on May 5, 2016.

All five cases are still pending in USDC, awaiting orders of notice or other disposition.

Copies of Defendant's three additional Complaints filed in USDC (without the

voluminous attachments thereto) are attached hereto as Exhibits A, B and C.  The first case is a

suit for damages against the Wolfeboro Police Chief, the Wolfeboro Police Department and the

Town based upon the events of May 7, 2014.  Defendant had already filed several cases in this

- Magistrate Judge Muirhead's Report and Recommendation dated January 20, 2006 in the first suit filed by Defendant in USDC (Exh. 50); and

- Magistrate Judge McCafferty's Report and Recommendation dated May 18, 2012 (Exh. 63) in the third suit filed in USDC by Defendant based upon her arrests in 2002 and 2003.

To date, Defendant has filed seven lawsuits in USDC and ten lawsuits in this Court based primarily on her allegedly unlawful arrests in 2002 and 2003. In addition, Defendant has to date filed eight lawsuits in USDC and three in this Court based primarily on the erratic driving incident in August 2013 and/or her arrest for speeding and failure to obey Police Officers on May 7, 2014. It is the pleadings, orders and decisions in these lawsuits which are the facts that Plaintiff relies upon in asking this Court for relief under RSA 507:15-a.

## II.   RSA 507:15-A IS CONSTITUTIONAL UNDER BOTH THE NEW HAMPSHIRE AND U.S. CONSTITUTIONS

### A. The Court Should Decline To Analyze RSA 507:15-a's Constitutionality Under New Hampshire's Constitution Because Defendant Has Failed To Specifically Cite Its Provisions.

In her various pleadings, Defendant has alluded that RSA 507:15-a may deny her constitutional right to access the courts under notions of due process and equal protection. To raise a state constitutional claim, the party has to specifically invoke a provision of the State Constitution. *Matter of Kempton*, 166 N.H. __, 119 A.3d 198, 205 (2015). Defendant's various pleadings in this matter, as well as her testimony at the April 13, 2016 trial, failed to cite a provision of the New Hampshire Constitution. Accordingly, the Court should decline to analyze whether RSA 507:15-a is constitutional under the New Hampshire Constitution.

7/26/18

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding. *GOOD FAITH* *NOT ENOUGH*

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

14

speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to

prove she was speeding. However, the court also found that she had an obligation to stop for the

police, that she failed to do so for over 4 miles and that she was, therefore, guilty of failing to

stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and

failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the

truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose,

*AND*

but it would not have mattered to them, and therefore deny those allegations. Defendants deny all

the remaining allegations of paragraph 9.  Also see the response, above, to Paragraph 7.

Defendant O'Brien further specifically denies all the allegations against him. His involvement in

this matter, contrary to the plaintiff's false and groundless allegations, was extremely limited.

Mr. O'Brien responded, as he was legally required to do, to a call from police dispatch that Ms.

Amatucci was causing a disturbance at the Town offices. By the time  Ofc. O'Brien arrived at

the Town offices, Ms. Amatucci had already left. Mr. O'Brien's sole involvement after that was

to make a radio call back to police dispatch confirming that Ms. Amatucci was no longer at

Town Hall. O'Brien did not make a phone call to Ofc. Emerson, did not call the Sheriff's

Department and did not request anyone to chase or stop or arrest Ms. Amatucci. He was not in

any way involved in the pursuit of Ms. Amatucci and was not present when she was pursued,

stopped or arrested. After Ms. Amatucci was arrested and taken away, Officer O'Brien went to

the location of Ms. Amatucci's car to relieve Chief Chase so that Chief Chase did not have to

wait for the tow truck to arrive. As to the statement in the police log about Ofc. Emerson trying

to stop "her," that was not a quote of Ofc. Emerson's police call to dispatch, but rather a

conflation in the log prepared by the dispatcher, William Riley, of Emerson's statement that he

was turning around to chase a speeding car (which he did not know was Ms. Amatucci), Officer

*This verifies My Entire Fourth Amendment*
*Claim - I WAS UNLAWFULLY ARRESTED*

9

*1/27/17*

*BINGO*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
         Plaintiff,

v.                                                        Case No.:    15-CV-00356-JL  *Void*

James O'Brien, et al,
         Defendants.

*NOW CASE 00-234*
*DID A VOLUNTARY DISMISSAL*

### DEFENDANT CHASE'S OBJECTION
### TO PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC 149) OF
### JUDGE LAPLANTE'S ORDER (DOC 147) BASED ON THE MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION (DOC 142)

Defendant Chase, through counsel, objects to plaintiff's Motion for Reconsideration (Doc

149) for the following reasons:

The plaintiff's Motion for Reconsideration is based on the premise that Judge Laplante

misunderstood plaintiff's proposed claim regarding alleged malicious prosecution. There is no

evidence the Judge misunderstood anything or that the claimed misunderstanding would have

mattered. Rather, he approved the Magistrate Judge's Report and Recommendation (Doc 142)

which lays out the bases in detail for denying plaintiff's proposed amendment as futile.

The plaintiff's Motion for Reconsideration also falsely argues that Judge Patten, in the

criminal case against her, found no probable cause. On the contrary, there is no place in that

Judge's order where he finds "no probable cause" expressly or impliedly. Ms. Amatucci was

charged with speeding and failure to obey an officer. The judge in that case specifically found

that Ms. Amatucci was driving 42 mph in a 30 mph zone and found that she failed to stop for

police pursuing her for about four miles. See Defendants' Motion for Judgment on the Pleadings

and exhibits to that motion. Thus, there was probable cause for her arrest and prosecution on

*The Judge LAPLANTE is Trying to  1° SAY MY ARREST WAS ONLY*
*For the DISOBEYING offense. This Proves Otherwise.*

both speeding and failure to obey.[1]  The trial judge found that Ms. Amatucci was not guilty of

speeding (even though she exceeded the speed limit by 12 mph) solely because the prosecutor

failed to introduce evidence of road conditions that day.  That does not mean that there was no

probable cause for the arrest or the prosecution.

The prosecutor's failure to put in such evidence, or even Ms. Amatucci's success in

beating the speeding violation, does not retroactively create lack of probable cause for the arrest

and prosecution.  In fact, the trial court found (and Ms. Amatucci is bound by collateral estoppel

on that point), that she exceeded the speed limit by 12 mph.  Moreover, the trial judge found that

she failed to obey police officers pursuing her for almost four miles and that she was guilty of the

crime she was charged with, failing to obey.  Thus, the trial court's findings clearly establish the

opposite of what Ms. Amatucci now argues.  The trial judge's rulings, contrary to Ms.

Amatucci's arguments, show there was, in fact, probable cause.

Moreover, as argued in defendant's original objection (doc 137), this proposed claim is

barred both by res judicata and collateral estoppel for all the reasons argued in defendants'

Motion for Judgment on the Pleadings (Doc 132).

While Judge Laplante has not yet ruled on the Magistrate Judge's Report and

Recommendation (Doc 144), the Magistrate Judge's Report and Recommendation has proposed

that the Court dismiss all plaintiff's claims against Chief Chase because those claims are barred

by res judicata.  The proposed malicious prosecution claim (whether under common law or as a

Section 1983 claim) also would be barred by res judicata as it arises out of the same transaction

or occurrence as the prior case, and thus, the proposed amendment would be futile.  The claim,

---

[1] If Ms. Amatucci had not refused to stop, it is doubtful, however, that she ever would have been arrested for speeding alone.