UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Josephine Amatucci, <br>     Plaintiff <br><br> v. <br><br> Town of Wolfeboro, Shane Emerson and Stuart Chase, <br>     Defendants | Civil Action No.: 17-CV-237-JL |

See p. 14 2 ATTACHED

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, by and through counsel, Ransmeier & Spellman, P.C., and move for summary judgment on the Plaintiff's complaint filed in the above-captioned matter and in support of same, state as follows:

1. A memorandum of law with exhibits is filed in support of this Motion for Summary Judgment;
2. No assent to the motion has been sought from the Plaintiff as the motion is dispositive in nature and her objection can be assumed.

WHEREFORE, the Defendants respectfully request that this Honorable Court:

A. Grant this Motion for Summary Judgment; and
B. Grant such other and further relief as the Court deems just and equitable.

                            Respectfully submitted,
                            TOWN OF WOLFEBORO, SHANE EMERSON
                            AND STUART CHASE,

                            By their attorneys,
                            RANSMEIER & SPELLMAN P.C.

Dated: July 26, 2018            By:   /s Daniel J. Mullen
                                      Daniel J. Mullen (NHBA #1830)
                                      P.O. Box 600
                                      Concord, NH  03302-0600
                                      (603) 228-0477
                                      E-mail: dmullen@ranspell.com


per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding. [handwritten: GOOD FAITH NOT ENOUGH]

Accordingly, Officer Emerson is entitled to qualified immunity. [handwritten: BINGO!]

Former Chief Chase did not participate at all in the arrest for speeding. [circled in red] Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

14 [handwritten: Z]

*[Handwritten at top: CROSS SUMMARY JUDGMENT MOTION / EXHIBIT 2]*

64

1  arrest?

2      MR. MULLEN: The arrest in this case is -- and

3  I'm -- I thought it was clear and that it would be --

4  I'll take the -- I'll apologize for that, but the arrest

5  was for disobeying a police officer, your Honor.

6      MS. AMATUCCI: It was both.

7      MR. MULLEN: The stop was for speeding.

8      MS. AMATUCCI: It was --

9      MR. MULLEN: Initially was supposed to be for

10 speeding. If she had stopped -- and I'm speculating

11 here. If she had stopped, I fully believe she would

12 have been given a warning, your Honor, but she continued

13 for four miles and that's -- that's what precipitated

14 the arrest and the seizure and the booking and the

15 prosecution on the misdemeanor charge. *[Handwritten: I PROVED I WAS ARRESTED & DETAINED]*

16 That's what she was arrested for. She was *[handwritten: SPEEDING]*

17 given a citation on the -- for -- on the complaint, it

18 said violation. Show up in court on such and such a

19 date. And -- but the arrest was for disobeying a police

20 officer, which is a misdemeanor; at the time,

21 misdemeanor A, which was subsequently reduced to a

22 misdemeanor B.

23     THE COURT: Do we have that citation in the

24 record then?

*Cross Summary Judgment [illegible]*

*Exhibit 2*

64

```
1   arrest?
2           MR. MULLEN:  The arrest in this case is -- and
3   I'm -- I thought it was clear and that it would be --
4   I'll take the -- I'll apologize for that, but the arrest
5   was for disobeying a police officer, your Honor.
6           MS. AMATUCCI:  It was both.
7           MR. MULLEN:  The stop was for speeding.
8           MS. AMATUCCI:  It was --
9           MR. MULLEN:  Initially was supposed to be for
10  speeding.  If she had stopped -- and I'm speculating
11  here.  If she had stopped, I fully believe she would
12  have been given a warning, your Honor, but she continued
13  for four miles and that's -- that's what precipitated
14  the arrest and the seizure and the booking and the
15  prosecution on the misdemeanor charge.
16          That's what she was arrested for.  She was
17  given a citation on the -- for -- on the complaint, it
18  said violation.  Show up in court on such and such a
19  date.  And -- but the arrest was for disobeying a police
20  officer, which is a misdemeanor; at the time,
21  misdemeanor A, which was subsequently reduced to a
22  misdemeanor B.
23          THE COURT:  Do we have that citation in the
24  record then?
```

*Handwritten annotations:* "I proved I was arrested & detained and speeding"

Case 1:17-cv-00237-JL Document 138 Filed 7/26/18
138-1

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Josephine Amatucci, ) | |
| Plaintiff ) | Civil Action No.: 17-CV-237-JL |
| ) | |
| v. ) | |
| ) | |
| Town of Wolfeboro, Shane Emerson and ) | |
| Stuart Chase, ) | |
| Defendants ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, by and through counsel, Ransmeier & Spellman, P.C., and move for summary judgment on the Plaintiff's complaint filed in the above-captioned matter and in support of same, state as follows:

1. A memorandum of law with exhibits is filed in support of this Motion for Summary Judgment;

2. No assent to the motion has been sought from the Plaintiff as the motion is dispositive in nature and her objection can be assumed.

WHEREFORE, the Defendants respectfully request that this Honorable Court:

A. Grant this Motion for Summary Judgment; and

B. Grant such other and further relief as the Court deems just and equitable.

                      Respectfully submitted,
                      TOWN OF WOLFEBORO, SHANE EMERSON
                      AND STUART CHASE,

                      By their attorneys,
                      RANSMEIER & SPELLMAN P.C.

Dated: July 26, 2018         By: /s Daniel J. Mullen
                                  Daniel J. Mullen (NHBA #1830)
                                  P.O. Box 600
                                  Concord, NH 03302-0600
                                  (603) 228-0477
                                  E-mail: dmullen@ranspell.com

1

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding.

[handwritten annotation: "GOOD FAITH NOT ENOUGH"]

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in *the arrest for speeding.* Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

14

```
 1   the case because -- for her protection mostly.
 2           MS. AMATUCCI:  Wait.  Excuse me, please?
 3   Don't protect me.  I'll protect myself.
 4           THE COURT:  Well, do you --
 5           MS. AMATUCCI:  The state law claims are not in
 6   this case, period.
 7           THE COURT:  Fine.  Done.  They're out of the
 8   case.
 9           MR. MULLEN:  Your Honor, the first argument we
10   had is that there was probable cause for the stop here.
11           As the Court has I think understood in the
12   order that was issued by Judge Patten, I believe in June
13   of 2015, he states on several occasions that she was
14   going 42 miles per hour in a posted 30 mile per hour
15   zone.  And that's a finding of the Court.  And that in
16   and of itself gives Officer Emerson a reason to stop her
17   and make inquiry and decide whether to cite her for
18   speeding or not.
19           THE COURT:  I understand your argument about
20   that, but what do you say is a finding of the Court?  Is
21   the finding that she was going 42 or that the officer
22   said she was going 42?
23           MR. MULLEN:  I -- the find -- we're saying
24   that the officer -- the Court said on -- there's at
25   least two occasions in the order and I can read from the
```

```
 1   like a dinner table.  Only one person at a time can
 2   speak.  It's especially important here because we have a
 3   court reporter who's trying to type everything we say.
 4   So when you interrupt repeatedly, it makes it difficult
 5   for her.  Don't do it again, please.
 6           Go ahead, Mr. Mullen.
 7           MR. MULLEN:  Thank you, your Honor.
 8           So I think the Court did make a finding.  And
 9   over and above that, so with that finding of 42 in a 30,
10   Officer Emerson had the right to stop her to inquire
11   about whether -- what her speed was.
12           Then she continued, as the Court knows, for
13   four miles and then he had the right to stop her for
14   disobeying an officer, because he had his strobe lights
15   and siren going.
16           The second argument we make is that -- with
17   regard to probable cause is that we submitted the
18   affidavit of Officer Emerson in which he stated that he
19   was a certified radar operator, that his radar machine
20   had been certified and tested; at that particular time
21   it was within the certification period, and the radar
22   showed that he -- that she was going 42 miles per hour
23   in a 30 mile per hour zone.  And that has not been
24   contradicted.
25           Given that --
```

1                    But in this particular case, you know, the
2    fact that the judge clearly made a determination in this
   *Trial Court Judge Patten*
3    case and said she was going 12 miles per hour, he had to
4    make the determination in order to reach the --
5             MS. AMATUCCI:  No, he went by --
6             MR. MULLEN:  -- elements of --
7             MS. AMATUCCI:  He went by --
8             MR. MULLEN:  -- 265:60.
9             MS. AMATUCCI:  -- the testimony of the cop.
10   And he says it right here; he went by their testimony,
11   not by facts.
12            So of course the cop is going to say what I --
13   that I was doing that to defend himself.  He went by the
14   testimony of the police officer, not by the facts in
15   front of him.
16            THE COURT:  Okay.  Ms. Amatucci, do you see
17   how the lawyer's standing up at the podium and he's
18   talking to me?  That means, under the rules of court or
19   the customs of court, you should not interrupt him.
20            MS. AMATUCCI:  But you said that I could -- I
21   can -- I can --
22            THE COURT:  First of all, I never said you
23   could do this point by point.  You asked if you could or
24   you shouted and demanded it --
25            MS. AMATUCCI:  But this is the time when

*Page 124*

75

1        Did you look at all the evidence?
2        THE COURT: Yes.
3        MS. AMATUCCI: Okay. Did you see where the
4   arrest is considered unlawful in New Hampshire for
5   speeding? Did you see that?
6        THE COURT: I -- what I saw was that you were
7   arrested for -- you were arrested for failing to obey a
8   police officer and failing to stop. That's what I saw
9   happened in this case.
10       MS. AMATUCCI: A Fourth Amendment malicious
11  prosecution, which is what you allowed, is all about the
12  unlawful arrest, not about --
13       THE COURT: I know, but the evidence
14  doesn't -- the evidence does not establish that you were
15  arrested for speeding. The evidence establishes that
16  you were arrested for failing to obey and disobeying a
17  police officer and refusing to stop. That's what the
18  evidence suggests. And you haven't done anything --
19       MS. AMATUCCI: I was --
20       THE COURT: -- to rebut that.
21       MS. AMATUCCI: -- prosecuted for speeding.
22       THE COURT: But I --
23       MS. AMATUCCI: Is that evidence?
24       THE COURT: Yes, but you were also prosecuted
25  at the very same time --

1252

THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

*See Page 3 Violation of Speedy Trial*

Josephine Amatucci

v.

James O'Brien, et al               Case No. 15-cv-00356-JL

*Dismissed in Federal Court (Maine) new case*

CASE HAS BEEN TRANSFERRED

TO ANOTHER COURT

1. Because of the fraud and terrorism being conducted by the judge and the lawyers in this court, the Plaintiff has dismissed this claim in this court and has already transferred the case to another court for her Civil Rights, which is being denied by this judge. The judge is bias. The law and evidence in this case are contrary to what this judge is stating,

(a) EXPERT TESTIMONY SUCH AS MEDICAL RECORDS IS NOT REQUIRED TO SUPPORT AN EMOTIONAL DISTRESS CLAIM UNDER THE FEDERAL CIVIL RIGHTS ACTS. Walters v. City of Atlanta, 803 F.2d 1135 (11th Ci. 1986) "The proof of emotional trauma necessary for recovery was not required for a claim of Intentional Infliction of Emotional Distress.

(b) In the case of Cleveland Board of Education v. Loudermill (1985) the court stated due process is determined as a matter of FEDERAL LAW, not statutory law, Therefore the No Trespass order claim, a violaion of due process, when the town denied the Plaintiff her right to a hearing before issuing the No Trespass order, is a violaion of due process under the Fourteenth Amendment. Therefore the State Superior Court has no jurisdiction to litigate the due process law and any ruling they made was under State Law, where Federal law is the law of the land and rules over state law. Due process claims are not determined under State Law.

1 *a*

(c)     The Fourth Amendment Malicious Prosecution claim under the former Chief Chase is a viable claim under 1983.  The Superior Court case was all about STATE LAW,  where the State Court litigated the arrest by Chase under State Law, that police are allowed under State law to arrest without a warrant.  However this is not Federal law.  Only Federal courts can address a Fourth Amendment Malicious Prosecution. There is a difference between a State L aw claim for malicious prosecution or a federal malicious prosecution claim.  A Fourth Amendment Malicious Prosecution claim can only be litigated in Federal Court.  Under State Law the defendant need not be a state actor,  and the plaintiff need not allege a violation of the United State Constitution.  See Gatter v. Zappile, 67 F. Supp. 2d 515, 519 (Ed. Pa. 1999) This judge did not make this distinction.  However, the Fourth amendment stood as a claim even though this judge was about to throw out this claim under chief Chase.

(d)     This judge has allowed a Fourth Amendment Malicious Prosecution claim to Chase,  and now is ridiculously denying to accept this claim stating it will most certainly be appealed.  This is FRAUD ON THE COURT,  as this is not a reason to throw out a claim.

2.      I am accusing this Judge of TERRORISM.  The Civil Rights Act allows compensable injuries for emotional pain and suffering, and mental anguish, without proof. This judge terrified the Plaintiff when he continuously continuously stated wrongly that unless she produce her medical record and the lawyers demanded that she do so, he would not allow her emotional distress, mental anguish damages.  When under the law, under civil rights lawsuits, the United States Supreme court noted with respect to emotional distress damages that "genuine injury may be evidenced by one's conduct and observed by others."  Carey v. Piphus, 435 U.S. 247, 264 n. 20 (1978).   The Eight Circut has held that a Plaintiff's own testimony is adequate to support an award."  Kucia v. Southeast Arkansas Community Action Corp. 284 F.3d 944, 947 (8th Cir. 2002) (plaintiff's own testimony enough);  Morse v. Southern Union Co., 174 F.3d 917, 925 (8th Cir. 1999) (affirming $100,000 emotional distress award where family members corroborated plaintiff's testimony);  Kim v. Nash Finch Co. 123 F. 3d 1046, 1065 (8th Cir. 1997) (award of $100,000 affirmed where plaintiff testified regarding anxiety, sleeplessnes, humiliation).  The plaintiff offered specific facts to the nature of her emotional distress.

2 *q*

3. What about the Fourth Amendment Malicious Prosecution, an unlawful detention lasting one year, what about the Defamation of her character by the town, for the causal connections to her distress.

4. Contrary to what this judge is stating, "Mental Health Experts such as what is in her medical records "may not testify on the issue of the Plaintiff's credibility". In Nichols v. American National Ins. 154 F.3d 875 (8th Cir. 1998) the Eight Circuit held that a psychiatric expert may not "comment on reliability (of plaintiff's testimony) in the guise of a medical opinion." The Court held, further, that testimony regarding "psychiatric credibility " recall bias" and motivation to lie or exaggerate based on "secondary gain" is INADMISSIBLE because it invades the province of jury.

5. Therefore with all this FRAUD ON THE COURT in determining her case under the law and facts, the Plaintiff had no other alterative but to remove her case to another court which she has already done so. And the reason is due to the unawful actions of the judge, where the lawyers can blame the judge for this result of this case.

6. Notify the witnesses that there is going to be no trial as the plaintiff has dismissed her case and will not attend any hearing any trial run by this judge, who has interest in judging this case with justice.

7. Besides this judge boldly stated to the Plaintiff that he "DOES NOT BELIEVE HER" how can the Plaintiff expect to win her case with a statement like this by the judge.

8. This case is a corruption in the process.


Respectfully,

Josephine amatucci

April 28, 2017


3

*[Handwritten annotations: "No PROBABLE CAUSE TO Prosecute" with arrow pointing to "to stop" (circled) and "Fourth Amendment" (circled)]*

The undisputed record in this case demonstrates that the defendants had probable cause to stop Mrs. Amatucci's car for speeding on May 7, 2014, and thus, she cannot succeed on a claim of a violation of her Fourth Amendment right not to be maliciously prosecuted for that speeding offense. Accordingly, and without the necessity of analyzing the second prong of the qualified immunity analysis, defendants are entitled to qualified immunity in regard to the malicious prosecution claims in this case.

### Conclusion

For the foregoing reasons, finds that the defendants have "affirmatively demonstrate[d] that there is no evidence in the record to support a judgment" in Mrs. Amatucci's favor as to her malicious prosecution claim. Celotex Corp., 477 U.S. at 332. Accordingly, the court enters the following Order:

1. The court's September 24, 2018 endorsed order incorrectly identifies the defendants' summary judgment motion as Document No. 139. The clerk's office is directed to amend that endorsed order in the docket of this case to reflect that the defendants' motion for summary judgment is Document No. 138.

5091

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Josephine Amatucci

v

Stuart Chase, etal                                    JURY TRIAL REQUESTED


JURISDICTION

This cause of action happened in New Hampshire. The Complaint that is before the Court is under 42 U.S. C. 1983 and 42 U.S.C. 1985, a civil rights action.

PARTIES:

1. Stuart Chase, 26 Orchard Road, Wolfeboro, N.H. 03896;

2. Town of Wolfeboro, 84 South Main St. Wolfeboro, N.H. 03894

3.

RELEVANT FACTS

3. This is a new cause of action for damages, for an active claim before the Court under Case No. 17-cv-237 JL. Of a violation of the Speedy Trial Act. The Court has not addressed the claim and therefore the Plaintiff is filing this new cause of action to address the claim. A meritorious claim, of a violation of the

1

Sixth Amendment, and a Fourth Amendment claim of an unlawful seizure

4. This cause of action refers to a violation caused by the defendants under the Federal Constitution under the Sixth Amendment, Speedy Trial Act, when they violated the Sixth Amendment Speedy Trial Act when they held a trial and formerly charged the Plaintiff for the offenses of speeding and disobeying a police officer when they should instead should have dismissed the charges, as the statute of limitations to charge her had expired under the Speedy Trial Act, and therefore their Act was a violation of her Civil Rights, a violation of Due Process that amounted to an unlawful seizure. And yes, a malicious prosecution.

5. She was initially formerly charged of these two offenses on May 7, 2014 and a trial wasn't held until June 25, 2015 one year and 3 weeks later. When they had only 70 days to commense a trial. There existed no legitimate reason shown for the delay for the trial, and the Plaintiff did in fact asserted her rights to a Speedy Trial as early as July 17, 2014 in the Carroll County District Court.

## THE BARKER ANALYSIS

6. Citing the principles demanded for a speedy trial, the United States Supreme Court under the case of Barker v. Wingo 407 U.s. 514 (1972), stated a violation of the speedy trial Act occurs (a) by the length of the delay (b) by the reason for the delay (c) if the defendant asserted her rights to a speedy trial (d) and the degree of prejudice.

7. Citing each issue, (a) the length of the delay before a trial was held was one year and three week, when 70 days was the limit for charging and having trial; (b) there was no legitimate reason given for the delay or that was determined; (c) the defendant asserted her speedy trial rights as early as July 17, 2014; (d) the degree of prejudice rests in the fact that the defendant was the age of 75 years old at the time.

8. The Plaintiff was indeed "PREJUDICED" in the denial of a speedy trial as the Statute states that the Court SHALL take appropriate action to ensure a speedy trial to minimize the length of time a victim 65 years of age or older must endure with the stress of involvement in the proceeding. That the Court SHALL consider any adverse impact the delay may have on the well-being of the victim 65 years or older.

9. The Plaintiff was 75 years old at the time making the lengthy time before a trial was held of one year and 3 weeks "prejudicial". See the case of Hanson v. Denckla, 357 U.s. 235 2 L Ed 2d 1283 8 5 Ct. 1228. where the Court stated, "A judgment may not be rendered in violation of constitutional limitations and guarantees. The Plaintiff had a guarantee under the Constitution for a speedy trial.

10. The United States Court of Appeals for the Second Circuit stated:
"The Speedy Trial Act requires that criminal defendants be brought to trial within 70 days of being charged". Also Judge Ginsburg argued that the Fourth Amendment was the appropriate vehicle for a violation of a speedy trial because the "SEIZURE" was not just a physical restraint but CONTINUED through the pendency of the defendant's obligation to appear in court...WHETHER OR NOT HE REMAINED IN CUSTODY, he is still SEIZED in the Constitutionally sense.

11. (There was no probable cause for a trial to be held when the trial was a volation of the Speedy Trial Ac. There was no probable cause to formerly charge the Plaintiff in violation of the Speedy Trial Act). The Plaintiff was charged with the offense of Speeding when Speeding was not a crime in New Hampshire, which in itself besides the violation of a speedy trial was an offense in itself under the Fourth Amendment, for an unlawful SEIZURE, with NO PROBABLE CAUSE, where

she was arrested without probable cause as the trial court judge determined by the evidence before him that she was NOT GUILTY of speeding, and besides he stated that she was .....NEVER SPEEDING. She was unlawfully charged with disobeying a police officer as the time to charge her had lapsed, and the offense should have been dismissed instead of charging her for this offense. That the conviction under the violation of the Speedy Trial Act is void and the Plaintiff is asking that this Cour reverse this charge as it is the duty of the Court under the law, there is no discretion.

12. However, under the speedy trial Act all charges after the limtiation period has passed must be reversed by the judge. Therefore this Court must reverse the conviction. As all the charges and proceeding after the statute of Limitations had ceased to run are inoperative. The right to charge her for an offense had passed. Therefore the proceedings at the trial must be entirely disregarded.

13. The Plaintiff is petitioning the Court to order a show cause hearing to formally dismiss the Conviction WITH PREJUDICE. Or just dismiss the conviction automatically under the speedy trial Act.

14. These are all the elements of a Fourth Amendment SEIZURE in both the speeding and disobeying a police officer offenses. The Plaintiff was arrested for both the speeding and disobeying offense, she was unlawfully detained for a lengthy period of time, and she was found NOT GUILTY FOR SPEEDING. Besides the fact at in his ORDER ON THE MERITS the trial court judge Patten ruled that according to the evidence before him, the Plaintiff Josephine Amatucci was NEVER SPEEDING That the pursuit by the police on May 7, 2014 was nothing but a set-up by the police to stop her before she reached the Sheriff's office where police chief Stuart Chase knew she was going to lodge a complaint aginst him. So in Retaliation Chase pursued

her and falsely accused her of speeding, and unlawfully arrested and incarcerated her for BOTH A SPEEDING AND DISOBEYING A POLICE OFFICER OFFENSE.

15. That this unlawful act of formerly charging her, when instead the defendands had the duty to dismiss the charges caused the Plaintiff severe emotional distress, a woman of 75 years old. For the long restraint to her liberty, and the pendency of her obligation to appear in court.

16. Therefore the Plaintiff is suing the defendants for a violation of the Speedy Trial Act, and a Monell claim as it was the policymaking officials, namely the former police chief Stuart Chase (defendant) and the prosecutor Morgan who DIRECTLY CAUSED the violation of the speedy trial act, and that under MONELL the municipality is liable for this violation of her Federal Civil Rights, even if only one act occurred. See the case of Pembaur v. City of Cincinnati, 475 U.S. 469, 1986.

## CLAIMS

COUNT 1.....Severe pain and suffering, a CONTINUOUS lengthy infliction of emotional distress for an elderly person plus a violaion of her liberty rights;

COUNT 11....MALICE, enhanced damages amounting to one million dollars for the 6 years it took for this case to be resolved;

COUNT 111...A FOURTH AMENDMENT MALICIOUS PROSECUTION, as the time period to prosecute had passed, and where speeding is not a crime there is no prosecution;

COUNT 1V.....Deprivation of her rights under Due Process of law under the Fourteenth Amendment.

COUNT V.......A MONELL CLAIM against the muncipality for the violation of my civil rights by the policymaking officials.

Respectfully,

Josephine Amatucci

5

July 3, 2020

c. Town of Wolfeboro, Stuart Chase

*Josephine Amatucci*

6