CASE 1:17CV-00237-JL DOCUMENT 138 FILED 7/26/18
138-1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Josephine Amatucci, Plaintiff<br>v.<br>Town of Wolfeboro, Shane Emerson and Stuart Chase, Defendants | Civil Action No.: 17-CV-237-JL |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, by and through counsel, Ransmeier & Spellman, P.C., and move for summary judgment on the Plaintiff's complaint filed in the above-captioned matter and in support of same, state as follows:

1. A memorandum of law with exhibits is filed in support of this Motion for Summary Judgment;
2. No assent to the motion has been sought from the Plaintiff as the motion is dispositive in nature and her objection can be assumed.

WHEREFORE, the Defendants respectfully request that this Honorable Court:

A. Grant this Motion for Summary Judgment; and

B. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,
TOWN OF WOLFEBORO, SHANE EMERSON AND STUART CHASE,

By their attorneys,
RANSMEIER & SPELLMAN P.C.

Dated: July 26, 2018

By: /s/ Daniel J. Mullen
Daniel J. Mullen (NHBA #1830)
P.O. Box 600
Concord, NH 03302-0600
(603) 228-0477
E-mail: dmullen@ranspell.com

1 H



per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding.

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

2 H

See Attached Document 138 in the Summary Judgment Record 138-1 For Evidence that she was Arrested for Speeding

The undisputed record in this case demonstrates that the defendants had probable cause to stop Mrs. Amatucci's car for speeding on May 7, 2014, and thus, she cannot succeed on a claim of a violation of her Fourth Amendment right not to be maliciously prosecuted for that speeding offense. Accordingly, and without the necessity of analyzing the second prong of the qualified immunity analysis, defendants are entitled to qualified immunity in regard to the malicious prosecution claims in this case.

**Conclusion**

For the foregoing reasons, finds that the defendants have "affirmatively demonstrate[d] that there is no evidence in the record to support a judgment" in Mrs. Amatucci's favor as to her malicious prosecution claim. Celotex Corp., 477 U.S. at 332. Accordingly, the court enters the following Order:

1. The court's September 24, 2018 endorsed order incorrectly identifies the defendants' summary judgment motion as Document No. 139. The clerk's office is directed to amend that endorsed order in the docket of this case to reflect that the defendants' motion for summary judgment is Document No. 138.

officer. See Thompson Rpt. ("[Sgt. Thompson] told [Mrs. Amatucci] that she had been arrested for disobeying a police officer" and that likely she would be taken to jail."). Once Mrs. Amatucci was transported to the CCHC, the bail commissioner set bond on the charge of disobeying a police officer. See Bond in Crim. Case. (listing "Offense(s) Charged" as "Disobey an Officer, Failure to Stop"). In other words, none of the Fourth Amendment-implicating events in this case concerned the speeding charge that she challenges in this case; her arrest, very brief detention and personal recognizance bail conditions all attended, instead, to her disobeying an officer charge, of which she was convicted.

While Mrs. Amatucci has alleged that she was also actually arrested for speeding (as opposed to simply cited), and then jailed and subjected to bail conditions on that charge, she has not supported that assertion with any submission of evidentiary quality. Significantly, every item of record evidence, see Bond in Crim. Case; Thompson Rpt., and admissible testimony connect Mrs. Amatucci's arrest and what followed to the disobeying charge, and more of that evidence mentioned or otherwise involved or implicated the probable cause-supported, see Part II, supra, speeding violation. Accordingly, Mrs. Amatucci has failed to demonstrate that her arrest, incarceration, and

H H

unreasonable seizures "is not offended." Collins v. Univ. of N.H., 664 F.3d 8, 14 (1st Cir. 2011).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Pontoo, 666 F.3d 20, 31 (1st Cir. 2011) (internal quotation marks and citations omitted). "'The question of probable cause . . . is an objective inquiry,' and [courts] do not consider the 'actual motive or thought process of the officer.'" Kenney v. Head, 670 F.3d 354, 358 (1st Cir. 2012) (citation omitted).

It is important to note, at he outset, that in order for Mrs. Amatucci to prove her case, she must show that the defendants are liable for a malicious prosecution as to the speeding charge resulting in acquittal, as opposed to the disobeying an officer charge of which she was convicted. As the court rules, see Part III, infra, she cannot prove that claim. Even if she had been arrested or detained for speeding, however, that charge was supported by probable cause.

SPEEDING IS NOT A CRIME IN N.H. YOU DON'T GET PROSECUTED FOR SPEEDING.

A. RSA 265:60

In New Hampshire, the offense of speeding is committed when a person drives at "unreasonable and imprudent" speeds for the

5 H



9-17-14

# The State of New Hampshire

COUNTY OF CARROLL 3RD CIRCUIT–DISTRICT DIVISION–OSSIPEE

State of New Hampshire v. Josephine Amatucci
Docket No: 464-2014-CR-00838

**ORDER REGARDING PRODUCTION OF EVIDENCE**

Violation to Speedy Trial

Defendant, Josephine Amatucci, was scheduled this date for trial in connection with a Class A Misdemeanor complaint charging Disobeying an Officer and a violation level offense of Speed-Basic Rule. Ms. Amatucci had filed a Motion for Jury Trial on September 16, 2014. The court explained that the district court could not convene a jury trial and could not simply transfer her case to the superior court. The court explained District Court Rule 2.14 as an alternative method for her to get the case before the superior court for jury trial. Ms. Amatucci would not accept that the court would need to find her guilty based on the State's offer of proof in order to comply with a Rule 2.14 transfer to the superior court. It did not assuage her to remind her that she would be maintaining her plea of not guilty.

Right for a Speedy Trial Denied

The court moved on to a discovery issue raised by Ms. Amatucci. In a prior hearing, Judge Patten had ordered the Wolfeboro Police Department to provide Ms. Amatucci with a copy of a video tape depicting Ms. Amatucci in the lobby of the Wolfeboro Police Department's lobby on May 7, 2014. Prosecutor Morgan advised the court that a copy had been provided to her by mail on September 5, 2014. Ms. Amatucci asserts that the disc supplied to her does not depict her interaction in the lobby on May 7, 2014, but rather at some other time. Attorney Morgan explained that the security camera in the lobby is a constant feed system which records over itself. In order to comply with Judge Patten's order, the department contacted the installer of the system, Knight Security, to have the data for May 7, 2014 retrieved. The disc sent to Ms. Amatucci was the result of Knight Security's efforts. In that there was no one present from Knight Security, the court ordered the Wolfeboro Police Department to produce for further hearing the representative who did the retrieval in order for Ms. Amatucci and the court to inquire.

6 H

NOV 18 2015

515

THE STATE OF NEW HAMPSHIRE

3RD CIRCUIT-DISTRICT DIVISION-OSSIPEE

State

v.

Josephine Amatucci

Case No. 464-2014-CR-00836

Jury Trial Denied 11/19/2015

JURY TRIAL REQUESTED OF MY PEERS

MOTION FOR NEW TRIAL FOR COMPENSATORY DAMAGES (Just For Damages)

BASED ON COURTS FINDING OF NOT GUILTY OF SPEEDING

1. The defendant is seeking a new trial for damages suffered when Chief Chase .........intentional........ PURSUED the defendant WITHOUT PROBABLE CAUSE, in a set up as found by this court to unlawfully seize her before she reached the Sheriff's office, and intentionally and knowing she would be harmed, which she was. That the harm was intentionally caused by Chief Chase, Shane Emerson and James O'Brien in a set-up to PURSUE her to stop her from addressing her grievances to the Sheriff. By seizing her car before she arrived at the Sheriff's office.

2. This unlawful PURSUIT was a violation of her right to address her grievances to the Sheriff, a First Amendment Right. And a Fourth Amendment violation, when she was unlawfully seized, as she was NOT SPEEDING, as the seizure was a set-up to stop her from redressing her grivevances to the Sheriff. in RETALIATION by Chief Chase, and for her accusing officer Dean Rondeau of misconduct in the police station. That Chief Chase

Respectfully,

Josephine Amatucci

November 16, 2015

c. Preti-Flaherty

Josephine Amatucci

No objection need be filed. Request, motion DENIED 11/19/2015 James Patten

James R. Patten, Justice
3rd Circuit Court

~~3~~ 4

8 H

Vexatious Litigent Petition By Town

EXHIBIT F

- Magistrate Judge Muirhead's Report and Recommendation dated January 20, 2006 in the first suit filed by Defendant in USDC (Exh. 50); and
- Magistrate Judge McCafferty's Report and Recommendation dated May 18, 2012 (Exh. 63) in the third suit filed in USDC by Defendant based upon her arrests in 2002 and 2003.

To date, Defendant has filed seven lawsuits in USDC and ten lawsuits in this Court based primarily on her allegedly unlawful arrests in 2002 and 2003. In addition, Defendant has to date filed eight lawsuits in USDC and three in this Court based primarily on the erratic driving incident in August 2013 and/or her arrest for speeding and failure to obey Police Officers on May 7, 2014. It is the pleadings, orders and decisions in these lawsuits which are the facts that Plaintiff relies upon in asking this Court for relief under RSA 507:15-a.

## II. RSA 507:15-A IS CONSTITUTIONAL UNDER BOTH THE NEW HAMPSHIRE AND U.S. CONSTITUTIONS

### A. The Court Should Decline To Analyze RSA 507:15-a's Constitutionality Under New Hampshire's Constitution Because Defendant Has Failed To Specifically Cite Its Provisions.

In her various pleadings, Defendant has alluded that RSA 507:15-a may deny her constitutional right to access the courts under notions of due process and equal protection. To raise a state constitutional claim, the party has to specifically invoke a provision of the State Constitution. *Matter of Kempton*, 166 N.H. __, 119 A.3d 198, 205 (2015). Defendant's various pleadings in this matter, as well as her testimony at the April 13, 2016 trial, failed to cite a provision of the New Hampshire Constitution. Accordingly, the Court should decline to analyze whether RSA 507:15-a is constitutional under the New Hampshire Constitution.

udgment is AUTOMATICALLY ENTERED. I do not have to wait for the judge to "TAKE IT INTO CONSIDERATION" after 4 years of his "TAKING IT INTO CONSIDERATION". Her Summary Judgment is entered AUTOMATICALLY under the law, unless this judge can object with evidence provided by the defendants. which he cannot. And where the Judge has already allowed the claim to go to the jury for damages only, then this claim needs no further litigation

MONROE V. PAPE

6. under Liability law under Section 1983 and Monell, under the U.S. Supreme Court decision 350 U.S. 167 81 S. Ct. the Court stated officials of a governing body may be sued under 1983 under illegal seizure under the Fourth amendment where the Court stated: "Phrase under color of law includes acts of an official action under color of state authority or municipalities. To prevail under 1983 there are two elements: (1) conduct occurred under "color of law" and (2) conduct deprived the plaintiff of rights, and privileges, or immunities secured by the U.S. Constitution or a Federal Statute."

7. Plaintiff's may bring an action under 1983 if their rights or immunities ....SECURED BY FEDERAL STATUTORY LAW OR CONSTITUTIONAL LAW ..were violated. Maine v. Thiboutot.

8. NO IMMUNITY FROM LIABILITY

WOOD V. STRICKLAND - 420 U.S. 308, ~~95 S. Ct. 92~~

Absolute Immunity is only for judges or the Legislature.

Qualified Immunictyt for state and local officials, the Court stated:

"An official is NOT IMMUNE from liability for damages under Section 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would ....VIOLATE THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF... or he took the action with malicious intention to cause a deprivation of CONSTITUTIONAL RIGHTS or other

10 H

The court has repeatedly cautioned that evidence is not to be excluded automatically in all cases where a Fourth Amendment violation has occurred, but only where suppression will have the effect of deterring future misconduct. "In determining whether to apply the exclusionary rule, a court should examine whether such application will advance the deterrent objective of the rule." (Illinois v. Krull)

**The "Good Faith" Doctrine**

In a number of situations, the court has acknowledged that not all errors committed by police officers justify invoking the exclusionary rule, because the actions taken by officers were reasonable under the circumstances, and so there was no misconduct to deter. This is the good faith exception to the exclusionary rule, which rests on the reasoning that "Where official action was pursued in complete good faith, the deterrence rationale loses much of its force." (Michigan v. Tucker)

The good faith rule does not apply merely because an officer was unaware of a court ruling holding that particular conduct violates the Fourth Amendment. Rather, it must appear to the court not only that the officer had a subjective good-faith belief that his or her actions were lawful, but also that it was objectively reasonable for the officer to hold that belief. A mistaken belief based on inadequate training or a lack of awareness of legal requirements for valid searches and seizures does not qualify as "good faith." Just as a suspect's ignorance of the law is no excuse for violating a statute, an officer's ignorance of the law is no excuse for violating the Constitution.

In addition to saving evidence from exclusion, the good faith doctrine can also be applied to shield law enforcement officers and their agencies from civil liability. If the law has not been clearly established in prohibiting certain actions, police are entitled to "qualified immunity" from suit, and need not be forced to stand trial. (Saucier v. Katz)

1/27/17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
Plaintiff,

v.

James O'Brien, et al,
Defendants.

Case No.: 15-CV-00356-JL

**DEFENDANT CHASE'S OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC 149) OF JUDGE LAPLANTE'S ORDER (DOC 147) BASED ON THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC 142)**

Defendant Chase, through counsel, objects to plaintiff's Motion for Reconsideration (Doc 149) for the following reasons:

The plaintiff's Motion for Reconsideration is based on the premise that Judge Laplante misunderstood plaintiff's proposed claim regarding alleged malicious prosecution. There is no evidence the Judge misunderstood anything or that the claimed misunderstanding would have mattered. Rather, he approved the Magistrate Judge's Report and Recommendation (Doc 142) which lays out the bases in detail for denying plaintiff's proposed amendment as futile.

The plaintiff's Motion for Reconsideration also falsely argues that Judge Patten, in the criminal case against her, found no probable cause. On the contrary, there is no place in that Judge's order where he finds "no probable cause" expressly or impliedly. Ms. Amatucci was charged with speeding and failure to obey an officer. The judge in that case specifically found that Ms. Amatucci was driving 42 mph in a 30 mph zone and found that she failed to stop for police pursuing her for about four miles. See Defendants' Motion for Judgment on the Pleadings and exhibits to that motion. Thus, there was probable cause for her arrest and prosecution on

12 H

both speeding and failure to obey.[1] The trial judge found that Ms. Amatucci was not guilty of speeding (even though she exceeded the speed limit by 12 mph) solely because the prosecutor failed to introduce evidence of road conditions that day. That does not mean that there was no probable cause for the arrest or the prosecution.

The prosecutor's failure to put in such evidence, or even Ms. Amatucci's success in beating the speeding violation, does not retroactively create lack of probable cause for the arrest and prosecution. In fact, the trial court found (and Ms. Amatucci is bound by collateral estoppel on that point), that she exceeded the speed limit by 12 mph. Moreover, the trial judge found that she failed to obey police officers pursuing her for almost four miles and that she was guilty of the crime she was charged with, failing to obey. Thus, the trial court's findings clearly establish the opposite of what Ms. Amatucci now argues. The trial judge's rulings, contrary to Ms. Amatucci's arguments, show there was, in fact, probable cause.

Moreover, as argued in defendant's original objection (doc 137), this proposed claim is barred both by res judicata and collateral estoppel for all the reasons argued in defendants' Motion for Judgment on the Pleadings (Doc 132).

While Judge Laplante has not yet ruled on the Magistrate Judge's Report and Recommendation (Doc 144), the Magistrate Judge's Report and Recommendation has proposed that the Court dismiss all plaintiff's claims against Chief Chase because those claims are barred by res judicata. The proposed malicious prosecution claim (whether under common law or as a Section 1983 claim) also would be barred by res judicata as it arises out of the same transaction or occurrence as the prior case, and thus, the proposed amendment would be futile. The claim,

[1] If Ms. Amatucci had not refused to stop, it is doubtful, however, that she ever would have been arrested for speeding alone.

13 H

Docket # ______________ TN # ______________

Docket #

# The State of New Hampshire

## COMPLAINT

☐ VIOLATION ☐ CLASS A ☐ CLASS B MISDEMEANOR ☐ FELONY

YOU ARE TO APPEAR BEFORE THE COURT LISTED BELOW AT ______ O'CLOCK IN THE AM/PM ON ______________ YR. ____ UNDER PENALTY OF LAW TO ANSWER TO A COMPLAINT CHARGING YOU WITH THE FOLLOWING OFFENSE:

TO THE .................... COURT, COUNTY OF ....................

**THE UNDERSIGNED COMPLAINS THAT:** PLEASE PRINT

NAME ..........................................................................
Last Name First Name Mi

..........................................................................
Address State Zip

DOB ........ OP. LIC.# ..........................................

| Sex | Race | Height | Weight | WRITE OUT: Color of Hair | Color of Eyes |
|---|---|---|---|---|---|
| | | | | | |

☐ COMM. VEH. ☐ COMM. DR. LIC. ☐ HAZ. MAT. ☐ 16+ PASSENGER

AT .......................................................................
(Location)

ON THE .......... DAY OF ............... YR. ..... at ..... A.M. P.M.

on/at in said county and state, did commit the offense of ...............

......................................... contrary to RSA ..........

and the laws of New Hampshire for which the defendant should be held to answer, in that the defendant did

IT WAS A BEAUTIFUL SPRING DAY

against the peace and dignity of the State.

☐ SERVED IN HAND

..........................................................................
Complainant Printed Name Dept.

**Making a false statement on this complaint may result in criminal prosecution.**

Oath below not required for police officers unless complaint charges class A misdemeanor or felony (RSA 592-A:7, I).

Personally appeared the above named complainant and made oath that the above complaint by him/her subscribed is, in his/her belief, true.

14 H



Weather underground
wunderground.com

# Gilford, NH

Laconia Municipal

12:50 PM EST on December 09, 2016 (GMT -050

## Weather History for KLCI - May, 2014

May

IT WAS A BEAUTIFUL DAY
ON MAY 7, 2014

2014

View
Wednesday, May 7, 2014

Daily Weekly Monthly Custom

| | Actual | Average | Record |
|---|---|---|---|
| Temperature | | | |
| Mean Temperature | 50 °F | - | |
| Max Temperature | 64 °F | 62 °F | 87 °F (2000) |
| Min Temperature | 35 °F | 41 °F | 30 °F (2001) |
| Degree Days | | | |
| Heating Degree Days | 16 | | |
| Moisture | | | |
| Dew Point | 29 °F | | |
| Average Humidity | 47 | | |
| Maximum Humidity | 81 | | |
| Minimum Humidity | 21 | | |
| Precipitation | | | |
| Precipitation | 0.00 in | - | - |
| Sea Level Pressure | | | |
| Sea Level Pressure | 30.12 in | | |

15 H

There was some conflicting evidence presented in the officer's report which referred to two cars being situated ahead of the defendant's vehicle, whereas in his testimony, he stated that there only two cars, of which defendant was one, and the one that was traveling the fastest. Otherwise, there was no specific testimony about the road or whether conditions, the amount of traffic on the road generally, or on any side street, any pedestrian activity, or any other specific evidence of actual or potential hazards under those circumstances on the date and time of the alleged offense. The court's view of the location where defendant is alleged to have been speeding shows a well-traveled, narrow roadway, with multiple intersecting streets and driveways, but a clear view of the roadway ahead in either direction for some distance.

RSA 265:60, I prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in the posted 30 miles per hour zone, "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Here we have the seemly conflicting evidence of no specific conditions presented that there were actual or potential hazards at that place and time that the defendant was traveling 12 miles per hour over the posted speed limit, but that that speed is prima facie unreasonable and imprudent. This conflicting evidence leaves the court with no basis for a finding, beyond a reasonable doubt, that the defendant was traveling at a speed which was unreasonable and imprudent for the conditions existing, having in mind the actual and potential hazards associated with those conditions. Therefore, there must be a finding of not guilty.

As to the complaint alleging the class B misdemeanor for disobeying a police officer, RSA 265:4, I, (c) instructs that while driving a vehicle, no person shall purposely neglect to stop when signaled to stop by any law enforcement officer who signals the person to stop by means of audible or visual emergency warning signals. Clearly the evidence presented shows, beyond a reasonable doubt, that the defendant did not stop when signaled to do so by the officers, using his emergence warning lights and siren, for upwards to a 4 mile distance. While there is no direct evidence of the defendant's state of mind

uiser by using preset tuning forks, both before and after his shift, and found determined the radar unit
8
to be operating properly and accurately.

The evidence presented through the officer's testimony shows that he was traveling toward the downtown area of Wolfeboro on Center Street, and was advised by dispatch that the person of interest involved in the incident he was responding to had left that location. It is shown by dispatch log, State's exhibit 7, that the officer had been advised of description of the defendant's car. Although he testified that he was not on the look- out for her, it is reasonable to infer that he was indeed on the look- out for the defendant. The dispatch log, State's Exhibit 7, appears to support this inference.

The officer testified that when he was near what is commonly referred to as the "Mast Landing" area, he observed a vehicle come around the curve which appeared to be speeding. He testified that he activated his radar at a point that two vehicles were in the radar's range of interception. The radar picked up the signal from the car moving the fastest. It was ultimately determined that vehicle was driven by the defendant and the radar readout showed that defendant was traveling 42 miles per hour in a posted 30 mile per hour zone. This area, showing the officer's point of view, is depicted on the two photographs entered as State's exhibit 6.

It is at this point that the officer advised dispatch that he was "attempting to stop her on Center Street" and gives dispatch the defendant's license plate number. Exhibit 7 at 1252. At 1253, the officer advises dispatch that the "reason for the stop was 42 in a 30 by Mast Landing". Exhibit 7. Clearly the implication of this exchange is that the officer knew that the vehicle he observed was the defendant and he was going to try and stop her. In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his cell phone about who he should be pursuing.

The officer testified that he activated his blue strobe lights and siren on his cruiser, pulled into the Mast Landing parking lot to turn around and began to pursue the defendant. The defendant continued to travel northbound on Center Street, Route 28, albeit apparently not speeding along the way, for approximately four miles, before she pulled over in response to a Carroll County Sheriff's Department standing in the road and signaling her to stop.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH 03864

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

**June 16, 2016**

**JOSEPHINE AMATUCCI**
**PO BOX 272**
**WOLFEBORO FALLS NH 03896**

Case Name: **State v. Josephine Amatucci**
Case Number: **464-2014-CR-00836**

The following Order was entered regarding Defendant's "Motion Ordering Judge Patten to Remove My Conviction Immediately":

6/9/2016 - This judge has recused himself from any further matters or pleadings involving or filed by Ms. Amatucci.

Elaine J. Lowe
Clerk of Court

(464260)

C: Simon Robert Brown, ESQ

A 18 H

4704

The Supreme Court of Louisiana held tht a judge's legal ruling may be found to have violated the Code of Judicial Conduct -only if the action is contrary to clear and determined law about which there is no confusion or question as to its interpretation and the legal error was egregious, made in bad faith or made as a pattern or practice of legal error. Clearly unconstitutional. Failing to follow and apply the law.

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding. GOOD FAITH NOT ENOUGH

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

THE STATE OF NEW HAMPSHIRE

CARROLL, SS SUPERIOR COURT

IN RE: JOSEPHINE AMATUCCI

(Circuit Court Docket Number 464-2014-CR-00836)

**ORDER**

On August 23, August 29, and September 1, 2016, Josephine Amatucci ("Amatucci") presented the Superior Court with three pleadings and corresponding attachments. All three of her pleadings address her request for an expedited jury trial regarding an incident that occurred in the Spring of 2014. The matter went to trial, heard by Circuit Court (Patten, J.) in June 2014.

Amatucci was found not guilty in the Circuit Court on one count of speeding and guilty of one count of disobeying an officer. The disobeying an officer charge was initially brought as a class A misdemeanor. Ms. Amatucci was sentenced to a monetary fine, to be suspended for one year conditioned upon good behavior, as well as a suspended driver's license and a suspended motor vehicle registration. Both suspensions were held in abeyance for one year conditioned upon good behavior.

In April 2016, the New Hampshire Supreme Court issued an Order in this case - affirming Amatucci's conviction. See, State of New Hampshire v. Josephine Amatucci, No. 2015-0562 (April –, 2016). The Supreme Court unanimously affirmed the Circuit Court's decision. For the above stated reasons, Amatucci is barred from a jury trial in the Superior Court.

21 N

## IV. FINAL POLICYMAKERS

In *Pembaur v. City of Cincinnati*, the Court held that a single decision by an official with policymaking authority in a given area could constitute official policy and be attributed to the government itself under certain circumstances.[176] Thus, in *Pembaur*, the county could be held liable for a single decision by a county prosecutor, which authorized an unconstitutional entry into the plaintiff's clinic.[177] With respect to municipal liability based on acts or decisions of final policymakers, the Court has made clear that who constitutes a final policymaker is a question of state law.[178] A final policymaker will generally be someone whose decisions are not subject to review by another official or governmental body.[179] Therefore, if there is any kind of review of an individual's decision, that individual is not the final policymaker.[180] Furthermore, one might be a final policymaker in one context and not in another. For example, in *Ar-*

[176] 475 U.S. 469, 470 (1986).

[177] *Id.* at 485. *See also* Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008) ("We are bound by *Pembaur* and conclude that a single decision by a final policymaker can result in municipal liability.").

[178] City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

[179] *See generally* McMillian v. Monroe County, 520 U.S. 781, 785-86 (1997). *See also* Hill v. Borough of Kutztown, 455 F.3d 225, 246 (3d Cir. 2006) (arguing the mayor's constructive discharge of plaintiff was final in the sense that it was not reviewable by any other person or any other body or agency in the Borough).

[180] *See, e.g.*, Quinn v. Monroe County, 330 F.3d 1320-26 (11th Cir. 2003) ("Because the Career Service Council has the power to reverse any termination decision made by Roberts, he is not a final policymaker with respect to termination decisions at the library."); Tharling v. City of Port Lavaca, 329 F.3d 422, 427 (5th Cir. 2003) (finding that a local law requiring approval of City Council for employment decisions made by City Manager rendered City Council the final policymaker); Gernetzke v. Kenosha Unified School District No. 1, 274 F.3d 464, 468 (7th Cir. 2001) ("The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question.").

22 H

THE STATE OF NEW HAMPSHIRE

CARROLL, SS. SUPERIOR COURT

Town of Wolfeboro

v.

Josephine Amatucci

Case No. 212-2015-CV-00090

**PLAINTIFF'S SUPPLEMENTAL POST-TRIAL MEMORANDUM**

At the trial in this matter on April 13, 2016, Plaintiff Town of Wolfeboro submitted evidence of two matters now pending in the United States District Court ("USDC") based on the Defendant's arrest on May 7, 2014 for speeding and failure to obey police officers. See Exhibits 99-101 and 105 (pp. 40-41). Subsequent to the trial and the filing of Plaintiff's Post-Trial Memorandum, Plaintiff has become aware of three additional lawsuits that Defendant has filed in USDC that are relevant to the issues in this case and which may be of aid to this Court. The three additional cases are as follows:

1. Josephine Amatucci v. Stuart Chase, Wolfeboro Police Department and Town of Wolfeboro (16-cv-00206-SM) filed on April 11, 2016;

2. Josephine Amatucci v. Greg Dube (16-cv-00207-JD) filed on April 28 2016; and

3. Josephine Amatucci v. Stuart Chase (Police Chief) and Wolfeboro Police Department (16-cv-00208-JL) filed on May 5, 2016.

All five cases are still pending in USDC, awaiting orders of notice or other disposition.

Copies of Defendant's three additional Complaints filed in USDC (without the voluminous attachments thereto) are attached hereto as Exhibits A, B and C. The first case is a

234



To Whom It May Concern:

On or about 12:40 PM on May 7, 2014 Josephine Amatucci came in the office looking to speak with the Board of Selectmen. She told me that the Police Chief had threatened her and she feared for her life. Something had to be done about the Chief. I tried to explain to her that the Board of Selectmen could not help her as the Police Department is under the Police Commission and I told her just like the Library personnel is under the Library Board of Trustees. She started yelling and said that the Chief is an employee of the Town and that she needed to speak with the Board of Selectmen. At this time she was in no mood to listen and asked me to call the Board of Selectmen. I told her the Board of Selectmen were not in Town. She asked where they were and I told her that they were in court in Concord. At that time Rob Houseman came in the office and got her to go with him.

Anne C. Marble

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

Carroll County 3rd Circuit Court-District Division

**IN RE: STATE OF NEW HAMPSHIRE V. JOSEPHINE AMATUCCI**

**464-2014-CR-0836**

SENTENCING ORDER

This matter came on for a sentencing hearing. The State and defendant were both present and participated. After due consideration of the presentations made, the court enters the following sentencing order.

Defendant was convicted of violation RSA 265:4, after failing to stop when signaled to do so by a law enforcement officer of the Wolfeboro Police Department, who signaled the defendant to stop by means of use of emergency lights and siren. As such, defendant violated to prohibitions of RSA 265:4, I. (c).

Under the provisions of subsection II. of the statute, any person who violates any provision of subsection I., "may have his or her license...and any registration issued in his or her name suspended." This section also provides that the person who violates the provisions of subparagraph I (c) shall be guilty of a Class A., misdemeanor. Curiously, the statute does not provide how long the suspensions of the license and registration should be.

Under the provision of subsection III. (a), in addition to the license and registration suspensions that may be ordered under subsection II., the statute states that any person convicted of violating the provisions of subparagraph I (c), which is the case for Ms. Amatucci, she is deemed guilty of a class A Misdemeanor and "shall be fined not less than $500.00.

Nonetheless, prior to commencement of the trial in this matter, the State elected to amend the charge and prosecute it as a class B misdemeanor, as allowed under RSA 625: 9, VII. Moreover, in light of the sentence herein after imposed not including any period of incarceration, suspended or otherwise,

JKH

.e provisions of RSA 625:9, VIII, the defendant's conviction and sentence will be entered as a /iction of a class B misdemeanor.

License and registration suspension or revocation under RSA 265:4, II is, by the express terms of the statute, permissive. Revocation is also appropriate under the factual circumstances of this case. The defendant failed to stop for the officer signaling her to stop, for several miles. Nonetheless, the court also finds that, since the defendant was not reported as having any prior record of offenses, the license and registration revocation period should be suspended, conditionally. The court orders that Ms. Amatucci's license and registration issued in her name are revoked for a period of 60 days, but that such revocation is suspended, conditional on Ms. Amatucci having no motor vehicle violation convictions, for a one year period of time.

Similarly, under the express provisions of RSA 2654:9, III (a) the minimum fine of $500.00 for her conviction of violating the provisions of RSA 265:4, I.(c) is imposed and suspended for a period of one year, subject to the same condition that Ms. Amatucci has not convictions for any motor vehicle violations during that period.

So Ordered.

9/4/15
ate

Judge

2 to H