*MULLEN'S MOTION FOR SUMMARY JUDGMENT*

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding.

*GOOD FAITH NOT ENOUGH*

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

14

speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so for over 4 miles and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose, but it would not have mattered to them, and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response, above, to Paragraph 7. Defendant O'Brien further specifically denies all the allegations against him. His involvement in this matter, contrary to the plaintiff's false and groundless allegations, was extremely limited.

Mr. O'Brien responded, as he was legally required to do, to a call from police dispatch that Ms. Amatucci was causing a disturbance at the Town offices. By the time Ofc. O'Brien arrived at the Town offices, Ms. Amatucci had already left. Mr. O'Brien's sole involvement after that was to make a radio call back to police dispatch confirming that Ms. Amatucci was no longer at Town Hall. O'Brien did not make a phone call to Ofc. Emerson, did not call the Sheriff's Department and did not request anyone to chase or stop or arrest Ms. Amatucci. He was not in any way involved in the pursuit of Ms. Amatucci and was not present when she was pursued, stopped or arrested. After Ms. Amatucci was arrested and taken away, Officer O'Brien went to the location of Ms. Amatucci's car to relieve Chief Chase so that Chief Chase did not have to wait for the tow truck to arrive. As to the statement in the police log about Ofc. Emerson trying to stop "her," that was not a quote of Ofc. Emerson's police call to dispatch, but rather a conflation in the log prepared by the dispatcher, William Riley, of Emerson's statement that he was turning around to chase a speeding car (which he did not know was Ms. Amatucci). Officer

*[Handwritten annotations: "AND" in right margin; "This verifies my entire false arrest claim – I was unlawfully arrested" at bottom]*

9

*This was mailed & filed by Mullen's lawfirm Ransmeir* — **Page 1**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
Plaintiff,

v.

Case No.: 15-CV-00356-JL   *Void*

James O'Brien, et al,
Defendants.

*1/27/Li BINFI*
*Now Case 00237 did a Voluntary Dismissal*

### DEFENDANT CHASE'S OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC 149) OF JUDGE LAPLANTE'S ORDER (DOC 147) BASED ON THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC 142)

Defendant Chase, through counsel, objects to plaintiff's Motion for Reconsideration (Doc 149) for the following reasons:

The plaintiff's Motion for Reconsideration is based on the premise that Judge Laplante misunderstood plaintiff's proposed claim regarding alleged malicious prosecution. There is no evidence the Judge misunderstood anything or that the claimed misunderstanding would have mattered. Rather, he approved the Magistrate Judge's Report and Recommendation (Doc 142) which lays out the bases in detail for denying plaintiff's proposed amendment as futile.

The plaintiff's Motion for Reconsideration also falsely argues that Judge Patten, in the criminal case against her, found no probable cause. On the contrary, there is no place in that Judge's order where he finds "no probable cause" expressly or impliedly. Ms. Amatucci was charged with speeding and failure to obey an officer. The judge in that case specifically found that Ms. Amatucci was driving 42 mph in a 30 mph zone and found that she failed to stop for police pursuing her for about four miles. See Defendants' Motion for Judgment on the Pleadings and exhibits to that motion. Thus, there was probable cause for her arrest and prosecution on

*The Judge LaPlante is trying to say my arrest was only for the disobeying offense. This proves otherwise.*

both speeding and failure to obey.[1] The trial judge found that Ms. Amatucci was not guilty of speeding (even though she exceeded the speed limit by 12 mph) solely because the prosecutor failed to introduce evidence of road conditions that day. That does not mean that there was no probable cause for the arrest or the prosecution.

The prosecutor's failure to put in such evidence, or even Ms. Amatucci's success in beating the speeding violation, does not retroactively create lack of probable cause for the arrest and prosecution. In fact, the trial court found (and Ms. Amatucci is bound by collateral estoppel on that point), that she exceeded the speed limit by 12 mph. Moreover, the trial judge found that she failed to obey police officers pursuing her for almost four miles and that she was guilty of the crime she was charged with, failing to obey. Thus, the trial court's findings clearly establish the opposite of what Ms. Amatucci now argues. The trial judge's rulings, contrary to Ms. Amatucci's arguments, show there was, in fact, probable cause.

Moreover, as argued in defendant's original objection (doc 137), this proposed claim is barred both by res judicata and collateral estoppel for all the reasons argued in defendants' Motion for Judgment on the Pleadings (Doc 132).

While Judge Laplante has not yet ruled on the Magistrate Judge's Report and Recommendation (Doc 144), the Magistrate Judge's Report and Recommendation has proposed that the Court dismiss all plaintiff's claims against Chief Chase because those claims are barred by res judicata. The proposed malicious prosecution claim (whether under common law or as a Section 1983 claim) also would be barred by res judicata as it arises out of the same transaction or occurrence as the prior case, and thus, the proposed amendment would be futile. The claim,

---

[1] If Ms. Amatucci had not refused to stop, it is doubtful, however, that she ever would have been arrested for speeding alone.

2

*CROSS SUMMARY JUDGMENT HEARING*

EXHIBIT 2

FILED - USDC-NH
2020 NOV 9 AM 11:59

64

```
 1  arrest?
 2          MR. MULLEN:  The arrest in this case is -- and
 3  I'm -- I thought it was clear and that it would be --
 4  I'll take the -- I'll apologize for that, but the arrest
 5  was for disobeying a police officer, your Honor.
 6          MS. AMATUCCI:  It was both.
 7          MR. MULLEN:  The stop was for speeding.
 8          MS. AMATUCCI:  It was --
 9          MR. MULLEN:  Initially was supposed to be for
10  speeding.  If she had stopped -- and I'm speculating
11  here.  If she had stopped, I fully believe she would
12  have been given a warning, your Honor, but she continued
13  for four miles and that's -- that's what precipitated
14  the arrest and the seizure and the booking and the
15  prosecution on the misdemeanor charge.
16          That's what she was arrested for.  She was
17  given a citation on the -- for -- on the complaint, it
18  said violation.  Show up in court on such and such a
19  date.  And -- but the arrest was for disobeying a police
20  officer, which is a misdemeanor; at the time,
21  misdemeanor A, which was subsequently reduced to a
22  misdemeanor B.
23          THE COURT:  Do we have that citation in the
24  record then?
25          MS. AMATUCCI:  Why was I prosecuted for the
```

*Handwritten annotations: "Mullen Lie's, Lies Lies"; "I proved I was arrested & detained for speeding"*