## Other Orders/Judgments

1:18-mc-00038-JL AMATUCCI MASTER FILE V. ALL DEFENDANTS

**U.S. District Court**

**District of New Hampshire**

Opened as new case 20-cv-1194

**Notice of Electronic Filing**

The following transaction was entered on 12/23/2020 at 8:56 AM EST and fi

**Case Name:** AMATUCCI MASTER FILE V. ALL DEFENDANTS
**Case Number:** 1:18-mc-00038-JL
**Filer:**
**Document Number:** No document attached

Docket Text:
**ENDORSED ORDER: [30] Motion for Judge Laplante to Void the Summary Judgment He Allowed to Attorney Mullen.** *Text of Order: The Motion for Judge Laplante to Void the Summary Judgment He Allowed to Attorney Mullen (Doc. No. 30) is construed as a request to open a new lawsuit against Judge Laplante, which is before the undersigned to determine whether it violates either of the filing restrictions applicable to Mrs. Amatucci's ability to file new lawsuits in this court. See Doc. No. 4 (July 29, 2013 Order, Amatucci v. Hamilton, No. 13-cv-087-SM (D.N.H.)); Doc. No. 2 (Apr. 11, 2018 Order, Amatucci v. Chase, No. 17-cv-237-JL (D.N.H.)). The instant filing (Doc. No. 30) is not prohibited by either filing restriction as it names Judge Laplante as the sole defendant, who was not a defendant to, or in privity with a defendant to, either of the above-listed lawsuits. Accordingly, without comment on the merits of any of the claims or assertions contained therein, the court directs the clerks office to docket Document No. 30 as the complaint in a new civil case.* **So Ordered by Chief Judge Landya B. McCafferty. (ed)**

**1:18-mc-00038-JL Notice has been electronically mailed to:**

**1:18-mc-00038-JL Notice, to the extent appropriate, must be delivered conventionally to:**

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH 03896

Mullen was not in privity with any defendants in this legal malpractice new cause of action 20-cv-1194 has been voluntarily dismissed to change wrong title

48

17

**Amy Capone-Muccio**

**From:** Steve Wood <SWood@wolfeboropolice.org>
**Sent:** Tuesday, December 15, 2020 10:04 AM
**To:** Amy Capone-Muccio
**Cc:** Puffer, Mark H.; James Pineo
**Subject:** Re: right to know- Amatucci

Good morning Amy,

De Facto Policy To IGNORE Police MISCONDUCT

The Police Commission does not maintain files on anyone. We are not an investigative body. If there were valid complaints of wrongdoing within our Department, we would have another agency do the investigation to reduce any possibility of suspected bias or collusion. Honestly, I don't even save her filings after I read them as she is regurgitating cases she has lost, which is all of them. She remains vexatious and seems intent on being a constant thorn is our sides. The Town has spent a great deal of money defending itself from her frivolous accusations but as far as I'm concerned, unless she has something legitimate and worthy of consideration, I simply don't wish to waste my time. I'm done venting now...

We honestly have nothing as a Commission and having spoke with Dean yesterday after your original email, he stated that the Department has nothing on file either. The investigation was conducted by the Belknap County Sheriff's Office.

THERE IS AN ACTIVE LAWSUIT IN THE U.S. DISTRICT COURT AGAINST RONDEAU 00449 CASE NUMBER

Steve

Sent from my iPhone

> On Dec 15, 2020, at 9:07 AM, Amy Capone-Muccio <tmsecretary@wolfeboronh.us> wrote:
>
> HI Steve;
>
> I did my best to explain no file, case has been closed but she insists we have files. I have all the correspondence down here I offered her to come look, there are responses in there from Jim and some from Owen in past. I just don't know what she is looking for? I assume the case is with the court. I have also told her we are not at liberty to discuss Mr. Maloney's employment with the town other than he is employed by us. She wants your file.
>
> This email is being sent to Mark Puffer as well for some advice?
>
>
> Amy Capone-Muccio
> Executive Assistant
> Town Manager's Office
> Town of Wolfeboro
> PO Box 629
> Wolfeboro, NH 03894
> (603) 569-8161
>
> CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended receipt (s) and may contain confidential and privileged information or otherwise be protected by law. Any unauthorized, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.
>

19

69

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Josephine Amatucci, Plaintiff | ) | Civil Action No.: 17-CV-237-JL |
| v. | ) | |
| Town of Wolfeboro, Shane Emerson and Stuart Chase, Defendants | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Josephine Amatucci, ("Amatucci") has filed a complaint against the Town of Wolfeboro and against several of its town officials and employees. After preliminary review by this Court, and after various motions and a hearing conducted by the Court to determine what the remaining claims against the Defendants are, four (4) claims remain in this action. They consist of a federal malicious prosecution claim against Defendants Shane Emerson and former police chief, Stuart Chase; a state malicious prosecution claim against the same two Defendants in their individual capacity; a third claim against the Town of Wolfeboro that is entitled a "Monell" claim for the Town having an alleged "de facto" policy not to investigate police misconduct; and a state law claim against the Town of Wolfeboro based upon

vicarious liability for the alleged state law tort of malicious prosecution that was allegedly committed by former Chief Chase and Officer Shane Emerson.

Amatucci has filed a motion for summary judgment in which she seeks judgment as a result of her arrest for speeding on May 7, 2014. The basis for her motion for summary judgment appears to be that she was found not guilty of speeding at the state court level and she believes that because the court determined she was not guilty there was no probable cause for arresting her for the offense of speeding.

Additionally, Amatucci states that under a theory of municipal liability, the Town has a de facto policy which was the moving force behind the violation of her constitutional rights. However, she cites no facts supporting this and there is no evidence that there is a "de facto" policy of the Town.

Because the evidence and the affidavits submitted with this memorandum show that there was probable cause to stop Amatucci for speeding, her motion for summary judgment should be denied. Additionally, because there was probable cause, Amatucci's claims for malicious prosecution on both the federal and state level fail.

Also, there is no evidence of any de facto policy in the Town of Wolfeboro not to investigate police misconduct and that claim must fail.

Finally, because the evidence demonstrates that there was probable cause to stop Amatucci, the vicarious liability claim against the Town of Wolfeboro also fails.



## II. FACTS[1]

This case arises out of a series of events that occurred on May 7, 2014 that resulted in Amatucci being pulled over for speeding and disobeying a police officer, and then arrested.

On May 7, 2014, Amatucci went to the Wolfeboro Police Department to lodge a complaint about a Wolfeboro Police Department Officer concerning a traffic violation. *Complaint at P.9.* Not satisfied with the response she received from the police department, Amatucci then went to the Town Hall to complain. *Complaint at P.10.* While there, Amatucci interacted with several town employees and a disturbance resulted. *Complaint at P.11.* As a result of the disturbance, the Wolfeboro Police Department was called to report to the Town Hall. *See, Affidavit of Stuart Chase at P.3, attached as Exhibit A.* Before the police arrived at the Town Hall, Amatucci left claiming she was going to go to the Carroll County Sheriff's Department to complain about the Wolfeboro police. *Complaint at P.11.*

The Town of Wolfeboro has a Police Commission which oversees and manages the Wolfeboro Police Department. When a New Hampshire municipality has a police commission, the police commission makes and enforces all rules necessary for the operation of the police department and has the authority to discipline and, if necessary, remove all police personnel. *RSA 105-C:4.* In a municipality which has adopted a police commission, the Board of Selectmen has no authority over the management of the police department and has no authority to discipline or, if

[1] The facts are assumed true for purposes of the Defendants' Motion for Summary Judgment and objection to Plaintiff's Motion for Summary Judgment

22

55

necessary, remove police personnel, and no authority to investigate charges against police personnel. See, *Affidavit of Becky Merrow at P.3, attached as Exhibit B.*

On May 7, 2014, Officer Shane Emerson of the Wolfeboro Police Department, a certified radar operator, was driving a cruiser equipped with a certified radar unit that was operating properly and accurately. See, *Affidavit of Shane Emerson at P.6, attached as Exhibit C; Order of Carroll County District Court (Patten, J.) at pp. 1-2, attached as Exhibit D.* As he was driving towards downtown Wolfeboro on Center Street, he was advised by dispatch that a person of interest involved in a disturbance at Town Hall to which he was responding had left that location. *Emerson Affidavit at P. 2; Order at p.2.* Amatucci was that person so the dispatcher gave Officer Emerson a description of her car. *Id.*

When Officer Emerson was near what is commonly referred to as the Mast Landing area, he observed a vehicle come around the curve which appeared to be speeding so he activated his radar. *Emerson Affidavit at P. 3; Order at p. 2.* There were two vehicles within its range of interception but it picked up the signal from the car moving the fastest which was Amatucci's car. *Order at p.2.*

The radar unit indicated Amatucci was traveling 42 miles per hour in a posted 30 miles per hour zone so Officer Emerson turned around, activated the cruiser's blue strobe lights and siren, and began to pursue Amatucci. *Emerson Affidavit at P. 5; Order at p. 2.* Instead of stopping, Amatucci continued north on Center Street for approximately 4 miles before she pulled over in response to a Carroll County Sheriff's Department Officer standing in the road signaling her to stop. *Id.*



VIOLATION OF SPEEDY TRIAL

On June 25, 2015, a trial was held on the charges of speeding and disobeying a police officer in the Carroll County Circuit Court before Judge Patten. In a written order, Judge Patten found Amatucci not guilty of speeding. *Order at p. 1.* The Court found that Amatucci had been traveling 42 miles per hour in an area where the posted speed limit was 30 miles per hour. *Order at pp. 2-3.* The Court further found, however, that the prosecution had failed to prove beyond a reasonable doubt that Amatucci had been traveling at a speed that was "unreasonable and imprudent for the conditions existing" and that it had therefore failed to prove a violation of the state's speeding statute, RSA 265:60. *Order at p.3.*

The Court then found Amatucci guilty of disobeying a police officer, a Class B Misdemeanor, for failing to stop for the police once they had activated their lights and sirens in an attempt to pull her over. *Order at p. 4.*

The Court determined that even though Amatucci was traveling 12 miles per hour over the posted speed limit, there was no evidence that she was traveling at a speed that was unreasonable and imprudent for the conditions existing and accordingly found her not guilty of speeding. *Order at p. 3.*

## III. ARGUMENT

**A. Amatucci's claims for federal malicious prosecution and state malicious prosecution fail because of the existence of probable cause.**

A plaintiff may bring a suit under §1983 for malicious prosecution if she can establish that: "The defendant (1) caused; (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal

24

57

proceedings terminated in Plaintiff's favor." <u>Hernandez-Cuevas v. Taylor</u>, *723 F.3d. 91, 100-101 (1st. Cir. 2013).*

The elements of a state common law malicious prosecution claim are similar. To prevail on a claim for malicious prosecution, a plaintiff must demonstrate that: "(1) he was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in his favor." <u>Ojo v. Lorenzo</u>, *164 N.H. 717, 727 (2013).*

Probable cause exists "when, at the time of the arrest, the facts and circumstances within the officer's knowledge...are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." <u>Holder v. Town of Sandown</u>, *585 F.3d. 500, 504 (1st Cir. 2009).*

At the time that Officer Emerson stopped Amatucci on May 7, 2014, Officer Emerson was a certified radar operator and the radar unit in his cruiser was certified and still within the certification period when the stop occurred. *Emerson Affidavit at P.6; Order at pp. 1-2.* Officer Emerson stated that he checked on the operational accuracy of the radar unit in his cruiser by using pre-set tuning forks, both before and after his shift, and determined the radar unit to be operating properly and accurately. <u>*Id.*</u>

Officer Emerson also stated that while he was traveling towards the downtown area of Wolfeboro on Center Street, he was advised by dispatch that there was a disturbance at the Town Hall and he was responding to that incident.



He was also advised that the person of interest had left that location. *Emerson Affidavit at P. 2; Order at p. 2.*

Officer Emerson stated that when he was near an area commonly referred to as Mast Landing he observed a vehicle come around the curve which appeared to be speeding. *Emerson Affidavit at P. 3; Order at p. 2.* He stated that he activated his radar at a point that two vehicles were in the radar's range of interception. The radar picked up the signal from the car moving the fastest and it was determined that Amatucci was driving the car and the read out showed that she was traveling 42 miles per hour in a posted 30 mile per hour zone. *Order at p. 2.*

Officer Emerson advised dispatch that he was attempting to stop Amatucci and the reason for the stop was that she was going 42 miles per hour in a 30 mile per hour zone. *Emerson Affidavit at PP. 3 & 4; Order at pp. 2-3.*

In an Order dated June 25, 2015, after a trial on the merits, the Carroll County Circuit Court (Patten, J.) found that Officer Emerson was a certified radar operator and that the radar equipment was certified and was operating properly and accurately. *Order at pp. 1-2.* Judge Patten also determined that Amatucci was going 42 miles per hour in a 30 mile per hour zone. *Order at pp. 3-4.* Judge Patten found Amatucci not guilty of speeding even though she was exceeding the speed limit by 12 miles per hour because he determined that there was no basis for finding that Amatucci was traveling at a speed which was unreasonable and imprudent for the conditions existing having in mind the actual and potential hazards associated with those conditions. *Order at p. 3.*

He based his ruling on RSA 265:60. That statute, at Section I, prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Section II of RSA 265:60 provides that the speed of a vehicle in excess of the limits specified, shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful. Judge Patten specifically determined that Amatucci was traveling 42 miles per hour in the posted 30 mile per hour zone. The fact that she was traveling 12 miles per hour over the speed limit is sufficient to establish probable cause for the stop.

The Order of the Carroll County District Court finding that Amatucci was driving 42 miles per hour in a 30 mile per hour zone is binding upon Amatucci. When assessing whether a state court order has preclusive effect, federal courts apply the law of the state that issued the order. *SBT Holdings, LLC v. Town of Westminster*, *547 F.3d. 28, 36 (1st. Cir. 2008).* Under New Hampshire law, collateral estoppel, the doctrine barring relitigation of issues that have been previously decided in other pleadings is appropriate when the following requirements are met:

> The issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared in the first action or have been in privity with someone who did so. Further, the party to be estopped must have had a full and fair opportunity to litigate the issue and the finding must have been essential to the first judgment.

*Sempion v. Calivas*, *139 N.H. 1, 7 (1994).*

27

60

Here, Amatucci was a party to the prosecution for speeding and disobeying a police officer. The finding of the Carroll County District Court that she was going 42 miles per hour in a 30 mile per hour zone is the same as the issue presented here. She had a full and fair opportunity to litigate and the finding was essential to the judgment. She does not have a right to relitigate the issue in this Court.

Accordingly, because there was probable cause to stop Amatucci for speeding, her claims for federal malicious prosecution and for state common law malicious prosecution fail.

**B. Amatucci's "Monell" claim against the Town of Wolfeboro fails.**

Amatucci repeatedly asserts that the Town of Wolfeboro and or Town Officials in their official capacity are liable pursuant to *Monell v. Department of Social Services, 436 U.S. 658 (1978)*. She alleges that, under the 4th Amendment, the Town is liable to her for malicious prosecution for speeding, because that prosecution was the effectuation of "de facto" municipal policies to ignore police misconduct and police misconduct complaints, and to violate her rights when she complained about the overall police department to town officers.

Under *Monell, 436 U.S. at pp.690-691 (1978)*, "[l]ocal governing bodies...can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief" for alleged constitutional violations arising from "a policy statement, ordinance, or regulation or decision officially adopted and promulgated by that body's officers." SEE EMAIL OF POLICE COMMISSIONER REFUSING TO INVESTIGATE PAGE 19

28

41

Municipal liability can be asserted "where the municipality itself causes the constitutional violation at issue." *Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989)(emphasis in original)(quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).*

As stated above, Amatucci asserts that the Town maintained a "de facto" policy of refusing to investigate complaints of police misconduct. She claimed that this policy caused the constitutional violations alleged in this action by allowing Town officials and Wolfeboro police department officers to feel free to act with impunity in violating her rights.

The Court of Appeals for the 1st Circuit has recently described the essential elements of a *Monell* claim:

> In Monell...the Supreme Court wrote that a "[l]ocal governing body...can be sued directly under Section 1983...[when it] unconstitutional[ly] implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." [436 U.S. at 690].
>
> However, the Court went on to hold that:
>
> The language of Section 1983, read against the background of the legislative history...compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official policy of some nature caused the constitutional tort....[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983.
>
> *Masso-Torrellas v. Mun. of Toa Alta, 845 F.3d. 461, 468-69 (1st Cir. 2017)(quoting Monell, 436 U.S. at 691-94).*



The crux of Amatucci's claim is that she claims that various Town officials failed to investigate police misconduct and that this caused her constitutional injury. Instead, she makes the conclusory allegation that there is a policy of failure to investigate police misconduct. The basis for this assertion is that she was told that the Town Board of Selectmen did not have jurisdiction over the police but that the Wolfeboro Police Commission has jurisdiction.

There is no evidence of any plausible allegation that the Town was acting pursuant to any statute, ordinance, regulation, or custom. Here, Amatucci was told that the municipality has no jurisdiction over the police department and that she would have to go to the police commission. *Merrow Affidavit at P.3.*

Here, Amatucci only alleges what individual Town employees did. She makes no allegations that the Town ever implemented anything. Pleading a Section 1983 claim against a municipality requires more than enumerating the alleged wrongdoings of its employees. Where the Defendant is a municipality, the Plaintiff must show that the "execution of a government's policy or custom inflicted the injury." *Monell, 436 U.S. at 694.*

As stated above, the reason for the prosecution of Amatucci for speeding was that she was exceeding the posted speed limit. As both Officer Emerson has stated and the Carroll County Circuit Court found, she was exceeding the speed limit by 12 miles per hour. Moreover, Amatucci has failed to demonstrate the existence of a "de facto" policy.



**C. Officer Emerson and Former Chief Chase are entitled to Qualified Immunity.**

Qualified immunity "shields government officials performing discretionary functions from liability for civil damages...[if] their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Fernandez-Salicrup v. Figeroa-Sancha, 790 F.3d. 312, 325 (1st Cir. 2015).* "This doctrine 'gives government officials breathing room to make reasonable but mistaken judgments' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Hunt v. Massi, 773 F.3d. 361, 367 (1st Cir. 2014)(quoting Carroll v. Carman, 135 S.Ct. 348, 350 (2014)).*

When assessing whether qualified immunity applies, Courts employ a two-prong analysis. *Fernandez-Salicrup, 790 F.3d. at 325 (1st Cir. 2015).* Under the first prong, the Court must assess "whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right." *Id.* Under the second prong, the Court determines "whether the right was 'clearly established' at the time of the Defendant's alleged violation". *Id.* If either prong is not satisfied, qualified immunity applies and the Plaintiff's claim fails.

Determining whether a right is clearly established for qualified immunity purposes requires assessing the right "in light of the specific context of the case, not as a broad, general proposition." *Mullenix v. Luna. 136 S.Ct. 305, 308 (2015)(per curiam).* As a result, the inquiry focuses on "whether the violative nature of [the] particular conduct is clearly established." *Id.*

31

64

Accordingly, to be clearly established, the "contours of [a] right must have been 'sufficiently definite that any reasonable official in the Defendant's shoes would have understood that he was violating it.'" Hunt, 773 F.3d. at 368 (quoting Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014)). In the context of Amatucci's claim here, the qualified immunity standard is satisfied "so long as the presence of probable cause is at least arguable." Glik v. Cunniffe, 655 F.3d. 78, 88 (2011)(quoting Ricci v. Urso, 974 F.2d. 5, 7 (1st Cir. 1992)).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Pontoo, 666 F.3d. 20, 31 (1st Cir. 2011). Probable cause does not require certainty or a high degree of assurance but only a fair probability to believe that the arrestee has violated the law. See, Holder v. Town of Sandown, 585 F.3d. 500, 504 (1st Cir. 2009).

A probable cause inquiry is an objective one, meaning that the "only relevant facts are those known to the officer." Id.

Here, Officer Emerson has stated that his radar showed that Amatucci's vehicle was going 42 miles per hour in a 30 mile per hour zone. He stated that the radar unit was certified and that it had been checked prior to him using it on May 7, 2014 and was therefore in operable condition. Moreover, as the trial court determined, Officer Emerson advised dispatch that the reason for the stop was 42 in a 30 by Mast Landing. RSA 265:60, II provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in a posted 30 mile

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding.

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

33

66

failed to stop while Officer Emerson had his blue lights and siren going, it was reasonable for former Chief Chase to assume that the arrest was proper.

Accordingly, he is also be entitled to qualified immunity.

The analysis for official immunity for the state law malicious prosecution claim is similar. There is one difference. In order to apply official immunity to a police officer's conduct, under state law, there is a subjective element in order to be protected by official immunity. In order to lose the protection of official immunity, a police officer must have acted recklessly or wantonly. *See, Farrelly v. City of Concord, 168 N.H. 430 (2015); Huckins v. McSwiney, 166 N.H. 176 (2014).*

As explained above, Officer Emerson had a reading from his radar unit that Amatucci was exceeding the posted speed limit by 12 miles per hour. His actions in stopping Amatucci after having this information cannot be characterized as wanton or reckless. The Carroll County Circuit Court determined also that Amatucci was exceeding the speed limit. Given this fact, Officer Emerson is entitled to official immunity from the state law claim for malicious prosecution.

Also, as explained above, former Chief Chase did not participate at all in the arrest of Amatucci. To the extent that he participated at all, he would be entitled to this same official immunity that Officer Emerson is.

Finally, the Town of Wolfeboro, because of the official immunity that both Officer Emerson and former Chief Chase have, is not vicariously liable for

(34)

67

Amatucci's state law claims. See, *Everett v. General Electric Company*, 156 N.H. 202 (2007).

## IV. CONCLUSION

For the reasons stated above, the Defendants are entitled to summary judgment on all claims. Amatucci's motion for summary judgment must be denied.

Respectfully submitted,

TOWN OF WOLFEBORO, SHANE EMERSON AND STUART CHASE,

By their attorneys,

RANSMEIER & SPELLMAN P.C.

Dated: July 26, 2018

By: /s/ Daniel J. Mullen
Daniel J. Mullen (NHBA #1830)
P.O. Box 600
Concord, NH 03302-0600
(603) 228-0477
E-mail: dmullen@ranspell.com

Mullen

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded this 26th day of July, 2018 to Josephine Amatucci, P.O. Box 272, Wolfeboro, NH 03896.

/s/ Daniel J. Mullen
Daniel J. Mullen

35

48

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed.R.App.P. 26.1, the Defendants, Stuart Chase, Town of Wolfeboro and Shane Emerson, state that none of them has a parent company.

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS.................................................. 1

TABLE OF AUTHORITIES............................................... 2

STATEMENT IN SUPPORT OF/AGAINST ORAL ARGUMENT.. 4

STATEMENT OF THE ISSUES........................................ 4

STATEMENT OF THE CASE.......................................... 5

STANDARD OF REVIEW................................................ 9

SUMMARY OF THE ARGUMENT.................................... 10

ARGUMENT............................................................ 12

1. The District Court properly determined that Ms. Amatucci's 4th Amendment malicious prosecution claim against the Defendants fails because of the existence of probable cause to arrest her for disobeying a police officer.............................................. 12

2. The District Court properly determined that there was no evidence that Ms. Amatucci was arrested for speeding (as opposed to merely cited) as she did not support that with any submission of evidentiary quality.............................................................. 15

3. The District Court properly determined that the Town of Wolfeboro was not liable for the malicious prosecution claim because there was no constitutional violation by the employees of the municipality. 17

Lie, Lie, Lie, Lie

36

70

speeding and that they were just trying to stop her car. However, the record entered into evidence refuted Ms. Amatucci's mistaken and incorrect claim. Defendants provided the District Court with Sgt. Thompson's affidavit which stated that "he was not involved in the Wolfeboro officers' first attempt to stop Ms. Amatucci" and that Sgt. Thompson "does not know what her initial speed was at the time the Wolfeboro officer tried to stop Ms. Amatucci." *Thompson Affidavit at ¶4; App. at p. 150.*

Based on the record before it, there was no evidence sufficient to rebut the Defendants' showing that Officer Emerson had probable cause to believe that Ms. Amatucci drove faster than the posted speed limit when he caused her to be pulled over.

**2. The District Court properly determined that there was no evidence that Ms. Amatucci was arrested for speeding (as opposed to merely cited) as she did not support that with any submission of evidentiary quality.**

Ms. Amatucci argued to the District Court that because speeding is a non-criminal traffic violation, she could not be pulled over for the offense of speeding. As the District Court pointed out, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. United States, *517 U.S. 806, 810 (1996). Order at p.18; Add. at p. 42;* See also, *RSA 594:10, I(a).* Pursuant to New Hampshire law, once an

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
Plaintiff,

v.

James O'Brien, et al,
Defendants.

Case No.: 15-CV-00356-JL

JURY TRIAL DEMANDED

**ANSWER AND AFFIRMATIVE DEFENSES OF THE VARIOUS DEFENDANTS OTHER THAN MR. O'BRIEN, WHO HAS NOT BEEN SERVED, TO THE VARIOUS DOCUMENTS THAT PLAINTIFF HAD SERVED ON THE DEFENDANTS AS "THE COMPLAINT"**

**Preliminary Statement of Counsel:** On August 5, 2016, the Magistrate Judge issued a Report and Recommendation reviewing a number of complaints and supplements the plaintiff had filed against certain municipal defendants. Judge Laplante approved the Report and Recommendation that allowed some, but not all, of plaintiff's complaints/counts against some, but not all, of the potential defendants, to proceed. The Clerk's office then issued summonses to the Town of Wolfeboro, Police Chief Chase, Robert Houseman, Director of Planning and Development, David Owen, Town Manager, Officer Shane Emerson, and former Officer, James O'Brien. The Defendants, other than Mr. O'Brien who lives out-of-state, voluntarily accepted service on August 11, 2016 through Attorney Puffer. The documents served on the defendants are inches thick and it is not clear what the Court intended the defendants to respond to as "the complaint." Therefore, out of caution, the defendants will respond to the allegations of the various documents, including to the Report And Recommendation, one by one and then will assert affirmative defenses at the end of this Answer applicable to all the allegations in the various documents served on the defendants. The defendants' Answer to the Report and

38

8b. Denied.

8c. Denied.

8d. Denied.

9. Denied. Admitted, however, that although the plaintiff was in fact exceeding the posted speed limit, the state trial court found that the prosecutor failed to prove that the excessive speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so and that she was, therefore, guilty of failing to stop for the police. ~~Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop.~~ Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response above to Paragraph 7.

10. Denied except admitted that the plaintiff came to the Town Hall and was shouting at Anne Marble and made a disturbance. Admitted that Mr. Houseman was the Town Planner but that he was acting as Town Manager that day. Denied that Mr. Houseman called the police department. Nor did he order anyone else to call the police or even know at the time anyone was calling the police. He escorted plaintiff to an empty courtroom (without touching her) in order to try to calm down Ms. Amatucci and to protect Ms. Marble.

Admitted that when the plaintiff arrived at Town Hall she first spoke to Town employee Cathy Ferland and asked to speak to Anne Marble. Admitted Anne Marble is/was the Administrative Assistant for the Town Manager. Denied that Ms. Marble was "alone" as there were other employees around, including, for example, Cathy Ferland and Brenda LaPointe. Ms.

Wherefore, defendants request that the Court and/or the Jury:

A) Dismiss all plaintiff's claims;

B) Grant such further relief to the defendants as is just and proper.

JURY TRIAL DEMANDED.

Respectfully submitted,

Shane Emerson, David Owen, Rob Houseman, Stuart Chase, and Town of Wolfeboro

By Their Attorneys,

Ransmeier & Spellman Professional Corporation

Dated: September 20, 2016

By: /s/ Garry R. Lane
Garry R. Lane (NHBA #2855)
One Capitol Street
P.O. Box 600
Concord, NH 03302-0600
Tel. (603) 228-0477

**CERTIFICATE OF SERVICE**

I hereby certify that this motion has been served this day on Mrs. Amatucci by conventional mail service at Josephine Amatucci, PO Box 272, Wolfeboro Falls, NH 03896.

/s/ Garry R. Lane
Garry R. Lane

4826-9384-1465, v. 1



123

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
Plaintiff,

v.

James O'Brien, et al,
Defendants.

Case No.: 15-CV-00356-JL

JURY TRIAL DEMANDED

**ANSWER AND AFFIRMATIVE DEFENSES OF THE VARIOUS DEFENDANTS OTHER THAN MR. O'BRIEN, WHO HAS NOT BEEN SERVED, TO THE VARIOUS DOCUMENTS THAT PLAINTIFF HAD SERVED ON THE DEFENDANTS AS "THE COMPLAINT"**

**Preliminary Statement of Counsel**: On August 5, 2016, the Magistrate Judge issued a Report and Recommendation reviewing a number of complaints and supplements the plaintiff had filed against certain municipal defendants. Judge Laplante approved the Report and Recommendation that allowed some, but not all, of plaintiff's complaints/counts against some, but not all, of the potential defendants, to proceed. The Clerk's office then issued summonses to the Town of Wolfeboro, Police Chief Chase, Robert Houseman, Director of Planning and Development, David Owen, Town Manager, Officer Shane Emerson, and former Officer, James O'Brien. The Defendants, other than Mr. O'Brien who lives out-of-state, voluntarily accepted service on August 11, 2016 through Attorney Puffer. The documents served on the defendants are inches thick and it is not clear what the Court intended the defendants to respond to as "the complaint." Therefore, out of caution, the defendants will respond to the allegations of the various documents, including to the Report And Recommendation, one by one and then will assert affirmative defenses at the end of this Answer applicable to all the allegations in the various documents served on the defendants. The defendants' Answer to the Report and



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

123

Josephine Amatucci,
Plaintiff,

v.

James O'Brien, et al,
Defendants.

Case No.: 15-CV-00356-JL

JURY TRIAL DEMANDED

**ANSWER AND AFFIRMATIVE DEFENSES OF THE VARIOUS DEFENDANTS OTHER THAN MR. O'BRIEN, WHO HAS NOT BEEN SERVED, TO THE VARIOUS DOCUMENTS THAT PLAINTIFF HAD SERVED ON THE DEFENDANTS AS "THE COMPLAINT"**

**Preliminary Statement of Counsel:** On August 5, 2016, the Magistrate Judge issued a Report and Recommendation reviewing a number of complaints and supplements the plaintiff had filed against certain municipal defendants. Judge Laplante approved the Report and Recommendation that allowed some, but not all, of plaintiff's complaints/counts against some, but not all, of the potential defendants, to proceed. The Clerk's office then issued summonses to the Town of Wolfeboro, Police Chief Chase, Robert Houseman, Director of Planning and Development, David Owen, Town Manager, Officer Shane Emerson, and former Officer, James O'Brien. The Defendants, other than Mr. O'Brien who lives out-of-state, voluntarily accepted service on August 11, 2016 through Attorney Puffer. The documents served on the defendants are inches thick and it is not clear what the Court intended the defendants to respond to as "the complaint." Therefore, out of caution, the defendants will respond to the allegations of the various documents, including to the Report And Recommendation, one by one and then will assert affirmative defenses at the end of this Answer applicable to all the allegations in the various documents served on the defendants. The defendants' Answer to the Report and

43

8b. Denied.

8c. Denied.

8d. Denied.

9. Denied. Admitted, however, that although the plaintiff was in fact exceeding the posted speed limit, the state trial court found that the prosecutor failed to prove that the excessive speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response above to Paragraph 7.

10. Denied except admitted that the plaintiff came to the Town Hall and was shouting at Anne Marble and made a disturbance. Admitted that Mr. Houseman was the Town Planner but that he was acting as Town Manager that day. Denied that Mr. Houseman called the police department. Nor did he order anyone else to call the police or even know at the time anyone was calling the police. He escorted plaintiff to an empty courtroom (without touching her) in order to try to calm down Ms. Amatucci and to protect Ms. Marble.

Admitted that when the plaintiff arrived at Town Hall she first spoke to Town employee Cathy Ferland and asked to speak to Anne Marble. Admitted Anne Marble is/was the Administrative Assistant for the Town Manager. Denied that Ms. Marble was "alone" as there were other employees around, including, for example, Cathy Ferland and Brenda LaPointe. Ms.

43

74

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding. GOOD FAITH NOT ENOUGH

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had



vicarious liability for the alleged state law tort of malicious prosecution that was allegedly committed by former Chief Chase and Officer Shane Emerson.

Amatucci has filed a motion for summary judgment in which she seeks judgment as a result of her arrest for speeding on May 7, 2014. The basis for her motion for summary judgment appears to be that she was found not guilty of speeding at the state court level and she believes that because the court determined she was not guilty there was no probable cause for arresting her for the offense of speeding.

Additionally, Amatucci states that under a theory of municipal liability, the Town has a de facto policy which was the moving force behind the violation of her constitutional rights. However, she cites no facts supporting this and there is no evidence that there is a "de facto" policy of the Town.

Because the evidence and the affidavits submitted with this memorandum show that there was probable cause to stop Amatucci for speeding, her motion for summary judgment should be denied. Additionally, because there was probable cause, Amatucci's claims for malicious prosecution on both the federal and state level fail.

Also, there is no evidence of any de facto policy in the Town of Wolfeboro not to investigate police misconduct and that claim must fail.

Finally, because the evidence demonstrates that there was probable cause to stop Amatucci, the vicarious liability claim against the Town of Wolfeboro also fails.

46



Indeed, in this case, the evidence shows that she was driving over the speed [illegible] 12 miles per hour and this, by itself, gave the officer probable cause to [illegible] her.

Given that there was probable cause, there can be no claim for malicious [illegible]tion and the Defendants are entitled to judgment as a matter of law.

There is also absolutely no evidence in the record that Ms. Amatucci was [illegible]ed for speeding. To the contrary, she was arrested for disobeying an officer [illegible] was found guilty of that charge at trial. Everything in this case regarding her [illegible], her detention and bail all stemmed from her failure to stop and failure to [illegible] a police officer. It did not stem from the stop for speeding.

Similarly, because there is no constitutional tort in this action, there can be [illegible] *Monell* claim against the Town of Wolfeboro. Furthermore, there is absolutely [illegible] evidence that there was a policy statement, ordinance or regulation officially [illegible]opted and promulgated by the Town that interfered with Ms. Amatucci's [illegible]stitutional rights. Ms. Amatucci claims that various town officials failed to [illegible]vestigate police misconduct and this caused her constitutional injury. She bases [illegible]is claim on the fact that she was told that the municipality had no jurisdiction [illegible]ver the police department and that she would have to go to the police commission. Here, Ms. Amatucci has failed to demonstrate by any evidence whatsoever, that a





# THE STATE OF NEW HAMPSHIRE

## DEPARTMENT OF SAFETY, DIVISION OF STATE POLICE

33 Hazen Dr,Concord NH 03305 (603) 223-3867

## CRIMINAL HISTORY RECORD

SID# NH644856 Name AMATUCCI, JOSEPHINE S DOB 09/27/1938

| | | | | | |
|---|---|---|---|---|---|
| POB | MA | Hair | Brown | Weight | 165 |
| Sex | F | Eye | Brown | Height | 67 |
| ADDR | PO BOX 272<br>WOLFEBORO FALLS NH 03896 | Race | White | Prints | Y |
| | | FBI | :548419AE4 | Photo Available | Y |
| OLN | | FPC | | Palm Available | Y |

**Alias**

Name DOB

**Caution**

Code Comments

**Body Markings**

Code Description Comments

**Cycle 001**

**Arrest**

| | | | |
|---|---|---|---|
| Tracking # | TNH040140236 | Agency | WOLFEBORO PD |
| Arrest Date | 05/07/2014 | Violation Date | 05/07/2014 |
| Arrested on Warrant | | Violation End Date | |
| Offense | 265:4 II, DISOBEYING POLICE OFC | Violation on Or About | N |
| Degree | MISDEMEANOR | Fingerprint Supported | Y |
| Inchoate | | | |
| Special condition | | | |
| Comments | | | |

Remove

**Complaint as Filed Offense (CAAFF)**

| | | | |
|---|---|---|---|
| Docket | 464-2014-CR-00836 | Violation Date | 05/07/2014 |
| Charge Id | 941112C | Violation End Date | |
| Degree | MISDEMEANOR A | Inchoate | |
| Offense | 265:4, Disobeying an Officer | Court | OSSIPEE-D |
| Comments | | | |

Must Be Removed A Void Charge

(47)

78

Here, Amatucci was a party to the prosecution for speeding and disobeying a police officer. The finding of the Carroll County District Court that she was going 42 miles per hour in a 30 mile per hour zone is the same as the issue presented here. She had a full and fair opportunity to litigate and the finding was essential to the judgment. She does not have a right to relitigate the issue in this Court.

NOT ARREST

Accordingly, because there was probable cause to stop Amatucci for speeding, her claims for federal malicious prosecution and for state common law malicious prosecution fail.

**B. Amatucci's "Monell" claim against the Town of Wolfeboro fails.**

Amatucci repeatedly asserts that the Town of Wolfeboro and/or Town Officials in their official capacity are liable pursuant to <u>Monell v. Department of Social Services</u>, *436 U.S. 658 (1978)*. She alleges that, under the 4th Amendment, the Town is liable to her for malicious prosecution for speeding, because that prosecution was the effectuation of "de facto" municipal policies to ignore police misconduct and police misconduct complaints, and to violate her rights when she complained about the overall police department to town officers.

Under <u>Monell</u>, *436 U.S. at pp.690-691 (1978)*, "[l]ocal governing bodies...can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief" for alleged constitutional violations arising from "a policy statement, ordinance, or regulation or decision officially adopted and promulgated by that body's officers."

# State of New Hampshire

RECEIVED
SEP 11 2015
OSSIPEE
DISTRICT DIVISION

Carroll County County

District Court

No.

MOTION FOR Public Jury Trial

vs.

The Defendant moves as follows:

~~State~~ Demands A Public Jury Trial
she was Accused of A Misdemeanor A
Doesn't Matter the Conviction.

I hereby certify that duplicates of this motion were:

☐ delivered

☒ mailed

to: Timothy Morgan

on 9/12/2015

Signed Josephine Amatucci

Address P.O. Box 272
Wolfeboro Falls N.H. 03896

Telephone

49

80

MOTION

376

7/22/15

The STATE OF NEW HAMPSHIRE

SUPERIOR COURT

CARROLL, SS.

STATE
V.
JOSEPHINE AMATUCCI

464-CV-CR-00836

MOTION FOR APPEAL

The DEFENDANT IS DEMANDING AN APPEAL BEFORE THE SUPERIOR COURT, AS with PUBLIC JURY TRIAL NOT A BENCH TRIAL IN THE SUPERIOR COURT, AS SHE WAS ACCUSED OF A VIOLATION OF A MISDEMEANOR A.

RESPECTFULLY

JOSEPHINE AMATUCCI

C. TIMOTHY MORGAN

JULY 22, 2015

Josephine Amatucci

noted - no action required
8/6/15

50

81

387

THE STATE OF NEW HAMPSHIRE

SUPERIOR COURT CARROLL SS

CSC-AUG 6'15PM 2:38

State

v.

Josephine Amatucci Case 464-2014-CR-00836

A DEMAND FOR A TRIAL BY A PUBLIC JURY

This is to advise the Superior court that the defendant is demanding a trial by a public jury.

The defendant was accused of a Misdemeanor A and immediately requested a trial by a public jury, which according to the law she should have been given a public jury trial without a bench trial in the District court. That according to the law she was railroaded by the district court, and that this case should be dismissed immediately as the court trespassed the law when they refused her a jury trial without a district court bench trial. The judge wanted to make sure she was convicted first so that she could never accuse the police of a malicious proscution. The police violated my First Amendment Right when they retaliated because I accused the police of misconduct, and their plan was to 'get me' and stop me from reaching the Sheriff's office, that they knew I was on my way to the Sheriff's office to tell the Sheriff that the police chief Stuart Chase had just criminally threatened me in the police station because I asked him to

51

82

CSC-AUG 6'15PM 2:38

# State of New Hampshire

RECEIVED
SEP 11 2015
OSSIPEE
DISTRICT DIVISION

Carroll County County

District Court

14CR836 No.

MOTION FOR Public Jury Trial

vs.

The Defendant moves as follows:

~~State~~ Demands A Public Jury Trial
she was accused of A Misdemeanor A
Doesn't matter the conviction.

I hereby certify that duplicates of this motion were:

☐ delivered
☒ mailed

to: Timothy Morgan

on 9/12/2015

Signed [signature]

Address P.O. Box 272
Wolfeboro Falls N.H. 03896

Telephone

AOC-607-245

Denied This Court has no authority to provide a "jury trial"
10/2/2015
[signature] Patten, Justice
3rd Circuit Court

MOTION

#3

52

144

374

THE STATE OF NEW HAMPSHIRE

SUPERIOR COURT

CARROLL, SS.

STATE
V.
JOSEPHINE AMATUCCI

464-CV-CR-00836

MOTION FOR APPEAL

THE DEFENDANT IS DEMANDING AN APPEAL BEFORE with # PUBLIC JURY TRIAL NOT A BENCH TRIAL IN THE SUPERIOR COURT, AS SHE WAS ACCUSED OF A VIOLATION OF A MISDEMEANOR A.

RESPECTFULLY

JOSEPHINE AMATUCCI

C. TIMOTHY MORGAN

JULY 22, 2015

Josephine Amatucci

noted - no action required
8/6/15

84

53

RECEIVED
SEP 11 2012
OSSIPEE DISTRICT COURT

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 3rd Circuit - District Division - Ossipee

Case Name: ____________

Case Number: 464-2003-CR-02408
(if known)

MOTION FOR: JUDGE TO SET ASIDE JUDGMENT OR (MANDATORY) ACCORDING TO ATTACHED PAPERS-

The ____________ states the following facts and requests the following relief:

YOUR HONOUR: I THOUGHT IT WOULD BE EASIER IF YOU SAW THE PAPERS ATTACHED. THAT YOU SAW THE NO-CONTACT ORDER. THAT YOU SAW THAT THE ORDER WAS A CIVIL (MUTUAL) RESTRAINING ORDER IN EQUITY. THEREFORE, YOU MUST (MANDATORY) SET ASIDE YOUR ORDER TO ISSUE A WARRANT IN THIS CASE. IT WAS A VOID JUDGMENT. A VOID ORDER. THAT YOU LACKED SUBJECT MATTER JURISDICTION TO ISSUE A WARRANT, AND A WARRANT DOES NOT ISSUE FOR A CIVIL MATTER. AS THE POLICE DO NOT HAVE AUTHORIZATION TO PROSECUTE CIVIL MATTERS

Date: 9/11/2012

Signature: [signature]

Telephone: ____________

Address: P.O. BOX 242 WOLFEBORO FALLS N.H. 03896

I certify that on this date I mailed/delivered a copy of this document to: Copy sent to Wolfeboro Police SGT. KEATON PUBLIC DEFENDER

(other party) ____________ or (other party's attorney) ALL MOTIONS SENT Filed TO ABOVE

Date ____________ Signature ____________

**ORDER**

☐ Motion granted. ☐ Motion denied. 9.12.12 As per its order of 9.6.12, the Court takes no action on this Motion.

Recommended:

Date ____________ Signature of Marital Master ____________

Printed Name of Marital Master ____________

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

Date: 9.12.12

Signature of Judge: [signature]

Printed Name of Judge: Robert Varney

54

85

RECEIVED
SEP - 4 2012
OSSIPEE DISTRICT COURT

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name:

Case Name: JOSEPHINE AMATUCCI V. JAMES O'BRIEN

Case Number: (if known) 464-2003-CR-02708

**MOTION FOR:** CLARIFICATION

The PLAINTIFF JOSEPHINE AMATUCCI states the following facts and requests the following relief:

UPON FURTHER CONSIDERATION OVER THE WEEKEND, I NOW BELIEVE THAT THE JUDGE IN HIS MOTION (ORDER) IS ACTUALLY STATING THAT HE DID NOT ISSUE A WARRANT IN 2003.

WOULD THIS HONORABLE JUDGE (VAREY) PLEASE CLARIFY IN A CLEAR STATEMENT, THAT HE DID NOT ISSUE A WARRANT IN 2003 FOR MY ARREST AND DETENTION.

THANKYOU

Date

Signature: Josephine Amatucci

Telephone: 603-569-2429

Address: P.O. Box 272, Wolfeboro Falls N.H. 03896

I certify that on this date I mailed/delivered a copy of this document to:

James O'Brien Lawyer Ransmeier (other party) or (other party's attorney)

Date: Sept. 4, 2012

Signature: Josephine Amatucci

## ORDER

☐ Motion granted. ☐ Motion denied.

These motions concern a case, long closed, over which the court declined jurisdiction. The court will entertain no further motions on this matter.

Recommended:

Date | Printed Name of Marital Master | Signature of Marital Master

So Ordered:

9.6.12
Date

Printed Name of Judge

Signature of Judge
Robert Varney

55

86

MARKED A.G.

639

THE STATE OF NEW HAMPSHIRE

SUPREME COURT

STATE

V.

JOSEPHINE AMATUCCI

CASE NO. 2015-0269

SUPPLEMENT TO BRIEF

That under .....ARGUMENT........I should have emphasizied and stated, that my right to a jury trial is based on the theory of the United States Supreme Court where they state that a right to a jury trial is based on the penalty AUTHORIZED for the offense and NOT the penalty IMPOSED by the judge. That if the offense is a 'serious offense' where the penalty authorized by the statute is the possibility of jail time up to a year, more than 6 months, then you have a GUARANTEED RIGHT TO A JURY TRIAL ACCORDING TO THE CONSTITUTION. Under the federal Sixth Amendment and the State Fourteenth Amendment, under DUE PROCESS. And where the authorized penalty for Disobeying a Police Officer is up to a year in jail, it is a 'serious offense' and a jury trial is GUARANTEED. Therefore, the Defendant is asking that this Supreme Court either reverses her conviction or allow her a jury trial of her peers, according to the LAW.



Respectfully,

Josephine Amatucci

January 22, 2016

c. attorney General

54

88

4767

THE UNITED STATES DISTRICT COURT

DISRICT OF NEW HAMPSHIRE

CASE 449 (JADEEN)

Josephine Amatucci

v.

Town of Wolfeboro, Police Chief Dean Rondeau,

Steve Champaign, Robert Maloney, Sargeant

William Wright, prosectors Judy Estes and

Timonthy Morgan

JURISDICTION

1. This action is brought pursuant to 42 U.S.C. 1983. Jurisdiction is founded upon 28 U.S.C. 1331 (1x3x4) and aforementioned statutory provision. Plaintiff further invokes the supplemental jurisdiction of the court under 28 U.S.C. 1`367 (a) to hear and adjudicate state law claims.

PARTIES

2. Plaintiff Josephine Amatucci is a citizen of the United States and a resident of Wolfeboro, New Hampshire;

3. Police Chief Dean Rondeau, 251 S. Main Street, Wolfeboro, NH 03894, sued Individually;

4. Town of Wolfeboro, 84 South Main Street, P.O. Box 629, Wolfeboro, NH 03894 sue in Official Capacity;

5. Belnap Sherff's Dept. 42 County Drive, Laconia, New Hampshire, 03246 official capacity;

6. Sargeant William Wright sued individually;

58

89

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH 03864

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

**June 16, 2016**

**JOSEPHINE AMATUCCI**
**PO BOX 272**
**WOLFEBORO FALLS NH 03896**

Case Name: **State v. Josephine Amatucci**
Case Number: **464-2014-CR-00836**

The following Order was entered regarding Defendant's "Motion Ordering Judge Patten to Remove My Conviction Immediately":

6/9/2016 - This judge has recused himself from any further matters or pleadings involving or filed by Ms. Amatucci.

Elaine J. Lowe
Clerk of Court

(464260)

C: Simon Robert Brown, ESQ

59



# THE STATE OF NEW HAMPSHIRE

DEPARTMENT OF SAFETY, DIVISION OF STATE POLICE

33 Hazen Dr,Concord NH 03305 (603) 223-3867

CRIMINAL HISTORY RECORD

SID# NH644856 Name AMATUCCI, JOSEPHINE S DOB 09/27/1938

| | | | | | |
|---|---|---|---|---|---|
| POB | MA | Hair | Brown | Weight | 165 |
| Sex | F | Eye | Brown | Height | 67 |
| ADDR | PO BOX 272<br>WOLFEBORO FALLS NH 03896 | Race | White | Prints | Y |
| | | FBI | :548419AE4 | Photo Available | Y |
| OLN | | FPC | | Palm Available | Y |

**Alias**

Name DOB

**Caution**

Code Comments

**Body Markings**

Code Description Comments

**Cycle 001**

**Arrest**

| | | | |
|---|---|---|---|
| Tracking # | TNH040140236 | Agency | WOLFEBORO PD |
| Arrest Date | 05/07/2014 | Violation Date | 05/07/2014 |
| Arrested on Warrant | | Violation End Date | |
| Offense | 265:4 II, DISOBEYING POLICE OFC | Violation on Or About | N |
| Degree | MISDEMEANOR | Fingerprint Supported | Y |
| Inchoate | | | |
| Special condition | | | |
| Comments | | | |

**Complaint as Filed Offense (CAAFF)**

| | | | |
|---|---|---|---|
| Docket | 464-2014-CR-00836 | Violation Date | 05/07/2014 |
| Charge Id | 941112C | Violation End Date | |
| Degree | MISDEMEANOR A | Inchoate | |
| Offense | 265:4, Disobeying an Officer | Court | OSSIPEE-D |
| Comments | | | |





5247

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Judge Joseph Laplante

**20-cv-1194**

MOTION FOR JUDGE LAPLANTE TO

VOID THE SUMMARY JUDGMENT HE ALLOWED TO ATTORNEY MULLEN

1. The Plaintiff is asking that Judge laplante VOID the summry judgment of Mullen that he illegally allowed, which addressed the charge of disobeying a police officer, when the charge was VOIDED, OF NO LEGAL FORCE under the Sixth amendment Speedy Trial Clause, when the police did not hold a trial within the legal limit of 70-90 days after they charged me. Therefore Judge Laplante you had no JURISDICTION, no legal right to allow charges that did not exist. That were VOID. Where PROBABLE CAUSE did not exist. And in doing so caused injury to the Plaintiff. When she was denied her motion for summary judgment.

2. As under the Sixth Amendment where the police did not hold a trial within 70-90 days after they initially charged and arrested her for disobeying a police officer, the charges and any ruling allowed by the 3rd circuit judge Patten

91



Case 1:20-cv-01194 Document 1 Filed 12/16/20 Page 2 of 2

at a trial that was illegally held one year and 3 weeks after she was formerly charged and arrested, were automatically VOID OF NO LEGAL FORCE, under the Sixth Amendment Speedy Trial Clause.

3. Besides the fact that you yourself Judge Patten also had NO JURISDICTION to hear and rule on charges that were void of no legal force.

4. That you Judge Laplante had NO JURISDICTION to hear and allow Mullen's summary judgment which was based on the offense of disobeying a police officer that was legally VOID OF NO LEGAL FORCE, that under the Speedy Trial Clause did not exist, that was automatically voided after 70-90 days that the police had to hold a trial.

5. Therefore UNDER THE LAW Judge Laplante you must put in writing that the summary judgment allowed Mullen was an error and you must void it immediately, as required under the law.

Respectfully,

Josephine Amatucci

December 15, 2020

c. Attorney Mullen

Josephine Amatucci

62

92

U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JAN 07 2019

FILED

United States District Court
District of New Hampshire

Josephine Amatucci
v.
Stuart Chase, et al

Docket 17-cv-00237 U.S. Dist. Court
See Judicial Complaint # 01-18-90024

Please put this in file

ERROR OF COURT
RECONSIDERATION FACTS

This Judge dismissed my Fourth Amendment claim stating that I was not arrested for speeding but only for the disobeying a police officer offense which was a lie, a lie, a lie.

I proved from evidence that I was indeed arrested for speeding. And the 1 year and 1 month detainment is a Fourth Amend malicious prosecution. As the police had no probable cause to arrest me, as speeding is not a crime in New Hampshire.

I also included evidence of a document which I have given another copy to Charley as this document was filed with all my evidence but it is not on the courts computer, so Charley was give another copy.

The Judge stated that I did not have a Monell case unless I proved a pattern of the municipality, but the document I gave Charley shows one incident by a policymaker of a violation of my civil rights constitutes a Monell claim. Besides all the evidence of the towns refusing to investigate was evidence already in the files.

Therefore, this Judge is again railroading me and he has lost all jurisdiction in this case. The Judge is corrupt to the core. He better reverse his denial of my claims or I will have you disbarred.

63
93

EXHIBIT 16

I have a Fourth Amendment Malicious Prosecution and a Monell claim and the Judge is going to allow my claims. As I have been stating all along a Monell claim can indeed be under a Pattern OR OR OR one Event By a Policymaker such as Alice Chief Chase and Prosecutor to CONSTITUTE A Policy of the Municipality.

There is going to be No Restrictions whatsoever on any of the case I filed regarding Chase, Town, or anyone else in the 2014 Event.

I don't want to Ever see you again, I want you to step down as you are Prejudice By denying me these claims & trying to restrict me from filing any more motions.

You are going to make All my new causes of action to move forward as you lost all Jurisdiction and This Case is NOT Dismissed.

Josephine Amatucci
P.O. Box 272
January 7, 2014
C. Preti, Flaherty & Ransheier

EXHIBIT 16

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH 03864

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

**June 16, 2016**

**JOSEPHINE AMATUCCI**
**PO BOX 272**
**WOLFEBORO FALLS NH 03896**

Case Name: **State v. Josephine Amatucci**
Case Number: **464-2014-CR-00836**

The following Order was entered regarding Defendant's "Motion Ordering Judge Patten to Remove My Conviction Immediately":

6/9/2016 - This judge has recused himself from any further matters or pleadings involving or filed by Ms. Amatucci.

Elaine J. Lowe
Clerk of Court

(464260)

C: Simon Robert Brown, ESQ

65

95

This was Mailed & Filed By Hollen's LawFirm Ransmeir

Page 1

Sent



1/27/17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Binfl

Josephine Amatucci,
Plaintiff,

v.

James O'Brien, et al,
Defendants.

Case No.: 15-CV-00356-JL Void

Now Case 00234
Did a Voluntary Dismissal

DEFENDANT CHASE'S OBJECTION
TO PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC 149) OF
JUDGE LAPLANTE'S ORDER (DOC 147) BASED ON THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION (DOC 142)

Defendant Chase, through counsel, objects to plaintiff's Motion for Reconsideration (Doc 149) for the following reasons:

The plaintiff's Motion for Reconsideration is based on the premise that Judge Laplante misunderstood plaintiff's proposed claim regarding alleged malicious prosecution. There is no evidence the Judge misunderstood anything or that the claimed misunderstanding would have mattered. Rather, he approved the Magistrate Judge's Report and Recommendation (Doc 142) which lays out the bases in detail for denying plaintiff's proposed amendment as futile.

The plaintiff's Motion for Reconsideration also falsely argues that Judge Patten, in the criminal case against her, found no probable cause. On the contrary, there is no place in that Judge's order where he finds "no probable cause" expressly or impliedly. Ms. Amatucci was charged with speeding and failure to obey an officer. The judge in that case specifically found that Ms. Amatucci was driving 42 mph in a 30 mph zone and found that she failed to stop for police pursuing her for about four miles. See Defendants' Motion for Judgment on the Pleadings and exhibits to that motion. Thus, there was probable cause for her arrest and prosecution on

66

The Judge Laplante is Trying to 1st say my arrest was only

or

Page 2

SENT

BINGO

both speeding and failure to obey.[1] The trial judge found that Ms. Amatucci was not guilty of speeding (even though she exceeded the speed limit by 12 mph) solely because the prosecutor failed to introduce evidence of road conditions that day. That does not mean that there was no probable cause for the arrest or the prosecution.

The prosecutor's failure to put in such evidence, or even Ms. Amatucci's success in beating the speeding violation, does not retroactively create lack of probable cause for the arrest and prosecution. In fact, the trial court found (and Ms. Amatucci is bound by collateral estoppel on that point), that she exceeded the speed limit by 12 mph. Moreover, the trial judge found that she failed to obey police officers pursuing her for almost four miles and that she was guilty of the crime she was charged with, failing to obey. Thus, the trial court's findings clearly establish the opposite of what Ms. Amatucci now argues. The trial judge's rulings, contrary to Ms. Amatucci's arguments, show there was, in fact, probable cause.

Moreover, as argued in defendant's original objection (doc 137), this proposed claim is barred both by res judicata and collateral estoppel for all the reasons argued in defendants' Motion for Judgment on the Pleadings (Doc 132).

While Judge Laplante has not yet ruled on the Magistrate Judge's Report and Recommendation (Doc 144), the Magistrate Judge's Report and Recommendation has proposed that the Court dismiss all plaintiff's claims against Chief Chase because those claims are barred by res judicata. The proposed malicious prosecution claim (whether under common law or as a Section 1983 claim) also would be barred by res judicata as it arises out of the same transaction or occurrence as the prior case, and thus, the proposed amendment would be futile. The claim,

[1] If Ms. Amatucci had not refused to stop, it is doubtful, however, that she ever would have been arrested for speeding alone.

Sent

speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so for over 4 miles and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose, but it would not have mattered to them, and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response, above, to Paragraph 7.

AND

Defendant O'Brien further specifically denies all the allegations against him. His involvement in this matter, contrary to the plaintiff's false and groundless allegations, was extremely limited. Mr. O'Brien responded, as he was legally required to do, to a call from police dispatch that Ms. Amatucci was causing a disturbance at the Town offices. By the time Ofc. O'Brien arrived at the Town offices, Ms. Amatucci had already left. Mr. O'Brien's sole involvement after that was to make a radio call back to police dispatch confirming that Ms. Amatucci was no longer at Town Hall. O'Brien did not make a phone call to Ofc. Emerson, did not call the Sheriff's Department and did not request anyone to chase or stop or arrest Ms. Amatucci. He was not in any way involved in the pursuit of Ms. Amatucci and was not present when she was pursued, stopped or arrested. After Ms. Amatucci was arrested and taken away, Officer O'Brien went to the location of Ms. Amatucci's car to relieve Chief Chase so that Chief Chase did not have to wait for the tow truck to arrive. As to the statement in the police log about Ofc. Emerson trying to stop "her," that was not a quote of Ofc. Emerson's police call to dispatch, but rather a conflation in the log prepared by the dispatcher, William Riley, of Emerson's statement that he was turning around to chase a speeding car (which he did not know was Ms. Amatucci). Officer

68

This verifies my entire first amendment claim - I was unlawfully arrested

98

Exhibit D

JUN 29 2015

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH 03864

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

June 26, 2015

SIMON ROBERT BROWN, ESQ
PRETI FLAHERTY BELIVEAU & PACHIOS PLLP
57 NORTH MAIN STREET
PO BOX 1318
CONCORD NH 03302-1318

Case Name: State v. Josephine Amatucci
Case Number: 464-2014-CR-00836

Enclosed please find a copy of the order rendered by the Court.

Elaine J. Lowe
Clerk of Court

(3)

C: Josephine Amatucci; Wolfeboro Police Department; Timothy Morgan, Esq.

69

99

1

Case 1:17-cv-00287-JL Document 138-1 Filed 07/26/18 Page 14 of 16

MULLEN'S MOTION FOR SUMMARY JUDGMENT

SENT

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding. GOOD FAITH NOT ENOUGH

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

70

100

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Carroll County

3rd Circuit Court-District Division

**IN RE: STATE OF NEW HAMPSHIRE V. JOSEPHINE AMATUCCI**

**464-2014-CR-00836**

ORDER AFTER TRAIL ON THE MERITS

This matter came on for a trial on the merits of two complaints entered against the defendant. The State and defendant participated. After due consideration of the testimony and other evidence submitted, as well as the court's view of the roadway area involved, the court enters the following findings of fact, rulings of law and order. The defendant is found NOT GUILY of the violation offense of speeding, complaint and GUILTY of the class B misdemeanor for disobeying a police officer.

The State entered two complaints against the defendant. The violation level offense alleges an event of what is commonly referred to as speeding. The specific allegations are that on May 7, 2014, the defendant drove her vehicle on a way, identified as Center Street, Wolfeboro, NH, at a speed greater than was reasonable and prudent under the conditions prevailing, and specified that defendant was traveling at a speed of 42 mile per hour, when the prima [sic] "facia" lawful speed at the time and place of violation being 30 mph. The class B misdemeanor offense alleges that on the same date and location, while operating her motor vehicle, she purposely neglected to stop when signaled to stop by law by a law enforcement officer, who was in a fully marked police cruiser and who signaled defendant to stop by use of emergency lights and sirens.

The evidence presented at trial shows, beyond a reasonable doubt, that defendant was operating her motor vehicle on a public way in New Hampshire, being Center Street in Wolfeboro, NH, on May 7, 2015. The evidence also shows that the officer who filed the complaint was a certified radar operator and that the radar unit in the officer's cruiser was certified and still within the certification period when the event occurred. The officer testified that he checked on the operational accuracy of the radar unit in his

71

101

2

cruiser by using preset tuning forks, both before and after his shift, and found determined the radar unit to be operating properly and accurately.

The evidence presented through the officer's testimony shows that he was traveling toward the downtown area of Wolfeboro on Center Street, and was advised by dispatch that the person of interest involved in the incident he was responding to had left that location. It is shown by dispatch log, State's exhibit 7, that the officer had been advised of description of the defendant's car. Although he testified that he was not on the look- out for her, it is reasonable to infer that he was indeed on the look- out for the defendant. The dispatch log, State's Exhibit 7, appears to support this inference.

The officer testified that when he was near what is commonly referred to as the "Mast Landing" area, he observed a vehicle come around the curve which appeared to be speeding. He testified that he activated his radar at a point that two vehicles were in the radar's range of interception. The radar picked up the signal from the car moving the fastest. It was ultimately determined that vehicle was driven by the defendant and the radar readout showed that defendant was traveling 42 miles per hour in a posted 30 mile per hour zone. This area, showing the officer's point of view, is depicted on the two photographs entered as State's exhibit 6.

It is at this point that the officer advised dispatch that he was "attempting to stop her on Center Street" and gives dispatch the defendant's license plate number. Exhibit 7 at 1252. At 1253, the officer advises dispatch that the "reason for the stop was 42 in a 30 by Mast Landing". Exhibit 7. Clearly the implication of this exchange is that the officer knew that the vehicle he observed was the defendant and he was going to try and stop her. In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his cell phone about who he should be pursuing. SET-UP

The officer testified that he activated his blue strobe lights and siren on his cruiser, pulled into the Mast Landing parking lot to turn around and began to pursue the defendant. The defendant continued to travel northbound on Center Street, Route 28, albeit apparently not speeding along the way, for approximately four miles, before she pulled over in response to a Carroll County Sheriff's Department standing in the road and signaling her to stop.

Case 1:17-cv-00237-JL Document 138-5 Filed 07/26/18 Page 4 of 5

There was some conflicting evidence presented in the officer's report which referred to two cars being situated ahead of the defendant's vehicle, whereas in his testimony, he stated that there only two cars, of which defendant was one, and the one that was traveling the fastest. Otherwise, there was no specific testimony about the road or whether conditions, the amount of traffic on the road generally, or on any side street, any pedestrian activity, or any other specific evidence of actual or potential hazards under those circumstances on the date and time of the alleged offense. The court's view of the location where defendant is alleged to have been speeding shows a well-traveled, narrow roadway, with multiple intersecting streets and driveways, but a clear view of the roadway ahead in either direction for some distance.

RSA 265:60, I prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in the posted 30 miles per hour zone, "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Here we have the seemly conflicting evidence of no specific conditions presented that there were actual or potential hazards at that place and time that the defendant was traveling 12 miles per hour over the posted speed limit, but that that speed is prima facie unreasonable and imprudent. This conflicting evidence leaves the court with no basis for a finding, beyond a reasonable doubt, that the defendant was traveling at a speed which was unreasonable and imprudent for the conditions existing, having in mind the actual and potential hazards associated with those conditions. Therefore, there must be a finding of not guilty.

As to the complaint alleging the class B misdemeanor for disobeying a police officer, RSA 265:4, I, (c) instructs that while driving a vehicle, no person shall purposely neglect to stop when signaled to stop by any law enforcement officer who signals the person to stop by means of audible or visual emergency warning signals. Clearly the evidence presented shows, beyond a reasonable doubt, that the defendant did not stop when signaled to do so by the officers, using his emergence warning lights and siren, for upwards to a 4 mile distance. While there is no direct evidence of the defendant's state of mind

73

103

presented, the circumstances presented by the evidence allows for no other conclusion than that the defendant acted purposefully in choosing to not stop as directed by the officer. Therefore, she is found guilty of the charge of disobeying a police officer.

While the specific statute specifies that a person who violates the provisions of RSA 265:4, I, (c) shall be guilty of a class A misdemeanor, the State made the choice before the beginning of trial to prosecute the matter as a class B misdemeanor, even after the defendant had had the benefit of a court appointed counsel through portions of the pre-trial proceedings, and then discharged her counsel by her own choice, and pursued the matter as a self-presented defendant.

The clerks' office will scheduled the matter for a sentencing hearing on the class B misdemeanor conviction for disobeying a police officer.

So Ordered.

6/25/2015
Date

Judge
James R. Patten, Justice
3rd Circuit Court

74

104

5

officer. See Thompson Rpt. ("[Sgt. Thompson] told [Mrs. Amatucci] that she had been arrested for disobeying a police officer" and that likely she would be taken to jail."). Once Mrs. Amatucci was transported to the CCHC, the bail commissioner set bond on the charge of disobeying a police officer. See Bond in Crim. Case. (listing "Offense(s) Charged" as "Disobey an Officer, Failure to Stop"). In other words, none of the Fourth Amendment-implicating events in this case concerned the speeding charge that she challenges in this case; her arrest, very brief detention and personal recognizance bail conditions all attended, instead, to her disobeying an officer charge, of which she was convicted.

While Mrs. Amatucci has alleged that she was also actually arrested for speeding (as opposed to simply cited), and then jailed and subjected to bail conditions on that charge, she has not supported that assertion with any submission of evidentiary quality. Significantly, every item of record evidence, see Bond in Crim. Case; Thompson Rpt., and admissible testimony connect Mrs. Amatucci's arrest and what followed to the disobeying charge, and more of that evidence mentioned or otherwise involved or implicated the probable cause-supported, see Part II, supra, speeding violation. Accordingly, Mrs. Amatucci has failed to demonstrate that her arrest, incarceration, and

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH 03864

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

**June 16, 2016**

**JOSEPHINE AMATUCCI**
**PO BOX 272**
**WOLFEBORO FALLS NH 03896**

Case Name: **State v. Josephine Amatucci**
Case Number: **464-2014-CR-00836**

The following Order was entered regarding Defendant's "Motion Ordering Judge Patten to Remove My Conviction Immediately":

6/9/2016 - This judge has recused himself from any further matters or pleadings involving or filed by Ms. Amatucci.

Elaine J. Lowe
Clerk of Court

(464260)

C: Simon Robert Brown, ESQ

76

106

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding.

GOOD FAITH NOT ENOUGH

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the [illegible] the fact does not mean that he had anything [illegible]

77

107

THE STATE OF NEW HAMPSHIRE

CARROLL, SS. SUPERIOR COURT

Town of Wolfeboro

v.

Josephine Amatucci

Case No. 212-2015-CV-00090

**PLAINTIFF'S SUPPLEMENTAL POST-TRIAL MEMORANDUM**

At the trial in this matter on April 13, 2016, Plaintiff Town of Wolfeboro submitted evidence of two matters now pending in the United States District Court ("USDC") based on the Defendant's arrest on May 7, 2014 for speeding and failure to obey police officers. See Exhibits 99-101 and 105 (pp. 40-41). Subsequent to the trial and the filing of Plaintiff's Post-Trial Memorandum, Plaintiff has become aware of three additional lawsuits that Defendant has filed in USDC that are relevant to the issues in this case and which may be of aid to this Court. The three additional cases are as follows:

1. Josephine Amatucci v. Stuart Chase, Wolfeboro Police Department and Town of Wolfeboro (16-cv-00206-SM) filed on April 11, 2016;
2. Josephine Amatucci v. Greg Dube (16-cv-00207-JD) filed on April 28 2016; and
3. Josephine Amatucci v. Stuart Chase (Police Chief) and Wolfeboro Police Department (16-cv-00208-JL) filed on May 5, 2016.

All five cases are still pending in USDC, awaiting orders of notice or other disposition.

Copies of Defendant's three additional Complaints filed in USDC (without the voluminous attachments thereto) are attached hereto as Exhibits A, B and C. The first case is a suit for damages against the Wolfeboro Police Chief, the Wolfeboro Police Department and the Town based upon the events of May 7, 2014. Defendant had already filed several cases in this

78

108

per hour zone, is prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

Given that Officer Emerson's radar unit showed that Amatucci was exceeding the posted speed limit by 12 miles per hour, he had probable cause to stop her.

The fact that Amatucci was later acquitted of the charge of speeding because the Court determined that she was not traveling at a speed that was unreasonable and imprudent for the conditions existing has no bearing on whether or not there was probable cause. The fact that she exceeded the posted speed limit is enough to provide a reasonable officer with reason to charge Amatucci with speeding.

GOOD FAITH NOT ENOUGH

Accordingly, Officer Emerson is entitled to qualified immunity.

Former Chief Chase did not participate at all in the arrest for speeding. Former Chief Chase came upon the scene after Amatucci had been arrested by Officer Emerson and charged with the offense of speeding and with the offense of disobeying a police officer. He did not participate in the arrest of Amatucci, nor did he participate in the prosecution. He did not provide any instructions or guidance to Officer Emerson relative to his pursuit of Amatucci and the subsequent prosecution for speeding.

Accordingly, because there are no facts provided by Amatucci that showed former Chief Chase participating in the arrest, he is not liable at all for the claims asserted by her. The fact that he showed up at the scene after the fact does not mean that he had anything to do with the arrest. Moreover, because she had

79

109

7/2/15

STATE OF NEW HAMPSHIRE

CARROLL COUNTY, SS 3RD CIRCUIT – DISTRICT DIVISION - OSSIPEE

Docket No. 464-2014-CR-00836

RECEIVED

JUL 02 2015

State of NH

v.

Josephine Amatucci

**STATE'S OBJECTION TO DEFENDANT'S "MOTION REQUESTING ... PUBLIC ... JURY TRIAL AND NO 'BEYOND A REASONABLE DOUBT TO CONVICT...'"**

NOW COMES the State of New Hampshire, by and through its attorneys, Preti Flaherty PLLP, and respectfully submits the within Objection to Defendant's Motion Requesting ... Public... Jury Trial and No "Beyond a Reasonable Doubt to Convict..." In support of its Objection, the State says as follows:

1. Following a bench trial, Defendant was convicted of Disobeying a Police Officer and found not guilty of Speeding.

2. In the instant pleading, Defendant requests the Court to reverse her conviction.

3. For the reasons outlined in the State's Bench Memorandum and based on the evidence presented at trial, the State proved the Disobeying a Police Officer charge beyond a reasonable doubt, she was not justified in failing to stop her vehicle, and there are no grounds for the Court to reverse its ruling.

JUDGE HAD NO JURISDICTION TO RULE ON VOID CHARGES UNDER THE 6th AMEND.

80

110

WHEREFORE, for the reasons set forth above, the State respectfully requests this Honorable Court to:

A. Deny Defendant's Motion;

## IV. FINAL POLICYMAKERS

In *Pembaur v. City of Cincinnati*, the Court held that a single decision by an official with policymaking authority in a given area could constitute official policy and be attributed to the government itself under certain circumstances.[176] Thus, in *Pembaur*, the county could be held liable for a single decision by a county prosecutor, which authorized an unconstitutional entry into the plaintiff's clinic.[177] With respect to municipal liability based on acts or decisions of final policymakers, the Court has made clear that who constitutes a final policymaker is a question of state law.[178] A final policymaker will generally be someone whose decisions are not subject to review by another official or governmental body.[179] Therefore, if there is any kind of review of an individual's decision, that individual is not the final policymaker.[180] Furthermore, one might be a final policymaker in one context and not in another. For example, in *Ar-*

---

176 475 U.S. 469, 470 (1986).

177 *Id.* at 485. *See also* Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008) ("We are bound by *Pembaur* and conclude that a single decision by a final policymaker can result in municipal liability.").

178 City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

179 *See generally* McMillian v. Monroe County, 520 U.S. 781, 785-86 (1997). *See also* Hill v. Borough of Kutztown, 455 F.3d 225, 246 (3d Cir. 2006) (arguing the mayor's constructive discharge of plaintiff was final in the sense that it was not reviewable by any other person or any other body or agency in the Borough).

180 *See, e.g.*, Quinn v. Monroe County, 330 F.3d 1320-26 (11th Cir. 2003) ("Because the Career Service Council has the power to reverse any termination decision made by Roberts, he is not a final policymaker with respect to termination decisions at the library."); Tharling v. City of Port Lavaca, 329 F.3d 422, 427 (5th Cir. 2003) (finding that a local law requiring approval of City Council for employment decisions made by City Manager rendered City Council the final policymaker); Gernetzke v. Kenosha Unified School District No. 1, 274 F.3d 464, 468 (7th Cir. 2001) ("The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question.").

81

speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so for over 4 miles and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose, but it would not have mattered to them, and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response, above, to Paragraph 7. Defendant O'Brien further specifically denies all the allegations against him. His involvement in this matter, contrary to the plaintiff's false and groundless allegations, was extremely limited. Mr. O'Brien responded, as he was legally required to do, to a call from police dispatch that Ms. Amatucci was causing a disturbance at the Town offices. By the time Ofc. O'Brien arrived at the Town offices, Ms. Amatucci had already left. Mr. O'Brien's sole involvement after that was to make a radio call back to police dispatch confirming that Ms. Amatucci was no longer at Town Hall. O'Brien did not make a phone call to Ofc. Emerson, did not call the Sheriff's Department and did not request anyone to chase or stop or arrest Ms. Amatucci. He was not in any way involved in the pursuit of Ms. Amatucci and was not present when she was pursued, stopped or arrested. After Ms. Amatucci was arrested and taken away, Officer O'Brien went to the location of Ms. Amatucci's car to relieve Chief Chase so that Chief Chase did not have to wait for the tow truck to arrive. As to the statement in the police log about Ofc. Emerson trying to stop "her," that was not a quote of Ofc. Emerson's police call to dispatch, but rather a conflation in the log prepared by the dispatcher, William Riley, of Emerson's statement that he was turning around to chase a speeding car (which he did not know was Ms. Amatucci). Officer

AND

This verifies my entire Fourth Amendment claim - I was unlawfully arrested for speeding

8-2

HJ

both speeding and failure to obey.[1] The trial judge found that Ms. Amatucci was not guilty of speeding (even though she exceeded the speed limit by 12 mph) solely because the prosecutor failed to introduce evidence of road conditions that day. That does not mean that there was no probable cause for the arrest or the prosecution.

The prosecutor's failure to put in such evidence, or even Ms. Amatucci's success in beating the speeding violation, does not retroactively create lack of probable cause for the arrest and prosecution. In fact, the trial court found (and Ms. Amatucci is bound by collateral estoppel on that point), that she exceeded the speed limit by 12 mph. Moreover, the trial judge found that she failed to obey police officers pursuing her for almost four miles and that she was guilty of the crime she was charged with, failing to obey. Thus, the trial court's findings clearly establish the opposite of what Ms. Amatucci now argues. The trial judge's rulings, contrary to Ms. Amatucci's arguments, show there was, in fact, probable cause.

Speeding is not a crime in NH.

Moreover, as argued in defendant's original objection (doc 137), this proposed claim is barred both by res judicata and collateral estoppel for all the reasons argued in defendants' Motion for Judgment on the Pleadings (Doc 132).

While Judge Laplante has not yet ruled on the Magistrate Judge's Report and Recommendation (Doc 144), the Magistrate Judge's Report and Recommendation has proposed that the Court dismiss all plaintiff's claims against Chief Chase because those claims are barred by res judicata. The proposed malicious prosecution claim (whether under common law or as a Section 1983 claim) also would be barred by res judicata as it arises out of the same transaction or occurrence as the prior case, and thus, the proposed amendment would be futile. The claim,

(83)

113

[1] If Ms. Amatucci had not refused to stop, it is doubtful, however, that she ever would have been arrested for speeding alone.

Me

764

THE STATE OF NEW HAMPSHIRE

SUPREME COURT

State

v.

Josephine Amatucci                                        Docket 015-0562

THE FEDERAL RIGHT TO A JURY TRIAL

1. Where this cae is dealing with an infringement of my liberty interest in taking away my right to drive if there is another traffic violation, a jury trial is MANDATED under the FEDERAL sixth, Seventh, Ninth and 14th Amendment and Article 15, Part 1 of the NH Constitution. In Case v. Case, 121 NH 647 (1981), the United Sttes Supreme Court discussed basic rights of man. That the right to drive, liberty rights is a natural, inherent, and essential right in the Due Process Clause of the Fourteenth Amendment, the EQUAL PROTECTION CLAUSE of the 14th amendment.

2. The FUNDAMENTAL LOSS OF A LIBERTY INTERST ......triggers the right to a jury determination on the merits. Daley v. Kennett, 75 N.H. 536, 540 Employers Assurance Co. v. Tibbetts, 96 N.H. 296, Hampton v. Palmer, 99 N.H. 143, 145, Lakeman v. LaFrance, 102 N.H. 300 (1959).

3. Because of the loss of a liberty interest, the right to access the courts, the civil nature of the aproceeeding is ierrelevant in cases where there is a FUNDAMENTAL

84

114

**LOSS OF A LIBERTY INTEREST, where there is a constitutional question, a jury trial is MANDATED.**

**4. The NH Constitution, Article 15, Part 1, states:**

**"No subject shall be deprived of property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, LIBERTY,**

**BUT BY THE JUDGMENT OF HIS PEERS, OR THE LAW OF THE LAND"**

**5. Therefore, according to Federal Law, a jury trial of her peers is MANDATED and the defendant is mandating a jury trial.**

**Respectfully,**

**Josephine Amatucci**

**April 24, 2016**

**c. Attorney General**

THE STATE OF NEW HAMPSHIRE

CARROLL, SS SUPERIOR COURT

IN RE: JOSEPHINE AMATUCCI

(Circuit Court Docket Number 464-2014-CR-00836)

ORDER

On August 23, August 29, and September 1, 2016, Josephine Amatucci ("Amatucci") presented the Superior Court with three pleadings and corresponding attachments. All three of her pleadings address her request for an expedited jury trial regarding an incident that occurred in the Spring of 2014. The matter went to trial, heard by Circuit Court (Patten, J.) in June 2014.

Amatucci was found not guilty in the Circuit Court on one count of speeding and guilty of one count of disobeying an officer. The disobeying an officer charge was initially brought as a class A misdemeanor. Ms. Amatucci was sentenced to a monetary fine, to be suspended for one year conditioned upon good behavior, as well as a suspended driver's license and a suspended motor vehicle registration. Both suspensions were held in abeyance for one year conditioned upon good behavior.

In April 2016, the New Hampshire Supreme Court issued an Order in this case - affirming Amatucci's conviction. See, State of New Hampshire v. Josephine Amatucci, No. 2015-0562 (April –, 2016). The Supreme Court unanimously affirmed the Circuit Court's decision. For the above stated reasons, Amatucci is barred from a jury trial in the Superior Court.

86

HG

Further filings in this court asserting a request for a jury trial on the 2014 conviction will not be docketed.

hellooo - IT WAS the 2015 JURY TRIAL - VIOLATION OF SPEEDY TRIAL CLAUSE

SO ORDERED.

10/4/16
Date

Hon. Amy L. Ignatius
Presiding Justice

Amy L. Ignatius
Presiding Justice

87

117

FILED - USDC -NH
2020 JUL 22 AM 10:51

5102

THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPHSIRE

Josephine Amatucci

v.

Stuart Chase, et al

Case 17-cv-237

REVERSE THE COVICTION

UNDER THE LAW

1. This claim a violation of the Sixth Amendment Speedy Trial Act has been before this court in a timely manner, and was NOT DECIDED IN A MERITORIOUS DECISION. Because she was unlawfully seized for a trial which was a violation of the Speedy Trial Act, the conviction for disobeying a police officer is VOID OF NO LEGAL FORCE and this Court is MANDATED to reverse this conviction.

2. That therefore this court is mandated to reverse the convicion for disobeying a police officer that was unlawfully determined on June 25, 2015, and is mandated UNDER THE LAW to allow her malicious prosecution claim to move forward in a jury trial of her peers for damages under 1983, for a malicious prosecution when the

## IV. FINAL POLICYMAKERS

In *Pembaur v. City of Cincinnati*, the Court held that a single decision by an official with policymaking authority in a given area could constitute official policy and be attributed to the government itself under certain circumstances.[176] Thus, in *Pembaur*, the county could be held liable for a single decision by a county prosecutor, which authorized an unconstitutional entry into the plaintiff's clinic.[177] With respect to municipal liability based on acts or decisions of final policymakers, the Court has made clear that who constitutes a final policymaker is a question of state law.[178] A final policymaker will generally be someone whose decisions are not subject to review by another official or governmental body.[179] Therefore, if there is any kind of review of an individual's decision, that individual is not the final policymaker.[180] Furthermore, one might be a final policymaker in one context and not in another. For example, in *Ar-*

---

176 475 U.S. 469, 470 (1986).

177 *Id.* at 485. *See also* Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008) ("We are bound by *Pembaur* and conclude that a single decision by a final policymaker can result in municipal liability.").

178 City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

179 *See generally* McMillian v. Monroe County, 520 U.S. 781, 785-86 (1997). *See also* Hill v. Borough of Kutztown, 455 F.3d 225, 246 (3d Cir. 2006) (arguing the mayor's constructive discharge of plaintiff was final in the sense that it was not reviewable by any other person or any other body or agency in the Borough).

180 *See, e.g.*, Quinn v. Monroe County, 330 F.3d 1320-26 (11th Cir. 2003) ("Because the Career Service Council has the power to reverse any termination decision made by Roberts, he is not a final policymaker with respect to termination decisions at the library."); Tharling v. City of Port Lavaca, 329 F.3d 422, 427 (5th Cir. 2003) (finding that a local law requiring approval of City Council for employment decisions made by City Manager rendered City Council the final policymaker); Gernetzke v. Kenosha Unified School District No. 1, 274 F.3d 464, 468 (7th Cir. 2001) ("The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question.").

89
119

WHAT ABOUT PROBABLE CAUSE TO ARREST FOR SPEEDING

The undisputed record in this case demonstrates that the defendants had probable cause to stop Mrs. Amatucci's car for speeding on May 7, 2014, and thus, she cannot succeed on a claim of a violation of her Fourth Amendment right not to be maliciously prosecuted for that speeding offense. Accordingly, and without the necessity of analyzing the second prong of the qualified immunity analysis, defendants are entitled to qualified immunity in regard to the malicious prosecution claims in this case.

FOURTH AMENDMENT ARREST NOT STOP FRAUD

**Conclusion**

For the foregoing reasons, finds that the defendants have "affirmatively demonstrate[d] that there is no evidence in the record to support a judgment" in Mrs. Amatucci's favor as to her malicious prosecution claim. Celotex Corp., 477 U.S. at 332. Accordingly, the court enters the following Order:

1. The court's September 24, 2018 endorsed order incorrectly identifies the defendants' summary judgment motion as Document No. 139. The clerk's office is directed to amend that endorsed order in the docket of this case to reflect that the defendants' motion for summary judgment is Document No. 138.

 (FE)

90

120

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v. Civil No. 17-cv-237-JL

Stuart Chase, Shane Emerson, and
the Town of Wolfeboro

**ORDER**

Before the court are the parties' cross-motions for summary judgment. After consideration of the filings and oral argument,[1] the court denies Plaintiff Josephine Amatucci's motion for summary judgment (Doc. No. 123) and grants Defendants' motion for summary judgment (Doc. No. 138).[2] MULLEN'S SUMMARY JUDGMENT WAS BASED ON CHARGES THAT DID NOT EXIST. FRAUD

---

[1]In addition to the parties' summary judgment motions (Doc. Nos. 123, 138), the summary judgment record includes: Pl.'s Resp. to Defs.' Obj. to Pl.'s Mot. Recon. (Doc. No. 135), Defs.' Obj. to Pl.'s Mots. Summ. J. (Doc. No. 139), Pl.'s Resp. to Defs.' Mot. Summ. J. (Doc. No. 140), Defs.' Resp. to Pl.'s Obj. to Defs.' Mot. Summ. J. (Doc. No. 143), Pl.'s Surreply to Defs.' Resp. to Pl.'s Obj. to Defs.' Mot. Summ. J. (Doc. No. 145), Pl.'s Resp. to Defs.' Obj. to Pl.'s Mot. Recon./Pl.'s Mot. Summ. J. (Doc. No. 148), and Pl.'s Mot. Summ. J. (Doc. No. 170).

[2]On September 24, 2018, the court issued the following Endorsed Order: "After today's oral argument, the plaintiff's motion for summary judgment (Doc. No. 123) is denied. Her prior motion for summary judgment (Doc. No. 109) was withdrawn. The defendants' motion for summary judgment (Doc. No. 139) is granted. Written order to follow." That endorsed order inadvertently identified the defendants' motion for summary judgment as "Doc. 139." The clerk's office is directed to amend the court's September 24, 2018 Endorsed Order to reflect that the defendants' motion for summary judgment is Document No. 138.

91

121

**Summary Judgment Standard**

"The purpose of summary judgment is to enable a court 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Fernández-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 328 (1st Cir. 2015) (citation omitted). "Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 20-21 (1st Cir. 2018) (citation omitted); see Fed. R. Civ. P. 56(a)). At summary judgment, "[a]n issue is 'genuine' if the evidence would enable a reasonable factfinder to decide the issue in favor of either party." Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). "A fact is 'material' when its (non)existence could change a case's outcome." Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018), rev. denied, 885 F.3d 52 (1st Cir. 2018).

To obtain summary judgment, "[t]he moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986). "This demonstration must be accomplished by reference to materials of evidentiary

92 122

quality, and that evidence must be more than 'merely colorable.'" Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citation omitted). Once the moving party makes the required showing, "'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" Id. (citation omitted). The nonmoving party's failure to prove any essential element of a claim "'necessarily renders all other facts immaterial.'" Delgado v. Aero Inv. Corp., 601 F. App'x 12, 15 (1st Cir. 2015) (quoting Celotex Corp., 477 U.S. at 323). The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment." Flovac, Inc., 817 F.3d at 853.

At the summary judgment stage, the court draws "'all reasonable inferences in favor of the non-moving party,' but disregard[s] 'conclusory allegations, improbable inferences, and unsupported speculation.'" Fanning v. FTC, 821 F.3d 164, 170 (1st Cir. 2016) (citation omitted). When ruling on cross motions for summary judgment, the court applies the same standard of review, but each motion is viewed separately. See Cooper v. D'Amore, 881 F.3d 247, 249-50 (1st Cir. 2018) (citation omitted).

**Background**[3]

At approximately 12:30 p.m. on May 7, 2014, Mrs. Amatucci went to the Wolfeboro Police Department ("WPD") to lodge a complaint with (then) WPD Chief Stuart Chase in regard to a traffic stop and violation citation a WPD officer issued to Mrs. Amatucci in 2013. See Compl. (Doc. No. 1) ("Compl.") 2, ¶8.; Defs.' Mot. Summ. J., Ex. A, July 24, 2018 Aff. Stuart Chase (Doc. No. 138-2) ("Chase Aff.") 1, ¶ 1. Mrs. Amatucci has claimed in this case that Chief Chase, during the May 7, 2014 conversation at the WPD, refused to accept Mrs. Amatucci's complaint, and threatened to "get her" and arrest her "on the spot" if she again accused any WPD officer of misconduct. Compl. 2-3, ¶ 9. The summary judgment record does not contain any sworn statement from Chief Chase concerning his May 7, 2014 discussion with Mrs. Amatucci, but in their Answer, defendants denied that Chief Chase threatened Mrs. Amatucci during the May

[3]**Mrs. Amatucci has not submitted, in support of her summary judgment motion, her own affidavit, sworn statement or declaration under oath.** To the extent the court has relied on Mrs. Amatucci's unsworn statements, such statements are undisputed unless otherwise noted. To the extent Mrs. Amatucci has relied on documentary evidence as to which she would likely be able to produce competent evidence at trial, the court has considered such submissions to be of evidentiary quality for the purposes of the court's consideration of the pending summary judgment motions. The court has taken these measures in an abundance of caution, in light of Mrs. Amatucci's pro se status.

94

124

7, 2014 exchange at the WPD. See Feb. 23, 2017 Answer (Doc. No. 87) ("Answer") 2, ¶¶ 8-9.

It is undisputed that after Mrs. Amatucci left the WPD, she went to the Wolfeboro Town Hall ("Town Hall") to try to lodge a complaint with the Town Board of Selectmen about Chief Chase's conduct at the police station. See Compl. 2, ¶ 10. At some point Mrs. Amatucci's interactions with the town employees at the Town Hall became a disturbance, although the parties disagree as to who was responsible for the disturbance. See id. at 3, ¶ 11; Answer 3, ¶ 11. A town employee called the WPD requesting that an officer respond to the Town Hall to address the disturbance. See Compl. 3, ¶ 11; Chase Aff. 1, ¶ 3.

Mrs. Amatucci left the Town Hall before the police arrived, announcing as she left that she was going to the Carroll County Sheriff's Department ("CCSD") to complain about Chief Chase's actions at the WPD earlier that day. See Compl. 3, ¶ 11. WPD dispatch was notified that Mrs. Amatucci had left Town Hall and was proceeding to the CCSD. See id. at 4, ¶ 12; Chase Aff. 1, ¶ 4. Dispatch advised WPD Officer Shane Emerson, who was at that time driving his police cruiser toward downtown Wolfeboro, to be on the lookout for Mrs. Amatucci, and provided Officer Emerson with a description of Mrs. Amatucci's car. See Defs.' Mot. Summ. J., Ex. C., July 26, 2018 Aff. Shane Emerson (Doc. No.



138-4) ("Emerson Aff.") 1, ¶ 2; June 25, 2015 Order, State v. Amatucci, No. 464-2014-CR-836 (N.H. Cir. Ct., 3d Cir.-Dist. Div.-Ossipee) (Doc. No. 138-5) ("State Court Verdict") at 2.

Shortly thereafter, Officer Emerson spotted Mrs. Amatucci's car and observed that she appeared to be speeding. See Compl. 5, ¶ 17; Emerson Aff. 1, ¶ 3; State Court Verdict at 2. Officer Emerson trained his radar unit on Mrs. Amatucci's car and determined that Mrs. Amatucci was travelling 42 miles per hour ("mph"). See Emerson Aff. 1, ¶ 3; State Court Verdict at 2. The posted speed limit at that location was 30 mph. See id. Officer Emerson activated the blue lights and siren on his police cruiser and advised WPD dispatch that he was attempting to pull Mrs. Amatucci over for travelling 42 mph in a 30 mph zone. See id. Mrs. Amatucci refused to stop for Officer Emerson, although once Officer Emerson was following her with his blue lights and siren on, Mrs. Amatucci ceased exceeding the posted speed limit. See Emerson Aff. 1, ¶ 5; State Court Verdict at 2. Chief Chase, upon learning, via WPD dispatch, of Officer Emerson's pursuit of Mrs. Amatucci, proceeded in his own cruiser toward the location of the pursuit. See Chase Aff. 1, ¶ 5. According to his sworn statement, Chief Chase "made no attempt to catch up with Amatucci or Officer Emerson." Chase Aff. 1, ¶ 5.

96

126

the Town called CCSD

When Mrs. Amatucci refused to stop for Officer Emerson, WPD personnel obtained the assistance of the CCSD in stopping Mrs. Amatucci's car. See Defs.' Reply to Pl.'s Obj. to Defs.' Mot. Summ. J., Ex. A, Aff. Timothy Thompson (Doc. No. 143-1) ("Thompson Aff.") 1, ¶ 2. Mrs. Amatucci eventually stopped her car when CCSD Sgt. Timothy Thompson stepped into the road and signaled her to pull over. See Compl. 4, ¶ 13; Emerson Aff. 1, ¶ 5; Thompson Aff. 1-2, ¶¶ 3, 6.

Mrs. Amatucci was placed under arrest, handcuffed, and placed in the back of Officer Emerson's cruiser. See Compl. 4, ¶ 13; Chase Aff. at 1, ¶ 5; May 8, 2014 Report of CCSD Sgt. Timothy Thompson (Doc. No. 20, at 26) ("Thompson Rpt."). According to Sgt. Thompson's written report, Sgt. Thompson told Mrs. Amatucci "that she had been arrested for disobeying a police officer." Thompson Rpt.

Chief Chase "arrived at the scene where Amatucci had apparently been stopped . . . about two minutes after her vehicle had been stopped," when "she had already been placed in handcuffs and was being placed in the rear of Emerson's cruiser." Chase Aff. 1, ¶ 5. Chief Chase did not give Officer Emerson instructions to pursue or arrest Mrs. Amatucci. See id. at 2, ¶ 7.

Lie

97

127

Officer Emerson then transported Mrs. Amatucci to the Carroll County House of Corrections ("CCHC"), where she was fingerprinted and placed in a holding cell. See Compl. 4, ¶¶ 14-15; Chase Aff. 2, ¶ 6; Thompson Rpt. At 3:35 p.m., a Bail Commissioner set a personal recognizance bond with conditions, in regard to the disobeying a police officer charge against Mrs. Amatucci. See Compl. 4, ¶ 15; May 7, 2014 Bond in Criminal Case (Doc. No. 20, at 28) ("Bond in Crim. Case"). Mrs. Amatucci was then released from the CCHC. See Compl. 4, ¶ 15. The bail conditions set by the Bail Commissioner, in regard to the misdemeanor disobeying a police officer charge, were that Mrs. Amatucci was to appear in court for scheduled hearings, "keep the peace and be of good behavior," and notify the court of any change of address during the pendency of her case. See id. at 4, ¶ 15; Bond in Crim. Case.

Officer Emerson brought two complaints against Mrs. Amatucci in the New Hampshire Circuit Court, Third Circuit, District Division, Ossipee, for her conduct while driving on May 7, 2014 - a violation level offense for speeding in violation of N.H. Rev. Stat. Ann. § ("RSA") 265:60, I; and a misdemeanor offense for disobeying a police officer in violation of RSA 265:4. May 29, 2014 Complaints, Amatucci, No. 464-2014-CR-836 (N.H. Cir. Ct., 3d Cir.-Dist. Div.-Ossipee); State Court

98

128

Verdict, at 1. Trial was held on those complaints in June 2015. See Compl. 5, ¶ 16; State Court Verdict at 1. The case was prosecuted by the WPD Prosecutor, Attorney Timothy Morgan, who is not a defendant in this action. Officer Emerson testified at the trial. See State Court Verdict at 2. Chief Chase played no role in either the prosecution of Mrs. Amatucci or her trial. See Chase Aff. 2, ¶ 7.

The trial court found Mrs. Amatucci guilty of disobeying a police officer and not guilty of speeding. See Compl. 5, ¶ 15; State Court Verdict at 3-4. In regard to the speeding violation, the court specifically found that, at the time Officer Emerson first attempted to pull Mrs. Amatucci over, she had exceeded the posted speed limit by travelling 42 mph in a 30 mph zone, but that the prosecution had failed to demonstrate, beyond a reasonable doubt, that Mrs. Amatucci had violated the New Hampshire speeding statute, RSA 265:60, as follows:

> RSA 265:60, I[,] prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in the posted 30 miles per hour zone, "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Here we have the seemly [sic] conflicting evidence of no specific conditions presented that there were actual or potential hazards at that place and time that the defendant was traveling 12 miles per

99
129

> hour over the posted speed limit, but that that speed is prima facie unreasonable and imprudent. This conflicting evidence leaves the court with no basis for a finding, beyond a reasonable doubt, that the defendant was traveling at a speed which was unreasonable and imprudent for the conditions existing, having in mind the actual and potential hazards associated with those conditions. Therefore, there must be a finding of not guilty.

State Court Verdict at 3 (emphasis added). Concerning the disobeying a police officer offense, the court found:

> As to the complaint alleging the Class B misdemeanor for disobeying a police officer, RSA 265:4, [I(c)] instructs that while driving a vehicle, no person shall purposely neglect to stop when signaled to stop by any law enforcement officer who signals the person to stop by means of audible or visual emergency warning signals. Clearly the evidence presented shows, beyond a reasonable doubt, that the defendant did not stop when signaled to do so by the officers, using his emergence [sic] warning lights and siren, for upwards to a 4 mile distance. While there is no direct evidence of the defendant's state of mind presented, the circumstances presented by the evidence allows for no other conclusion than that the defendant acted purposefully in choosing to not stop as directed by the officer. Therefore, she is found guilty of the charge of disobeying a police officer.

Id. at 3-4. The New Hampshire Supreme Court affirmed Mrs. Amatucci's conviction on appeal. See State v. Amatucci, No. 2015-0562, 2016 WL 3476995, 2016 N.H. LEXIS 135 (N.H. Apr. 29, 2016).

Mrs. Amatucci asserts in this case that Officer Emerson and Chief Chase pulled her over and arrested her for speeding on May 7, 2014 in order to prevent her from reporting Chief Chase's

100

130

misconduct to the CCSD. See Compl. 8, ¶ 21. Mrs. Amatucci claims that the effort to stop her from reporting police misconduct was made in furtherance of the Town's "de facto" policy of refusing to accept and/or investigate citizen complaints of police misconduct. See Compl. 7-8, ¶¶ 20-21. The claims presently pending in this case, are: 1) a Fourth Amendment malicious prosecution claim, asserted under 42 U.S.C. § 1983, against Chief Chase and Officer Emerson; and 2) a Fourth Amendment malicious prosecution claim, asserted under § 1983, against the Town of Wolfeboro, pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## Discussion

### I. Elements of Fourth Amendment Malicious Prosecution Claims

To succeed on her Fourth Amendment malicious prosecution claim against Chief Chase and Officer Emerson, Amatucci must prove that those defendants "'(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" Hernandez-Cuevas v. Taylor ("Hernandez-Cuevas I"), 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).[4] To demonstrate

[4]There are limited circumstances where a neutral and detached magistrate's supportable finding of probable cause is not fatal to a malicious prosecution claim, such as where that

liability for her § 1983 malicious prosecution claim against the Town, plaintiff must also show that the "moving force" behind the asserted violation of her Fourth Amendment rights was a town "policy or custom . . . made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694.

II. Probable Cause

To prove her Fourth Amendment malicious prosecution claims in this case, plaintiff must demonstrate that there was no probable cause to [ARREST] charge her with speeding on May 7, 2014. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" Manuel v. City of Joliet, 137 S. Ct. 911, 917 (2017) (quoting U.S. Const. amend. IV)). When there is probable cause for an arrest, the Fourth Amendment's prohibition against

---

finding was based on knowing falsehoods presented by officers regarding issues material to the probable cause determination. To maintain a Fourth Amendment malicious prosecution claim against the officers responsible for her arrest, Mrs. Amatucci has "to demonstrate that the officers 'were responsible for [her] continued, unreasonable pretrial detention,'" after she was "'held pursuant to legal process'" upon a "'neutral magistrate's determination that probable cause exist[ed] for [her] arrest.'" Hernandez-Cuevas v. Taylor ("Hernandez-Cuevas II"), 836 F.3d 116, 123 (1st Cir. 2016) (quoting Hernandez-Cuevas I, 723 F.3d at 99-100). Such a showing, however, would not obviate the requirement to prove termination of the prosecution in her favor.

102

132

unreasonable seizures "is not offended." Collins v. Univ. of N.H., 664 F.3d 8, 14 (1st Cir. 2011).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Pontoo, 666 F.3d 20, 31 (1st Cir. 2011) (internal quotation marks and citations omitted). "'The question of probable cause . . . is an objective inquiry,' and [courts] do not consider the 'actual motive or thought process of the officer.'" Kenney v. Head, 670 F.3d 354, 358 (1st Cir. 2012) (citation omitted).

It is important to note, at he outset, that in order for Mrs. Amatucci to prove her case, she must show that the defendants are liable for a malicious prosecution as to the speeding charge resulting in acquittal, as opposed to the disobeying an officer charge of which she was convicted. As the court rules, see Part III, infra, she cannot prove that claim. Even if she had been arrested or detained for speeding, however, that charge was supported by probable cause.

A. RSA 265:60

In New Hampshire, the offense of speeding is committed when a person drives at "unreasonable and imprudent" speeds for the

conditions and circumstances. RSA 265:60, I. While driving at a rate of speed that is higher than the posted speed limit is not necessarily a violation of RSA 265:60, I, it is "prima facie evidence" that the driver's speed is "unreasonable and imprudent." 265:60, II. In other words, if a person is driving faster than the posted speed limit, probable cause exists to believe that the person is violating RSA 265:60, I, as "[p]robable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008); see also United States v. Wilder, 526 F.3d 1, 6 (1st Cir. 2008) ("The standard of probable cause requires a probability, not a prima facie showing, of criminal activity.'" (citation omitted)); Bryant v. Noether, 163 F. Supp. 2d 98, 107-08 (D.N.H. 2001) ("Probable cause does not require the facts and circumstances within the officer's knowledge to 'be sufficient to prove guilt beyond a reasonable doubt, make out a prima facie case or even to establish that guilt is more probable than not.'" (citation omitted)). Therefore, if a police officer reasonably determines that a person is driving at a rate of speed higher than the posted speed limit, that officer has probable cause to stop the car and cite the driver with the offense of speeding.

(104)
134

Mrs. Amatucci has stated, many times, in her filings in this case that she was "not speeding."[5] Mrs. Amatucci explained during oral argument that her assertion that she was "not speeding" was not based on a claim that she was travelling at a rate of speed at or below the posted speed limit at the time Officer Emerson first attempted to pull her over. Instead, Mrs. Amatucci's assertion that she was "not speeding" is based on the fact that the defendants were unable to prove at trial that her rate of speed was "unreasonable and imprudent" under the circumstances and conditions that existed at the time of the alleged offense, resulting in the trial court finding that the evidence at her trial was insufficient to demonstrate, beyond a reasonable doubt, that she had violated RSA 265:60. Simply put, Mrs. Amatucci argues that because Officer Emerson, at the time of her trial, was unable to prove beyond a reasonable doubt that she had violated RSA 265:60, he lacked probable cause to pull her over for speeding at all.

[5] See, e.g., Compl. 5; id. at 8, ¶ 11; Compl. Addend. (Doc. No. 16) 2; Compl. Addend. (Doc. No. 17) 2; Compl. Addend. (Doc. No. 19) 1; Compl. Addend. (Doc. No. 20) 3; Compl. Addend. (Doc. No. 23) 6, 9; Compl. Addend. (Doc. No. 27) 1; Compl. Addend. (Doc. No. 51) 4; Pl.'s Mot. Summ. J. (Doc. No. 109) 5; Pl.'s Mot. Summ. J. (Doc. No. 123) 6; Pl.'s Obj. to Def.'s Mot. Summ. J. (Doc. No. 140) 1.

105

135

An acquittal does not establish that an arresting officer "lacked the requisite probable cause to support a charge," as a "conviction requir[es] the higher standard of proof beyond a reasonable doubt." Gillis v. Chase, 894 F.3d 1, 3 (1st Cir. 2018). An officer can possess probable cause to believe that an offense has been committed but ultimately be unable to produce at trial sufficient evidence to support a conviction for that offense. See id.; Blair, 524 F.3d at 748.

Defendants have produced Officer Emerson's affidavit, which states that his fully-functioning radar unit indicated that Mrs. Amatucci was travelling 42 mph in a 30 mph zone. See Emerson Aff. 1, ¶ 3. On similar evidence, the state court found, and twice stated, that Mrs. Amatucci was travelling in excess of the posted speed limit. See State Court Verdict at 2-3 (finding "defendant was traveling 42 miles per hour in a posted 30 mile per hour zone" and "defendant was traveling 12 miles per hour over the posted speed limit").

Mrs. Amatucci has not provided this court with any sworn statement or other submission of evidentiary quality to rebut defendants' submissions. In support of her argument that she was "not speeding," and that Officer Emerson thus lacked probable cause to pull her over, Mrs. Amatucci claims that Sgt. Thompson stated in a written report that the WPD had advised him

that Mrs. Amatucci was not speeding, and that they were just trying to stop her car. See Pl.'s Mot. Summ. J. (Doc. No. 123) 3, ¶ 6. Mrs. Amatucci is mistaken. The record evidence rfutes this incorrect claim. Sgt. Thompson's written report actually states that, after the police were already trying to stop Mrs. Amatucci's car, the WPD reported that their effort to stop Mrs. Amatucci's car "was not a high speed pursuit rather she was not stopping her vehicle for the Wolfeboro cruisers." Thompson Rpt. Further, defendants have provided the court with Sgt. Thompson's affidavit that he "was not involved in the Wolfeboro Officer's first attempt to stop Mrs. Amatucci," and that Sgt. Thompson "do[es] not know what her initial speed was at the time the Wolfeboro Officer tried to stop Mrs. Amatucci." Thompson Aff. 2, ¶ 4. There is thus no evidence in the record sufficient to rebut defendants' showing that Officer Emerson had probable cause to believe that Mrs. Amatucci had driven faster than the posted speed limit when he caused her to be pulled over.

B. Stop for Violation Level Offense

Mrs. Amatucci argues that, because in New Hampshire, speeding is a non-criminal traffic violation, probable cause sufficient to support an arrest could not be formed based on her commission, or suspected commission, of the offense of speeding.

107

137

ARREST SIR

Mrs. Amatucci is mistaken. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996).[6] Once Officer Emerson put on his blue lights and siren in an attempt to stop ARREST her car, Mrs. Amatucci was required by law to pull over, whether or not she agreed that she was speeding, or was suspicious of Officer Emerson's motives for stopping her, and her failure to do so was chargeable as a separate misdemeanor offense. See RSA 265:4(I)(c)[7]; State v. Steeves, 158

[6]New Hampshire law explicitly allows a police officer to make a warrantless arrest for a violation-level offense committed in his or her presence. See RSA 594:10, I(a) ("An arrest by a peace officer without a warrant on a charge of a misdemeanor or a violation is lawful whenever [h]e has probable cause to believe that the person to be arrested has committed a misdemeanor or violation in his presence.").

[7]RSA 265:4 states, in pertinent part:

> I. No person, while driving or in charge of a vehicle, shall:
>
> . . .
>
> (c) Purposely neglect to stop when signaled to stop by any law enforcement officer who is in uniform or who displays his badge conspicuously on the outside of his outer coat or garment, or who signals such person to stop by means of any authorized audible or visual emergency warning signals . . . .

108

138

N.H. 672, 676, 972 A.2d 1033, 1037 (2009) ("drivers simply are not free to disregard blue lights").

C. "Set Up"

Finally, Mrs. Amatucci argues that the pursuit of her car and her subsequent arrest were the result of a "set up" by Officer Emerson and Chief Chase to prevent her from reaching the CCSD and lodging a complaint against Chief Chase. Even assuming, without deciding, that the evidence before the court demonstrates that Officer Emerson and Chief Chase had an ulterior motive to stop Mrs. Amatucci's car other than to enforce traffic laws, such evidence would not generate a genuine issue of material fact sufficient to defeat defendants' motion for summary judgment, as "a traffic stop supported by probable cause [does] not violate the Fourth Amendment regardless of the officer's actual motivations." Reichle v. Howards, 566 U.S. 658, 665 n.5 (2012) (citing Whren, 517 U.S. at 812-13); see also Kenney, 670 F.3d at 358.

III. No Seizure Pursuant to Legal Process

"In a malicious prosecution case brought under Section 1983, 'the constitutional violation lies in the deprivation of liberty accompanying the prosecution rather than in the prosecution itself.'" Moreno-Medina v. Toledo, 458 F. App'x 4,

See speedy trial clause

109

139

7 (1st Cir. 2012) (quoting Britton v. Maloney, 196 F.3d 24, 29 (1st Cir. 1999)). To support a constitutional malicious prosecution claim, therefore, plaintiff must demonstrate that she was subject to a "'deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.'" Moreno-Medina, 458 F. App'x at 7 (quoting Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010)).

The parties do not dispute that after her car was stopped, Mrs. Amatucci was arrested and transported to the CCHC. The parties also agree that Mrs. Amatucci was later released from the CCHC on personal recognizance bond with conditions, by a Bail Commissioner.[8]

The record in this case demonstrates that Mrs. Amatucci's arrest, brief incarceration, and release on conditions all concerned the disobeying a police officer charge - the charge of which she was convicted at trial, and which she does not challenge here. Sgt. Thompson, after communicating with the Wolfeboro Police and witnessing Mrs. Amatucci's arrest, advised Mrs. Amatucci that she had been arrested for disobeying a police

---

[8]In New Hampshire, a Bail Commissioner is a judicial officer with the authority to set bail before a detainee's arraignment in court. See Katz v. McVeigh, 931 F. Supp. 2d 311, 352 (D.N.H. 2013) (citing N.H. Rev. Stat. Ann. § 597:18).

officer. See Thompson Rpt. ("[Sgt. Thompson] told [Mrs. Amatucci] that she had been arrested for disobeying a police officer" and that likely she would be taken to jail."). Once Mrs. Amatucci was transported to the CCHC, the bail commissioner set bond on the charge of disobeying a police officer. See Bond in Crim. Case. (listing "Offense(s) Charged" as "Disobey an Officer, Failure to Stop"). In other words, none of the Fourth Amendment-implicating events in this case concerned the speeding charge that she challenges in this case; her arrest; very brief detention and personal recognizance bail conditions all attended, instead, to her disobeying an officer charge, of which she was convicted.

1 YEAR + 3 WEEKS SIR

While Mrs. Amatucci has alleged that she was also actually arrested for speeding (as opposed to simply cited), and then jailed and subjected to bail conditions on that charge, she has not supported that assertion with any submission of evidentiary quality. Significantly, every item of record evidence, see Bond in Crim. Case; Thompson Rpt., and admissible testimony connect Mrs. Amatucci's arrest and what followed to the disobeying charge, and more of that evidence mentioned or otherwise involved or implicated the probable cause-supported, see Part II, supra, speeding violation. Accordingly, Mrs. Amatucci has failed to demonstrate that her arrest, incarceration, and

111

141

ARREST

subjection to bail conditions concerned the speeding charge in this case.[9]

SPEEDY TRIAL CLAUSE

Mrs. Amatucci has thus failed to meet her burden to counter the defendants' evidence that she was not seized or held for speeding "pursuant to legal process," Hernandez-Cuevas II, 836 F.3d at 123 (citation omitted), on a charge of speeding. See Flovac, Inc., 817 F.3d at 853. Accordingly, Mrs. Amatucci has failed to demonstrate that there is any disputed fact as to that essential element of her malicious prosecution claims, and on that basis, the defendants are entitled to summary judgment as to the claims in this action as a matter of law. See id.; Delgado, 601 F. App'x at 15.

Violation of Speedy Trial Clause FRAUD - NO CHARGES - They were Voided

IV. Municipal Liability Under *Monell*

Mrs. Amatucci has asserted that the Town of Wolfeboro is liable to her for malicious prosecution because the Fourth

---

[9]Even if Mrs. Amatucci could demonstrate, however, that the bail conditions set upon her release from the CCHC applied to her speeding offense, as well as the disobeying offense, the court notes that those conditions, which "required her to attend court proceedings, notify the court of any change in address, [and] refrain from committing crimes," see Bond in Crim. Case, are the type of "run-of-the-mill conditions of pretrial release" that do not generally "rise to the level of a Fourth Amendment seizure." Harrington, 610 F.3d at 32-33. And further, of course, Mrs. Amatucci's speeding-related claim necessarily fails because that charge was supported by probable cause. See Part II, supra; Hernandez-Cuevas I, 723 F.3d at 101.

112

142

Amendment violation she has alleged was caused by a Town policy of refusing to address police misconduct. "An underlying constitutional tort is required to proceed under a municipal liability theory. Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 504 (1st Cir. 2011). As the evidence before the court demonstrates that no Town employee violated Mrs. Amatucci's Fourth Amendment rights, the Town is entitled to judgment as a matter of law as to the malicious prosecution claim asserted against it under a theory of municipal liability.

FRAUD

V. Qualified Immunity

The defendants argue that they are entitled to qualified immunity with regard to Mrs. Amatucci's Fourth Amendment malicious prosecution claims. "Qualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Marrero-Mendez v. Calixto-Rodriguez, 830 F.3d 38, 43 (1st Cir. 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).

113
143

WHAT ABOUT THE ARREST

The undisputed record in this case demonstrates that the defendants had probable cause to stop Mrs. Amatucci's car for speeding on May 7, 2014, and thus, she cannot succeed on a claim of a violation of her Fourth Amendment right not to be maliciously prosecuted for that speeding offense. Accordingly, and without the necessity of analyzing the second prong of the qualified immunity analysis, defendants are entitled to qualified immunity in regard to the malicious prosecution claims in this case.

FRAUD

**Conclusion**

For the foregoing reasons, finds that the defendants have "affirmatively demonstrate[d] that there is no evidence in the record to support a judgment" in Mrs. Amatucci's favor as to her malicious prosecution claim. Celotex Corp., 477 U.S. at 332. Accordingly, the court enters the following Order:

1. The court's September 24, 2018 endorsed order incorrectly identifies the defendants' summary judgment motion as Document No. 139. The clerk's office is directed to amend that endorsed order in the docket of this case to reflect that the defendants' motion for summary judgment is Document No. 138.

114

144

2. Defendants' motion for summary judgment (Doc. No. 138) is GRANTED. FRAUD

3. Plaintiff's motion for summary judgment (Doc. No. 123) is DENIED.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: December 26, 2018

cc: Josephine Amatucci, pro se
Daniel J. Mullen, Esq.
Mark H. Puffer, Esq.

115

145

## Notices

1:20-cv-01194 Amatucci v. US District Court-NH, District Judge

**U.S. District Court**

**District of New Hampshire**

### Notice of Electronic Filing

The following transaction was entered on 12/23/2020 at 9:43 AM EST and filed on 12/23/2020

**Case Name:** Amatucci v. US District Court-NH, District Judge
**Case Number:** 1:20-cv-01194
**Filer:**
**Document Number:** 2

**Docket Text:**
**NOTICE - Filing Fee Omitted. Either the filing fee or an application to proceed without fees or costs must be submitted within 60 days. If proceeding without prepayment of fees or costs is sought the court needs: Application to Proceed Without Prepayment of Fees or Costs. Compliance Deadline set for 2/23/2021. (ed)**

**1:20-cv-01194 Notice has been electronically mailed to:**

**1:20-cv-01194 Notice, to the extent appropriate, must be deliv**

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH 03896

Your number on your document is #5247.

Opened as a new case per order in case 18-mc-38-JL

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=12/23/2020] [FileN
0] [3583b5ecc203f84a0f8bed301d75dbe16e194e03bc3ebfdb9cdc5979b3ab7abaa2
99082cafe807335f3a0bc018e90cc0afbdf91f82dd2a5282a2bb12d1faf39a]]

46

116

## Notices

1:20-cv-01194 Amatucci v. US District Court-NH, District Judge

**U.S. District Court**

**District of New Hampshire**

**Notice of Electronic Filing**

The following transaction was entered on 12/23/2020 at 9:43 AM EST and filed on 12/23/2020
**Case Name:** Amatucci v. US District Court-NH, District Judge
**Case Number:** 1:20-cv-01194
**Filer:**
**Document Number:** 2

**Docket Text:**
**NOTICE - Filing Fee Omitted. Either the filing fee or an application to proceed without fees or costs must be submitted within 60 days. If proceeding without prepayment of fees or costs is sought the court needs: Application to Proceed Without Prepayment of Fees or Costs. Compliance Deadline set for 2/23/2021. (ed)**

**1:20-cv-01194 Notice has been electronically mailed to:**

**1:20-cv-01194 Notice, to the extent appropriate, must be deliv**

Your number on your document is #5247.

opened as a new case per order in case 18-mc-38-JL

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH 03896

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=12/23/2020] [FileN
0] [3583b5ecc203f84a0f8bed301d75dbe16e194e03bc3ebfdb9cdc5979b3ab7abaa2
99082cafe807335f3a0bc018e90cc0afbdf91f82dd2a5282a2bb12d1faf39a]]



INCOME 1546.00

Social Security ~~1541.00~~ 350.00

Boarder

BILLS

| | | MONTHLY |
|---|---|---|
| 1. | ~~[illegible]~~ | ~~[illegible]~~ |
| 2. | AARP-UNITED HEALTH INSURANCE | 174.50 |
| 3. | LIBERTY MUTUAL HOUSE INSURANCE AND CAR INSURANCE | 181.11 |
| 4. | PRESCRIPTION DRUG | 32.60 |
| 5. | Metrocast | 184.63 |
| 6. | Fuel (heating) | 250.00 |
| 7. | Santander (Car Payment) | 278.83 |
| 8. | Lawrence Sumski (Bankruptcy) | 500.00 |
| 9. | Electric (Town) | 50.00 |
| 10. | Food | 200.00 |
| 11. | Gas for car | 100.00 |
| 12. | Clothing | 50.00 |

TOTAL 2,084.66

TOTAL INCOME ~~[illegible]~~ 1,511.50 Total only Social Security

At end of month I borrow the balance from my church. And it goes on and on.



Santander
CONSUMER USA

183143

JOSEPHINE AMATUCCI
350 GOVERNOR WENTWORTH HWY POB 272
WOLFEBORO FALLS, NH 03896

ACCOUNT INFORMATION

10/21/14

| | |
|---|---|
| Account Number | 4628746 |
| Account Status | Current |
| Statement Date | 10/20/2014 |
| Payment Due Date | 11/08/2014 |
| Payment Amount | $278.83 |
| Payments Made | 0 |
| Maturity Date | 10/08/2020 |
| Past Due Amount | $0.00 |
| Principal | $14,993.00 |
| Accrued Interest | $225.69 |
| Unpaid Fees & Charges | $.00 |
| Estimated Payoff* | $15,218.69 |

TOTAL AMOUNT DUE

**$278.83** By **11/08/2014**

*Balance including principal, accrued interest, and unpaid fees and charges as of the Statement Date.

ACCOUNT ALERTS & IMPORTANT MESSAGES

AARP

**Payment Coupon**

Membership Number: 314676183-1

*Payment is due on or before the due date.*

Due Date: 01-01-2015

Amount Due: $174.50

Insured Member 1: JOSEPHINE S AMATUCCI

Member 1 Coverages: B

Insured Member 2

Member 2 Coverages

31467618311745001011509141465 2

If you make a payment of $2070.00 by January 31 for the full year, you'll save $24! Call if you have any questions: 1-800-523-5800.

PO BOX 660291
DALLAS TX 75266-0291

PLEASE MAKE YOUR CHECK OR MONEY ORDER PAYABLE TO UNITEDHEALTHCARE INSURANCE COMPANY.
PLEASE DO NOT FOLD, STAPLE, OR TAPE COUPON AND CHECK WITH YOUR RETURN.
PLEASE USE THE ENVELOPE PROVIDED TO RETURN COUPON AND PAYMENT.

*Town of Wolfeboro*

MUNICIPAL ELECTRIC DEPARTMENT
84 SOUTH MAIN STREET
P.O. BOX 777
WOLFEBORO, NH 03894-0777
603-569-8150
603-569-8183

| BILLING DATE | 11/28/17 | ACCOUNT NUMBER |
|---|---|---|
| DUE DATE | 12/27/17 | 09-0449.002 |
| TOTAL AMOUNT DUE | | $10,409.94 |

AMOUNT REMITTED $

Service Address: 350 GOV WENTWORTH HWY

IF YOU HAVE AN ADDRESS CHANGE, PLEASE FILL OUT REVERSE SIDE AND CHECK BOX HERE. ☐

Please return this portion with your payment and make checks payable to:

287 1 SP 0.460 E0287X 10324 D3073818705 S2 P4856087 0001:0001

JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

Town of Wolfeboro
P.O. Box 777
Wolfeboro, NH 03894-0777

MUNICIPAL ELECTRIC DEPARTMENT
84 SOUTH MAIN STREET
P.O. BOX 777
WOLFEBORO, NH 03894-0777
603-569-8150
603-569-8183

| ACCT NO. | 09-0449.002 | PROPERTY OWNER | JOSEPHINE AMATUCCI |
|---|---|---|---|
| NEXT READ | 12/21/17 | SERVICE LOCATION | 350 GOV WENTWORTH HWY |
| BILLING DATE | 11/28/17 | RATE | DOMESTIC ALL YR DA |

| METER NUMBER(S) | PREVIOUS DATE | PREVIOUS READING | PREVIOUS READ CODE | PRESENT DATE | PRESENT READING | PRESENT READ CODE | MULTI. | TOTAL KWH USED |
|---|---|---|---|---|---|---|---|---|
| 3320 | 10/23/17 | 9853 | ACT | 11/28/17 | 2465 | ACT | 1 | 2612 |

| | |
|---|---|
| PREVIOUS BALANCE | $10,093.54 |
| PAYMENTS AS OF 11/28/17 | $50.00CR |
| BALANCE FORWARD | $10,043.54 |
| CUSTOMER CHARGE | $5.55 |
| DISTRIBUTION 2612 KWH @ .035200 | $91.94 |
| GENERATION 2612 KWH @ .102400 | $267.47 |
| STATE OF NEW HAMPSHIRE CONSUMPTION TAX | $1.44 |
| TOTAL AMOUNT DUE | |

603-569-3902

1ST INSTALLMENT: $ 4
2ND INSTALLMENT: $ 4
TOTAL PAYMENTS: $

Property Location: 350 GOV WENTWORTH HWY

AMOUNT DUE $ 9
BY DEC 19, 2017

AMATUCCI, JOSEPHINE
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

Town of Wolfeboro
P.O. Box 629
Wolfeboro, NH 03894-0629

PLEASE DETACH AND RETURN ABOVE PORTION WITH YOUR PAYMENT. MAKE CHECK PAYABLE TO THE TOWN OF WOLFEBORO.

Town of Wolfeboro

**REAL ESTATE TAX BILL**
84 SOUTH MAIN STREET P.O. BOX 629
WOLFEBORO, NH 03894-0629

**OFFICE HOURS**
MONDAY - FRIDAY : 8:00AM - 4:00PM
TELEPHONE (603) 569-3902
email : taxcollector@wolfeboronh.us

PROPERTY OWNER(S):
AMATUCCI, JOSEPHINE

MAILING ADDRESS:
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

TAX YEAR: 2017
ACCOUNT NUMBER: 10-3996.701
TAX MAP/LOT NUMBER: 151---21
PROPERTY LOCATION: 350 GOV WENTWORTH HWY

| | TAX RATES | TOTAL VALUATION | AMOUNT | ASSESSMENT INFORMATION | | TAX INFORMATION | |
|---|---|---|---|---|---|---|---|
| MUNICIPAL | 5.760 | $64,500 | $371.00 | BUILDING VALUE | $70,000 | GROSS TAX | $966.0 |
| SCHOOL-LOCAL | 5.550 | $64,500 | $357.00 | LAND VALUE | $84,500 | CREDITS | |
| SCHOOL-STATE | 2.280 | $64,500 | $147.00 | TOTAL VALUE | $154,500 | NET TAX | $966.0 |
| COUNTY | 1.390 | $64,500 | $89.00 | EXEMPTIONS | | FIRST BILL | $472.0 |
| | | | | | | SECOND BILL | $494.0 |
| TOTAL | 14.980 | $64,500 | $966.00 | TAXABLE VALUE | $64,500 | PAYMENTS | |

AMOUNT DUE BY DEC 19, 2017 $966.00

IF PAID AFTER DUE DATE ANNUAL INTEREST RATE OF 12% WILL BE CHARGED
PRIOR YEARS TAXES DO NOT INCLUDE ACCUMULATED INTEREST OR COSTS
PLEASE CONTACT THE TAX OFFICE FOR UPDATED AMOUNTS

**IMPORTANT NOTICE TO ALL TAXPAYERS:**

IF YOU ARE ELDERLY, DISABLED, BLIND, A VETERAN, OR VETERAN'S SPOUSE, OR ARE UNABLE TO PAY TAXES DUE TO POVERTY OR OTHER GOOD CAUSE, YOU MAY BE ELIGIBLE FOR A TAX EXEMPTION, CREDIT, ABATEMENT, OR DEFERRAL. FOR DETAILS AND APPLICATION INFORMATION, CONTACT THE ASSESSING DEPARTMENT. (CONTACT AND ADDITIONAL INFORMATION ON REVERSE SIDE OF THIS BILL.)

***PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION***



RX

914ADSGLP0016001-00088-02

November 08, 2017

Member ID: 017354256-1

**You have a past due amount. Please pay so you don't lose your plan.**

Dear JOSEPHINE S AMATUCCI,

We want to let you know that you have a past due amount on your AARP MedicareRx Saver Plus (PDP) account. As of November 08, 2017, you owe $65.20. Please pay this amountupon receipt so that you won't be disenrolled.

**What happens if I don't pay?**
If we don't receive [illegible] December 31, 201[illegible] December 31, 2017. After December 3[illegible], 2017, you will no longer be covered by AARP MedicareRx Saver Plus (PDP). However, your other Medicare benefits will not be affected if you are disenrolled from AARP MedicareRx Saver Plus (PDP).

**Premium payment**
[illegible]

If you wish to pay your next month's premium today with the past due amount, here is the total:

| [illegible] | Amount | Due date |
| --- | --- | --- |
| Past due amount | $65.20 | Upon receipt |
| Premium (monthly charge) | $32.60 | December 01, 2017 |

# MetroCast

## Statement of Service

Page 1 of 3

**Billing Date:** November 6, 2017
**Account Number:** 8282 16 019 0036339

METROCAST CABLEVISION
9 APPLE RD BELMONT NH 03220-3251
8282 1600 WM RP 05 11072017 NNNNNYNN 01 008176 0029

JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

**How to reach us ....**
Office hrs M-F 8:00am-6:00pm
Sat 8am-4:30pm www.MetroCast.com
Phone hrs 24/7 1-800-832-1001

**For Service At...**
550 GOVERNOR WENTWORTH HWY
WOLFEBORO NH 03894-4635

## Account Summary

Your account is past due. Please remit the total balance due immediately to avoid a $25.00 collection effort charge or disconnection of service. If payment was made after the remittance date, please disregard this message. Thank you.

Please see reverse side for account details.

| | |
|---|---|
| Previous Balance | $ 864.79 |
| Payment(s) | -188.69 |
| Monthly Charge(s) | 167.81 |
| Other Charge(s) | 5.00 |
| Taxes & Fee(s) | 8.86 |
| Balance Due | $ [illegible] |
| Payment Due Date | Upon Receipt |



*006262*

LIBERTY MUTUAL INSURANCE
P.O. BOX 6829
SCRANTON, PA 18505

Liberty Mutual.
INSURANCE

**PLEASE READ:** Payments or documents sent to the address above will not be processed

JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

## Your Bill is Past Due.

We have not received your payment as of 04/06/2020. Please pay total amount due to avoid possible interruption to your coverage.

**Josephine, thank you for being our valued customer since 2017!**

## THIS IS YOUR HOME INSURANCE BILL AS OF APRIL 06, 2020

### INSURANCE INFORMATION

| | |
|---|---|
| **Policy Number:** | H37-218-117400-70 |
| **Policy Period:** | May 07, 2019 - May 07, 2020 |
| **Bill Frequency:** | Monthly |
| **Property Insured:** | 350 GOVERNOR WENTWORTH HWY |
| | WOLFEBORO, NH 03894-4635 |

### BILLING DETAILS

| | |
|---|---|
| Previous Policy Balance | $123.27 |
| Payment Activity | |
| Payments Received | $0.00 |
| Installment Charge | $5.00 |
| Policy Balance | $128.27 |
| | |
| Past Due Amount | $123.27 |
| Installment Charge | $5.00 |

**Please Pay Total Amount Due by April 26, 2020 $128.27**

### QUESTIONS

**Questions Regarding Your Policy or Bill?**

1-800-225-8285

**Want to Pay Online?**
LibertyMutual.com/service

**Need to Report a Claim?**
1-800-2CLAIMS (1-800-225-2467)

**Mail Check to:**
Liberty Mutual Group
PO BOX 1452
New York, NY 10116-1452

**Save Time & Money**
Eliminate installment charges by paying your balance in full.

## PAYMENT COUPON

Please send all payments in the envelope provided.
Please make check payable to: Liberty Mutual Group

Save time and money by signing up for automatic payments via your bank account at: LibertyMutual.com/autopay
Or pay your bill online at: LibertyMutual.com/pay

Lost your envelope? Mail check to:

Liberty Mutual Group
PO BOX 1452
New York, NY 10116-1452

JOSEPHINE AMATUCCI

**Due Date:** April 26, 2020
**Policy Number:** H37-218-117400-70
**Invoice Number:** 00000285724331

PAY POLICY IN FULL: $128.27

OR

PAY AMOUNT DUE: $128.27

**Amount Enclosed:**

$

Manchester, NH 03101

April 4, 2016

Josephine Amalucci
POB 272
Wolfeboro Falls, NH 03896

RE: Chapter 13 #15-11958-BAH

Dear Ms. Amalucci:

We do not process Plan payments at our office. Checks need to be sent to our Lock Box in Memphis, Tennessee. This therefore returning your check #23562063318 in the amount of $299.00 dated April 2, 2016.

Please send all **Plan payments** to the following address:

Lawrence P. Sumski
Chapter 13 Trustee
PO Box 839
Memphis, TN 38101-0839

**PLEASE include your case number!**

The address for <u>correspondence only</u> is:

Lawrence P. Sumski
Chapter 13 Trustee
1000 Elm Street, Suite 1002
Manchester, NH 03101

Please call if you have any question regarding this.

Yours truly,

/s/ Lawrence P. Sumski

Lawrence P. Sumski

LPS:kc

Telephone: (603) 626-8899
E-Mail address: SumskiCh13@gmail.com


MORTGAGE
PO Box 818061
5801 Postal Road
Cleveland, OH 44181

STATEMENT PRINT DATE: 9/2/20

FOR THE MONTH ENDING: 8/31/20

LOAN NUMBER: 0001034549

**DEFAULT BALANCE: $2,497.63**

4870 1 AB 0.419 T20 P2 AUTO 458789.3-NNNN-30430943

JOSEPHINE AMATUCCI
350 GOVERNOR WENTWORTH HWY
WOLFEBORO, NH 03894

PAYMENT PLAN: **Line of Credit**

LOAN STATUS: **BANKRUPTCY**

PROPERTY ADDRESS: **350 Governor Wentworth Hwy Wolfeboro, NH 03894**

LOAN TYPE: **HECM**

## QUESTIONS? WE'RE HERE TO HELP.

CUSTOMER SERVICE: **855-683-3095**
Monday through Thursday from 7 am to 7 pm (CT)
Friday from 7 am to 5 pm (CT)
**www.championmortgage.com**

Mailing Address
P.O. Box 619093
Dallas, TX
75261-9093

## ACCOUNT OVERVIEW

| | Prior Month Interest Rate | Current Month Interest Rate | MIP |
|---|---|---|---|
| Daily | 00.01523% | 00.01523% | 00.00137% |
| Monthly | 00.46333% | 00.46333% | 00.04167% |
| Annual | 05.56000% | 05.56000% | 00.50000% |

## THIS IS NOT A BILL

## MESSAGE CENTER

[illegible] **"How do I read and understand my monthly statement?"**

Have you entered into a Real Estate Tax Deferral Program? If so, you are required to notify Champion Mortgage of this election

## BALANCE SUMMARY as of 8/31/20

| | |
|---|---|
| **Current Month Principal Limit** | **$319,750.43** |
| -Current Loan Balance | $397,687.35 |
| -Servicing Fee Set Aside | [illegible] |
| -Repairs Set Aside | $0.00 |
| -Tax and Insurance Set Aside | $0.00 |
| -First Year Property Charge Set Aside | $0.00 |
| **Net Principal Limit** | **$0.00** |
| Current Loan Balance | $397,687.35 |
| +Corporate Advances | $0.00 |
| **Total Loan Balance with Advances** | **$397,687.35** |

| | |
|---|---|
| **Prior Month Available Line of Credit** | **$0.00** |
| Repair Set Aside | [illegible] |
| Tax and Insurance Set Aside | [illegible] |
| First Year Property Charge Set Aside | [illegible] |
| **Available Line of Credit** | **$0.00** |

## INTEREST RATE CHANGE NOTICE

The interest rate on your reverse mortgage is fixed at the rate listed above over the life of your loan.

PO Box 818061
5801 Postal Road
Cleveland, OH 44181

273 1 MB 0.439 T2 P1 AUTO 433638.5-NNNN-30414334

JOSEPHINE AMATUCCI
350 GOVERNOR WENTWORTH HWY
WOLFEBORO, NH 03894

# REVERSE MORTGAGE MONTHLY STATEMENT

STATEMENT PRINT DATE
**8/3/20**

FOR THE MONTH ENDING
7/31/20

LOAN NUMBER
**0001034549**

**DEFAULT BALANCE:**
**$3,035.83**

PAYMENT PLAN
**Line of Credit**

LOAN STATUS
**BANKRUPTCY**

PROPERTY ADDRESS
**350 Governor Wentworth Hwy**
**Wolfeboro, NH 03894**

LOAN TYPE
**HECM**

## QUESTIONS? WE'RE HERE TO HELP.

CUSTOMER SERVICE **855-683-3095**
Monday through Thursday from 7 am to 7 pm (CT)
Friday from 7 am to 5 pm (CT)
**www.championmortgage.com**

Mailing Address
P.O. Box 619093
Dallas, TX
75261-9093

## ACCOUNT OVERVIEW

| | Prior Month Interest Rate | Current Month Interest Rate | MIP |
|---|---|---|---|
| Daily | 00.01523% | 00.01523% | 00.00137% |
| Monthly | 00.46333% | 00.46333% | 00.04167% |
| Annual | 05.56000% | 05.56000% | 00.50000% |

## THIS IS NOT A BILL

## MESSAGE CENTER

Visit www.championmortgage.com for assistance in reading your monthly mortgage statement, please click on the tab under FAQ's, and click on the "+" sign next to **"How do I read and understand my monthly statement?"**

Have you entered into a Real Estate Tax Deferral Program? If so, you are required to notify Champion Mortgage of this election

## BALANCE SUMMARY as of 7/31/20

| | |
|---|---|
| **Current Month Principal Limit** | **$319,750.43** |
| -Current Loan Balance | $396,196.49 |
| -Servicing Fee Set Aside | $3,979.44 |
| -Repairs Set Aside | $0.00 |
| Tax and Insurance Set Aside | $0.00 |
| First Year Property Charge Set Aside | $0.00 |
| **Net Principal Limit** | **$0.00** |

| | |
|---|---|
| Current Loan Balance | $396,196.49 |
| +Corporate Advances | $0.00 |
| **Total Loan Balance with Advances** | **$396,196.49** |

| | |
|---|---|
| **Prior Month Available Line of Credit** | **$0.00** |
| Repair Set Aside | $0.00 |
| Tax and Insurance Set Aside | $0.00 |
| First Year Property Charge Set Aside | $0.00 |
| **Available Line of Credit** | **$0.00** |

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: ~~Carroll Superior Court~~ U.S. Dist. Ct
Case Name: Josephine Amatucci v. Attorney Daniel Mullen & Judge LaPlante
Case Number: (if known)

## STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS

1. Name: Josephine Amatucci DOB: 9/27/38
2. Residence Address: 350 Governor Wentworth Highway Wolfeboro 03894
3. Mailing Address (if different): P.O. 272 Wolfeboro Falls N.H. 03896
4. Marital Status: ☐ Single ☐ Married ☐ Separated ☐ Widowed
5. List the names, ages, relationships of dependents you support: N/A
6. If you are presently employed, state where and for how long: N/A ☐ Full-Time ☐ Part-Time
7. If unemployed, state last date of employment: Years & Years Ago
8. When do you anticipate new employment? Never I am 82 years old
9. If your spouse is presently employed, state where and for how long? N/A Widow ☐ Full-Time ☐ Part-Time
10. If spouse unemployed, state last date of employment: N/A
11. List other employed household members and their weekly income: None
12. Please state **weekly** take-home amount

| | Yours | Spouse's |
|---|---|---|
| Salary/Wages | $ | $ |
| Child Support | $ N/A | $ |
| Alimony | $ N/A | $ |
| Trust Benefits | $ N/A | $ |
| Investment Income | $ N/A | $ |
| Other | $ N/A | $ |
| *Social Security | $ 1,511.50 | $ |
| *Welfare Benefits | $ N/A | $ |
| *Veteran's Benefits | $ N/A | $ |
| *Pension | $ N/A | $ |
| **Unemployment Compensation | $ N/A | $ |
| **Worker's Compensation | $ N/A | $ |
| Total | 1,511.50 | $ |

13. What money is presently available to you?

| | |
|---|---|
| Cash on hand | $ 40.00 |
| Checking account | $ |
| Savings account | $ |
| Stocks/Bonds/IRA/Pension | $ |
| Total | $ |

**Case Name:** ______

**Case Number:** ______

**STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS**

14. Please state your **monthly** household expenses:

| | | | |
|---|---|---|---|
| Rent/Mortgage | $ | Cell Phone | $ |
| Property Taxes | $ | Clothing | $ |
| Heat | $ See Attached | Transportation | $ |
| Food | $ | (including gas, maintenance, insurance, repairs) | |
| Utilities | $ | Other (specify) | |
| Medical/Dental | $ | | $ |
| Insurance | $ | | $ |
| **Total** | **$** | | |

15. List any real estate you own, its market value and the amount you owe:
350 Governor Wentworth Highway, Wolfeboro
Market Value Unknown - Reverse Mort - owe 394,687.35

16. List any vehicles you own (car, truck, boat, motorcycle, snowmobile, RV), their market value and the amount you owe:
2012 Nissan Versa - Unknown Value - owe about $2500.00

17. List income tax paid last year: $ Years & Years Ago

18. List income tax refund received last year: $ None

19. Other than monthly household expenses, list any bills you owe, amount owed, to whom, and monthly payment:
See Attached

20. List which of your bills are court-ordered payments (i.e. alimony, judgment in a law suit, etc.):
See Attached Bankruptcy & Santander

21. Other than those previously mentioned, list anyone to whom you owe money, amount and when it is due:
N/A

22. If anyone owes you money, state name, address, amount due, and when due:
Judges owe me money N/A

23. List any property you have transferred within the last three years, to whom and for what price:
N/A

24. List any other assets or expenses not previously mentioned:
N/A

* Exempt income – The Court may not consider this income. If this represents the sole source of income, the court may not issue a payment order.
** Potentially/partially exempt income – The Court may be unable to consider this income. Based upon the facts of the case, the Court may or may not issue a payment order.

**Case Name:** ___

**Case Number:** ___

**STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS**

***For non e-filed cases:***

I state that on this date I am ☑ mailing by U.S. mail, or ☐ Email (only when there is a prior agreement of the parties to use this method), or ☐ hand delivering a copy of this document to:

DANiel Muller
Other party

Other party's attorney

**OR**

***For e-filed cases:***

☐ I state that on this date I am sending a copy of this document as required by the rules of the court. I am electronically sending this document through the court's electronic filing system to all ~~attorneys and to all~~ other parties who have entered electronic service contacts (email addresses) in this case. I am mailing or hand-delivering copies to all other interested parties.

JOSEPHINE AMATUCCI
Name of Filer

[signature]
Signature of Filer

Date

N/A
Law Firm, if applicable

Bar ID # of attorney

603-569-2429
Telephone

Josephine - P.O. Box 272
Address

E-mail

Wolfeboro Falls, N.H. 03896
City State Zip code

Case Name: Josephine Amatucci v. Daniel Plummer

Case Number: N/A

**STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS**

## Notice of Protected (Exempt) Sources of Income

**PERIODIC PAYMENTS CANNOT BE ORDERED FROM THE FOLLOWING SOURCES OF INCOME (subject to some exceptions):**

- Social Security Old-Age, Survivors & Disability Insurance Benefits (42, U.S.C. § 407)
- Supplementary Security Income (SSI) for the Aged, Blind and Disabled (42 U.S.C. §407 and §1383(d)(1))
- Unemployment Compensation Benefits (RSA 282-A:159) (Exemption from payment orders except debts incurred for basic needs expenses for you or your family during the period of unemployment.
- Public Assistance Payments to the Blind, Aged or Disabled Persons and Dependent Children (ANB, OAA, APTD and TANF/FANF) (RSA 167:25)
- Veterans Benefits including: Retirement Benefits (10 U.S.C. §1440), Survivors' Benefits (10 U.S.C. §1450), Other Veterans Benefits (38 U.S.C. § 5301(a)), Medal of Honor Veterans Benefits (38 U.S.C. § 1562)
- Workers Compensation Benefits (RSA 281-A:52) (Exemption from payment orders except debts for medical and related care for the compensated injury and claims for legal fees approved by the Superior Court for prosecuting the workers compensation claim.
- Retirement funds including Individual Retirement Accounts, Stock Bonus, Pension, Profit-Sharing, Annuity or Similar Qualified Plan (RSA 511:2(XIX)). Exempt from periodic payments up to $362.50 per week. If income and expenses are shared with another person with whom you live and the other person also receives income from such a retirement plan or arrangement, the exemption is up to $725.00 per week.
- Civil Service Retirement Benefits (5 U.S.C. § 83466(a)
- Armed Forces Retirement Pay (10 U.S.C. § 1440)
- Railroad Retirement Act Annuities and Pensions (45 U.S.C. § 231m)
- Fireman's Retirement Pay (RSA 102:23)
- Fireman's Relief Payments (RSA 402:69)
- Foreign Services Retirement and Disability Payments (22 U.S.C. § 4060(c))
- Injury or Death Compensation Payments from War Risk Hazards (42 U.S.C. § 1717) (With exception of monies paid as reimbursement for funeral expenses or as reimbursement with respect to payments of worker's compensation or in the nature of worker's compensation benefits.)
- Lighthouse Keepers Widow's Benefits (33 U.S.C. §775)
- Wages of Fisherman, Seaman and Apprentices (46 U.S.C. § 11109) (With exception for an order of a court about the payment by a master or seaman of any part of the master's or seaman's wages for the support and maintenance of the spouse or minor children of the master or seaman, or both).
- Longshoremen's and Harbor Worker's Compensation Act Death and Disability Payments (33 U.S.C. § 916)

**PLEASE NOTE: IF YOU HAVE INCOME FROM ANY OF THE SOURCES LISTED ABOVE, PLEASE BRING VERIFICATION (FOR EXAMPLE, YOUR AWARD LETTER) TO COURT WITH YOU.**

NONE

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: CARROLL SUPERIOR COURT

Case Name: JOSEPHINE AMATUCCI V. ATTORNEY DANIEL MULLEN

Case Number: N/A
(if known)

## MOTION FOR EXCEPTION FROM ELECTRONIC FILING DUE TO EXTRAORDINARY CIRCUMSTANCES

1. Your name: JOSEPHINE AMATUCCI
   Residence address: 350 GOVERNOR WENTWORTH HIGHWAY WOLFEBORO 03894
   Mailing address (if different): P.O. BOX 272, WOLFEBORO FALLS NH 03896
   Telephone number: (603) 569-2429
2. Other party(s) names:
3. Do you have access to a computer?
   - [x] Yes
   - [ ] No
4. Do you have transportation to your local courthouse or to a place where there is a public computer available (i.e. your local library)?
   - [x] Yes
   - [x] No
5. Provide any additional information you want the court to consider in this Motion for Exception from Electronic Filing Due to Extraordinary Circumstances:

I AM DESTITUTE. EVERY MONTH I HAVE TO BORROW MONEY FROM MY LOCAL CHURCH AS I DO NOT MAKE IT FINANCIALLY TO THE END OF MONTH AFTER PAYING ALL MY BILLS. I PAY THEM WHEN I GET MY SOCIAL SECURITY PAYMENT ON THE 3RD OF EACH MONTH AND IT CONTINUES EACH AND EVERY MONTH.

**Case Name:** Josephine Amatucci V. Daniel Mullen

**Case Number:**

**MOTION FOR EXCEPTION FROM ELECTRONIC FILING – EXTRAODRINARY CIRCUMSTANCES**

I state that on this date I provided a copy of this document by U.S. mail or hand-delivery to:

Daniel Mullen (other party) or ______ (other party's attorney)

Filing Party's Verification: I verify the truth and accuracy of all facts alleged within this document to the best of my belief and further verify that all facts contained in this document are alleged in good faith. By affixing my electronic signature to this document I acknowledge my understanding that any false statements made in this document are punishable as perjury which may include a fine or imprisonment or both.

Date: Oct 14 2020

Signature: Josephine Amatucci

Name of Filer: Josephine Amatucci

Signature of Filer: Josephine Amatucci

Date:

Law Firm, if applicable:

Bar ID # of attorney:

Telephone: (603) 569-2429

Address:

E-mail:

City: State: Zip code:

**FOR COURT USE ONLY:**

☐ The Motion for Exception from Electronic Filing is hereby **GRANTED**. Paper filings will be accepted from you. You must forward all filings to the other party via U.S. mail or hand-delivery. See attached instructions.

☐ The Motion for Exception from Electronic Filing is hereby **DENIED**. You must register/login and provide your valid e-Mail address **within 10 days** or your case/filing is subject to dismissal or default. See attached instructions.

Date: ______

Presiding Justice: ______

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: CARROll SUPERIOR COURT

Case Name: JOSEPHINE AMATUCCI V. ATTORNEY DANIEL MULLEN

Case Number: (if known)

## MOTION FOR WAIVER OF FILING FEE

I, Josephine Amatucci JOSEPHINE AMATUCCI, hereby request that the Court waive the filing fee in this case as I do not have the financial ability to pay these fees at this time.

I have completed a Statement of Assets and Liabilities which is being filed with this motion.

In support of this motion, it is stated as follows:

I CANNOT MAKE IT FINANCIALLY TO THE END OF THE MONTH, THEREFORE I HAVE TO GO TO MY LOCAL CHURCH WHO ALLOWS ME TO BORROW MONEY FROM THEM, WHICH I PAY WHEN I GET MY SOCIAL SECURITY PAYMENT ON THE 3RD OF THE MONTH. THIS CONTINUES EVERY MONTH.

Wherefore, it is respectfully requested that this Court waive the filing fee in this case.

Name of Filer: JOSEPHINE AMATUCCI

Signature of Filer: Josephine Amatucci

Date:

Law Firm, if applicable: N/A

Bar ID # of attorney:

Telephone: (603) 569-2429

Address: P.O. BOX 272

E-mail: RT109@METROCAST.NET

City / State / Zip code: WOLFEBORO FALLS N.H. 03896

**Case Name:** ___________________________

**Case Number:** ___________________________

**MOTION FOR WAIVER OF FILING FEES**

## FOR COURT USE ONLY

☐ Motion Granted. ☐ Motion Denied

☐ Motion granted, in part. Filing fee reduced, party to pay $ ____________

____________ ____________________

Date

5261

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Joseph Laplante

CASE NO 934

JUDGE McCAFFERTY

AND REQUEST NOT TO PAY FEE

AND ALL EVIDENCE I WAS ARRESTED FOR SPEEDING AND A VIOLATION OF ~~SPEEDY~~ CLAUSE OF SIXTH AMEND. SPEEDY TRIAL CLAUSE

2 4th AMEND MALIS. PROS. CLAIMS

1. PLEASE FIND ATTACHED TRANSCRIPT OF HEARING OF CROSS SUMMARY JUDGMENTS, EVIDENCE OF LAPLANTE'S FALSIFICATION OF FACTS AND THE LAW, OF ALLOWING PROBABLE CAUSE TO THE POLICE FOR THE........STOP.... FOR SPEEDING, WHEN THE ISSUE WAS DID THEY HAVE PROBABLE CAUSE FOR THE ....."ARREST" FOR SPEEDING, IGNORING THE FOURTH AMENDMENT CLAIM FOR AN UNLAWFUL ARREST FOR SPEEDING. IN HIS BIAS, AND PREJUDICE, AND ACTING OUTSIDE OF HIS JURISDICTION BY ALLOWING MULLEN SUMMARY JUDGMENT BASED ON CHARGES THAT NEVER EXISTED THAT WERE VOID OF NO LEGAL FORCE UNDER THE SIXTH AMENDMENT, SPEEDY TRIAL ACT WHERE THE LONG DETENTION IS A FOURTH AMENDMENT SEIZURE. ALL ACTIONS TO DENY ME MY RIGHT TO DAMAGES FOR TWO FOURTH AMENDMENT UNLAWFUL SEIZURES UNDER 1983

Respectfully,

INCOME 1546.00

Social Seceurity ~~1511.00~~

Boarder 350.00

BILLS

| | | MONTHLY |
|---|---|---|
| 1. | ~~[illegible]~~ | ~~[illegible]~~ |
| 2. | AARP-UNITED HEALTH INSURANCE | 174.50 |
| 3. | LIBERTY MUTUAL HOUSE INSURANCE AND CAR INSURANCE | 181.11 |
| 4. | PRESCRIPTION DRUG | 32.60 |
| 5. | Metrocast | 184.63 |
| 6. | Fuel (heating) | 250.00 |
| 7. | Santander (Car Payment) | 278.83 |
| 8. | Lawrence Sumski (Bankrupcy) | 500.00 |
| 9. | Electric (Town) | 50.00 |
| 10. | Food | 200.00 |
| 11. | Gas for car | 100.00 |
| 12. | Clothing | 50.00 |

TOTAL 2,084.66

TOTAL INCOME ~~[illegible]~~ 1,511.50 Total only Social Security

At end of month I borrow the balance from my church. And it goes on and on.



Santander
CONSUMER USA

183143

JOSEPHINE AMATUCCI
350 GOVERNOR WENTWORTH HWY POB 272
WOLFEBORO FALLS, NH 03896

ACCOUNT INFORMATION

10/21/14

| | |
|---|---|
| Account Number | 4628746 |
| Account Status | Current |
| Statement Date | 10/20/2014 |
| Payment Due Date | 11/08/2014 |
| Payment Amount | $278.83 |
| Payments Made | 0 |
| Maturity Date | 10/08/2020 |
| Past Due Amount | $0.00 |
| Principal | $14,993.00 |
| Accrued Interest | $225.69 |
| Unpaid Fees & Charges | $.00 |
| Estimated Payoff* | $15,218.69 |

TOTAL AMOUNT DUE

**$278.83** By 11/08/2014

*Balance including principal, accrued interest, and unpaid fees and charges as of the Statement Date.

ACCOUNT ALERTS & IMPORTANT MESSAGES

AARP

**Payment Coupon**

| Membership Number | Payment is due on or before the due date. | Due Date | Amount Due |
|---|---|---|---|
| 314676183-1 | | 01-01-2015 | $174.50 |

Insured Member 1
JOSEPHINE S AMATUCCI

Member 1 Coverages
B

Insured Member 2

Member 2 Coverages

31467618311745001011509141465 2

If you make a payment of $2070.00 by January 31 for the full year, you'll save $24! Call if you have any questions: 1-800-523-5800.

PO BOX 660291
DALLAS TX 75266-0291

PLEASE MAKE YOUR CHECK OR MONEY ORDER PAYABLE TO UNITEDHEALTHCARE INSURANCE COMPANY.
PLEASE DO NOT FOLD, STAPLE, OR TAPE COUPON AND CHECK WITH YOUR RETURN.
PLEASE USE THE ENVELOPE PROVIDED TO RETURN COUPON AND PAYMENT.

Town of Wolfeboro

MUNICIPAL ELECTRIC DEPARTMENT
84 SOUTH MAIN STREET
P.O. BOX 777
WOLFEBORO, NH 03894-0777
603-569-8150
603-569-8183

| BILLING DATE | 11/28/17 | ACCOUNT NUMBER |
|---|---|---|
| DUE DATE | 12/27/17 | 09-0449.002 |
| TOTAL AMOUNT DUE | | $10,409.94 |

**AMOUNT REMITTED** $

Service Address: 350 GOV WENTWORTH HWY

IF YOU HAVE AN ADDRESS CHANGE, PLEASE FILL OUT REVERSE SIDE AND CHECK BOX HERE. ☐

Please return this portion with your payment and make checks payable to:

287 1 SP 0.460 E0287X I0324 D3073818705 S2 P4868087 0001:0001

JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

Town of Wolfeboro
P.O. Box 777
Wolfeboro, NH 03894-0777

MUNICIPAL ELECTRIC DEPARTMENT
84 SOUTH MAIN STREET
P.O. BOX 777
WOLFEBORO, NH 03894-0777
603-569-8150
603-569-8183

| ACCT NO. | 09-0449.002 | PROPERTY OWNER | JOSEPHINE AMATUCCI |
|---|---|---|---|
| NEXT READ | 12/21/17 | SERVICE LOCATION | 350 GOV WENTWORTH HWY |
| BILLING DATE | 11/28/17 | RATE | DOMESTIC ALL YR DA |

| METER NUMBER(S) | PREVIOUS DATE | PREVIOUS READING | PREVIOUS READ CODE | PRESENT DATE | PRESENT READING | PRESENT READ CODE | MULTI. | TOTAL KWH USED |
|---|---|---|---|---|---|---|---|---|
| 3320 | 10/23/17 | 9853 | ACT | 11/28/17 | 2465 | ACT | 1 | 2612 |

| | |
|---|---|
| PREVIOUS BALANCE | $10,093.54 |
| PAYMENTS AS OF 11/28/17 | $50.00CR |
| BALANCE FORWARD | $10,043.54 |
| CUSTOMER CHARGE | $5.55 |
| DISTRIBUTION 2612 KWH @ .035200 | $91.94 |
| GENERATION 2612 KWH @ .102400 | $267.47 |
| STATE OF NEW HAMPSHIRE CONSUMPTION TAX | $1.44 |
| TOTAL AMOUNT DUE | |

603-569-3902

1ST INSTALLMENT: $ 4
2ND INSTALLMENT: $ 4
TOTAL PAYMENTS: $

AMOUNT DUE $ 9
BY DEC 19, 2017

Property Location: 350 GOV WENTWORTH HWY

AMATUCCI, JOSEPHINE
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

Town of Wolfeboro
P.O. Box 629
Wolfeboro, NH 03894-0629

PLEASE DETACH AND RETURN ABOVE PORTION WITH YOUR PAYMENT. MAKE CHECK PAYABLE TO THE TOWN OF WOLFEBORO.

Town of Wolfeboro

REAL ESTATE TAX BILL
84 SOUTH MAIN STREET P.O. BOX 629
WOLFEBORO, NH 03894-0629

OFFICE HOURS
MONDAY - FRIDAY : 8:00AM - 4:00PM
TELEPHONE (603) 569-3902
email : taxcollector@wolfeboronh.us

PROPERTY OWNER(S):
AMATUCCI, JOSEPHINE
MAILING ADDRESS:
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

TAX YEAR: 2017
ACCOUNT NUMBER: 10-3996.701
TAX MAP/LOT NUMBER: 151---21
PROPERTY LOCATION: 350 GOV WENTWORTH HWY

| | TAX RATES | TOTAL VALUATION | AMOUNT | ASSESSMENT INFORMATION | | TAX INFORMATION | |
|---|---|---|---|---|---|---|---|
| MUNICIPAL | 5.760 | $64,500 | $371.00 | BUILDING VALUE | $70,000 | GROSS TAX | $966.0 |
| SCHOOL-LOCAL | 5.550 | $64,500 | $357.00 | LAND VALUE | $84,500 | CREDITS | |
| SCHOOL-STATE | 2.280 | $64,500 | $147.00 | TOTAL VALUE | $154,500 | NET TAX | $966.0 |
| COUNTY | 1.390 | $64,500 | $89.00 | EXEMPTIONS | | FIRST BILL | $472.0 |
| | | | | | | SECOND BILL | $494.0 |
| TOTAL | 14.980 | $64,500 | $966.00 | TAXABLE VALUE | $64,500 | PAYMENTS | |
| | | | AMOUNT DUE BY | DEC 19, 2017 | | | $966.00 |

IF PAID AFTER DUE DATE ANNUAL INTEREST RATE OF 12% WILL BE CHARGED
PRIOR YEARS TAXES DO NOT INCLUDE ACCUMULATED INTEREST OR COSTS
PLEASE CONTACT THE TAX OFFICE FOR UPDATED AMOUNTS

IMPORTANT NOTICE TO ALL TAXPAYERS:

IF YOU ARE ELDERLY, DISABLED, BLIND, A VETERAN, OR VETERAN'S SPOUSE, OR ARE UNABLE TO PAY TAXES DUE TO POVERTY OR OTHER GOOD CAUSE, YOU MAY BE ELIGIBLE FOR A TAX EXEMPTION, CREDIT, ABATEMENT, OR DEFERRAL. FOR DETAILS AND APPLICATION INFORMATION, CONTACT THE ASSESSING DEPARTMENT. (CONTACT AND ADDITIONAL INFORMATION ON REVERSE SIDE OF THIS BILL.)

***PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION***

RX

S1IADSGLP0019001-00088-02

November 08, 2017

Member ID: 017354256-1

**You have a past due amount. Please pay so you don't lose your plan.**

Dear JOSEPHINE S AMATUCCI,

We want to let you know that you have a past due amount on your AARP MedicareRx Saver Plus (PDP) account. As of November 08, 2017, you owe $65.20. Please pay this amountupon receipt so that you won't be disenrolled.

**What happens if I don't pay?**

If we don't receive [illegible] and each month's premium (monthly charge) by December 31, 2017 [illegible] AARP MedicareRx Saver Plus (PDP) effective December 31, 2017. After December 31, 2017, you will no longer be covered by AARP MedicareRx Saver Plus (PDP). However, your other Medicare benefits will not be affected if you are disenrolled from AARP MedicareRx Saver Plus (PDP).

**Premium payments**

Your premium is due on the first of each month. If we don't receive your payment by the first of each month, [illegible] past due amount.

If you wish to pay your next month's premium today with the past due amount, [illegible] total:

| [illegible] | Amount | Due date |
|---|---|---|
| Past due amount | $65.20 | Upon receipt |
| Premium (monthly charge) | $32.60 | December 01, 2017 |

# MetroCast

## Statement of Service

METROCAST CABLEVISION
9 APPLE RD BELMONT NH 03220-3251
8252 1900 WM RF 09 11072017 NNNNNYNN 01 009175 0029

JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

Page 1 of 3

**Billing Date:** November 6, 2017

**Account Number:** 8252 16 019 0036339

**How to reach us ....**
Office hrs M-F 8:00am-5:00pm
Sat 8am-4:30pm www.MetroCast.com
Phone hrs 24/7 1-800-952-1001

**For Service At...**
350 GOVERNOR WENTWORTH HWY
WOLFEBORO NH 03894-4635

## Account Summary

Your account is past due. Please remit the total balance due immediately to avoid a $25.00 collection effort charge or disconnection of service. If payment was made after the remittance date, please disregard this message. Thank you.

Please see reverse side for account details.

| | |
|---|---|
| Previous Balance | $ 884.79 |
| Payment(s) | -189.69 |
| Monthly Charge(s) | 167.91 |
| Other Charge(s) | 5.00 |
| Taxes & Fee(s) | 8.86 |
| Balance Due | $ 862.68 |
| Payment Due Date | Upon Receipt |




*006262*

LIBERTY MUTUAL INSURANCE
P.O. BOX 6829
SCRANTON, PA 18505

**PLEASE READ: Payments or documents sent to the address above will not be processed**

JOSEPHINE AMATUCCI
PO BOX 272
WOLFEBORO FALLS NH 03896-0272

## Your Bill is Past Due.

We have not received your payment as of 04/06/2020. Please pay total amount due to avoid possible interruption to your coverage.

**Josephine, thank you for being our valued customer since 2017!**

## THIS IS YOUR HOME INSURANCE BILL AS OF APRIL 06, 2020

### INSURANCE INFORMATION

| | |
|---|---|
| **Policy Number:** | H37-218-117400-70 |
| **Policy Period:** | May 07, 2019 - May 07, 2020 |
| **Bill Frequency:** | Monthly |
| **Property Insured:** | 350 GOVERNOR WENTWORTH HWY |
| | WOLFEBORO, NH 03894-4635 |

### BILLING DETAILS

| | |
|---|---|
| Previous Policy Balance | $123.27 |
| Payment Activity | |
| Payments Received | $0.00 |
| Installment Charge | $5.00 |
| Policy Balance | $128.27 |
| | |
| Past Due Amount | $123.27 |
| Installment Charge | $5.00 |
| **Please Pay Total Amount Due by April 26, 2020** | **$128.27** |

### QUESTIONS

**Questions Regarding Your Policy or Bill?**

1-800-225-8285

**Want to Pay Online?**
LibertyMutual.com/service

**Need to Report a Claim?**
1-800-2CLAIMS (1-800-225-2467)

**Mail Check to:**
Liberty Mutual Group
PO BOX 1452
New York, NY 10116-1452

**Save Time & Money**
Eliminate installment charges by paying your balance in full.

### PAYMENT COUPON

**Please send all payments in the envelope provided.**
**Please make check payable to: Liberty Mutual Group**

**Save time and money by signing up for automatic payments via your bank account at: LibertyMutual.com/autopay**
**Or pay your bill online at: LibertyMutual.com/pay**

**Lost your envelope? Mail check to:**

Liberty Mutual Group
PO BOX 1452
New York, NY 10116-1452

JOSEPHINE AMATUCCI

**Due Date:** April 26, 2020
**Policy Number:** H37-218-117400-70
**Invoice Number:** 00000285724331

**PAY POLICY IN FULL: $128.27**
OR
**PAY AMOUNT DUE: $128.27**

**Amount Enclosed:**

$





Manchester, NH 03101

April 4, 2016

Josephine Amatucci
POB 272
Wolfeboro Falls, NH 03896

RE: Chapter 13 #15-11858-BAH

Dear Ms. Amatucci:

We do not process Plan payments at our office. Checks need to be sent to our Lock Box in Memphis, Tennessee. I am therefore returning your check #23582083318 in the amount of $299.00 dated April 2, 2016.

Please send all Plan payments to the following address:

Lawrence P. Sumski
Chapter 13 Trustee
PO Box 839
Memphis, TN 38101-0839

**PLEASE include your case number!**

The address for correspondence only is:

Lawrence P. Sumski
Chapter 13 Trustee
1000 Elm Street, Suite 1002
Manchester, NH 03101

Taxes

Please call if you have any question regarding this.

Yours truly,

/s/ Lawrence P. Sumski

Lawrence P. Sumski

LPS:kc

Telephone: (603) 626-3999
E-Mail address: SumskiCh13@gmail.com

MORTGAGE

PO Box 818061
5801 Postal Road
Cleveland, OH 44181

STATEMENT PRINT DATE: 9/2/20
FOR THE MONTH ENDING: 8/31/20
LOAN NUMBER: 0001034549

**DEFAULT BALANCE: $2,497.63**

4870 1 AB 0.419 T20 P2 AUTO 458789.3-NNNN-30430943

JOSEPHINE AMATUCCI
350 GOVERNOR WENTWORTH HWY
WOLFEBORO, NH 03894

PAYMENT PLAN: **Line of Credit**
LOAN STATUS: **BANKRUPTCY**
PROPERTY ADDRESS: **350 Governor Wentworth Hwy Wolfeboro, NH 03894**
LOAN TYPE: **HECM**

## QUESTIONS? WE'RE HERE TO HELP.

CUSTOMER SERVICE **855-683-3095**
Monday through Thursday from 7 am to 7 pm (CT)
Friday from 7 am to 5 pm (CT)
**www.championmortgage.com**

Mailing Address
P.O. Box 619093
Dallas, TX
75261-9093

## ACCOUNT OVERVIEW

| | Prior Month Interest Rate | Current Month Interest Rate | MIP |
|---|---|---|---|
| Daily | 00.01523% | 00.01523% | 00.00137% |
| Monthly | 00.46333% | 00.46333% | 00.04167% |
| Annual | 05.56000% | 05.56000% | 00.50000% |

## THIS IS NOT A BILL

## MESSAGE CENTER

[illegible] www.championmortgage.com for assistance in reading your monthly mortgage statement, please click on the [illegible] and click on the [illegible] to **"How do I read and understand my monthly statement?"**

Have you entered into a Real Estate Tax Deferral Program? If so, you are required to notify Champion Mortgage of this election.

## BALANCE SUMMARY as of 8/31/20

| | |
|---|---|
| **Current Month Principal Limit** | **$319,750.43** |
| Current Loan Balance | $397,687.35 |
| -Servicing Fee Set Aside | [illegible] |
| -Repairs Set Aside | $0.00 |
| -Tax and Insurance Set Aside | $0.00 |
| -First Year Property Charge Set Aside | $0.00 |
| **Net Principal Limit** | **$0.00** |

| | |
|---|---|
| **Prior Month Available Line of Credit** | **$0.00** |
| Repair Set Aside | $0.00 |
| Tax and Insurance Set Aside | $0.00 |
| First Year Property Charge Set Aside | [illegible] |
| **Available Line of Credit** | **$0.00** |

| | |
|---|---|
| Current Loan Balance | $397,687.35 |
| +Corporate Advances | $0.00 |
| **Total Loan Balance with Advances** | **$397,687.35** |

## INTEREST RATE CHANGE NOTICE

The interest rate on your reverse mortgage is fixed at the rate listed above over the life of your loan.



MORTGAGE
PO Box 818061
5801 Postal Road
Cleveland, OH 44181

273 1 MB 0.439 T2 P1 AUTO 433638.5-NNNN-30414334

JOSEPHINE AMATUCCI
350 GOVERNOR WENTWORTH HWY
WOLFEBORO, NH 03894

# REVERSE MORTGAGE MONTHLY STATEMENT

STATEMENT PRINT DATE
8/3/20

FOR THE MONTH ENDING
7/31/20

LOAN NUMBER
0001034549

**DEFAULT BALANCE: $3,035.83**

PAYMENT PLAN
Line of Credit

LOAN STATUS
BANKRUPTCY

PROPERTY ADDRESS
350 Governor Wentworth Hwy
Wolfeboro, NH 03894

LOAN TYPE
HECM

## QUESTIONS? WE'RE HERE TO HELP.

CUSTOMER SERVICE **855-683-3095**
Monday through Thursday from 7 a.m. to 7 p.m. (CT)
Friday from 7 a.m. to 5 p.m. (CT)
**www.championmortgage.com**

Mailing Address
P.O. Box 619093
Dallas, TX
75261-9093

## ACCOUNT OVERVIEW

| | Prior Month Interest Rate | Current Month Interest Rate | MIP |
|---|---|---|---|
| Daily | 00.01523% | 00.01523% | 00.00137% |
| Monthly | 00.46333% | 00.46333% | 00.04167% |
| Annual | 05.56000% | 05.56000% | 00.50000% |

## THIS IS NOT A BILL

## MESSAGE CENTER

Visit www.championmortgage.com for assistance in reading your monthly mortgage statement, please click on the tab under FAQ's, and click on the "+" sign next to **"How do I read and understand my monthly statement?"**

Have you entered into a Real Estate Tax Deferral Program? If so, you are required to notify Champion Mortgage of this election

## BALANCE SUMMARY as of 7/31/20

| | |
|---|---|
| **Current Month Principal Limit** | **$319,750.43** |
| -Current Loan Balance | $396,196.49 |
| -Servicing Fee Set Aside | $3,979.44 |
| -Repairs Set Aside | $0.00 |
| Tax and Insurance Set Aside | $0.00 |
| First Year Property Charge Set Aside | $0.00 |
| **Net Principal Limit** | **$0.00** |
| Current Loan Balance | $396,196.49 |
| +Corporate Advances | $0.00 |
| **Total Loan Balance with Advances** | **$396,196.49** |

| | |
|---|---|
| **Prior Month Available Line of Credit** | **$0.00** |
| Repair Set Aside | $0.00 |
| Tax and Insurance Set Aside | $0.00 |
| First Year Property Charge Set Aside | $0.00 |
| **Available Line of Credit** | **$0.00** |

## Your New Benefit Amount

**BENEFICIARY'S NAME: JOSEPHINE S AMATUCCI**

Your Social Security benefits will increase by 2.8% in 2019 because of a rise in the cost of living. You can use this letter as proof of your benefit amount if you need to apply for food, rent, or energy assistance. You can also use it to apply for bank loans or for other business. Keep this letter with your important financial records.

**How Much Will I Get And When?**

- Your monthly amount (before deductions) is **$1,646.50**
- The amount we deduct for Medicare Medical Insurance is **$135.50**
  (If you did not have Medicare as of November 16, 2018, or if someone else pays your premium, we show $0.00.)
- ~~The amount we deduct for your Medicare Prescription Drug Plan is~~ **$0.00**
  (We will notify you if the amount changes in 2019. If you did not elect withholding as of November 1, 2018, we show $0.00.)
- The amount we deduct for voluntary Federal tax withholding is **$0.00**
  (If you did not elect voluntary tax withholding as of November 16, 2018, we show $0.00.)
- After we take any other deductions, you will receive **$1,511.00** on or about January 8, 2019.

If you disagree with any of these amounts, you must write to us within 60 days from the date you receive this letter. Or visit *www.ssa.gov/non-medical/appeal* to appeal online. We would be happy to review the amounts.

If you receive a paper check and want to switch to an electronic payment, please visit the Department of the Treasury's Go Direct website at *www.godirect.org* online.

**What If I Have Questions?**

- Visit our website at *www.socialsecurity.gov*
- Call us toll-free at 1-800-772-1213 (TTY 1-800-325-0778)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: ~~Carroll Superior Court~~ U.S. Dist. CT

Case Name: Josephine Amatucci v. Attorney Daniel Mullen

Case Number: ______
(if known)

## STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS

1. Name: Josephine Amatucci DOB: 9/27/38
2. Residence Address: 350 Governor Wentworth Highway Wolfeboro 03894
3. Mailing Address (if different): P.O. 272 Wolfeboro Falls N.H. 03896
4. Marital Status: ☐ Single ☐ Married ☐ Separated ☐ Widowed
5. List the names, ages, relationships of dependents you support:
   N/A
6. If you are presently employed, state where and for how long:
   N/A ☐ Full-Time ☐ Part-Time
7. If unemployed, state last date of employment: Years & Years Ago
8. When do you anticipate new employment? Never I Am 82 Years Old
9. If your spouse is presently employed, state where and for how long?
   N/A Widow ☐ Full-Time ☐ Part-Time
10. If spouse unemployed, state last date of employment: N/A
11. List other employed household members and their weekly income: None
12. Please state **weekly** take-home amount

| | Yours | Spouse's |
|---|---|---|
| Salary/Wages | $ | $ |
| Child Support | $ N/A | $ |
| Alimony | $ N/A | $ |
| Trust Benefits | $ N/A | $ |
| Investment Income | $ N/A | $ |
| Other | $ N/A | $ |
| *Social Security | $ 1,511.50 | $ |
| *Welfare Benefits | $ N/A | $ |
| *Veteran's Benefits | $ N/A | $ |
| *Pension | $ N/A | $ |
| **Unemployment Compensation | $ N/A | $ |
| **Worker's Compensation | $ N/A | $ |
| Total | 1,511.50 | $ |

13. What money is presently available to you?

| | |
|---|---|
| Cash on hand | $ 40.00 |
| Checking account | $ |
| Savings account | $ |
| Stocks/Bonds/IRA/Pension | $ |
| Total | $ |

Case Name: ______

Case Number: ______

**STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS**

14. Please state your **monthly** household expenses:

| | | | |
|---|---|---|---|
| Rent/Mortgage | $ | Cell Phone | $ |
| Property Taxes | $ | Clothing | $ |
| Heat | $ See Attached | Transportation (including gas, maintenance, insurance, repairs) | $ |
| Food | $ | Other (specify) | |
| Utilities | $ | | $ |
| Medical/Dental | $ | | $ |
| Insurance | $ | | |
| **Total** | $ | | |

15. List any real estate you own, its market value and the amount you owe:
350 Governor Wentworth Highway, Wolfeboro
Market value unknown - Reverse Mort- owe 394 687.35

16. List any vehicles you own (car, truck, boat, motorcycle, snowmobile, RV), their market value and the amount you owe:
2012 Nissan Versa - Unknown Value - owe about $2500.00

17. List income tax paid last year: $ Years & years ago

18. List income tax refund received last year: $ None

19. Other than monthly household expenses, list any bills you owe, amount owed, to whom, and monthly payment:
See Attached

20. List which of your bills are court-ordered payments (i.e. alimony, judgment in a law suit, etc.):
See Attached Bankruptcy & Santander

21. Other than those previously mentioned, list anyone to whom you owe money, amount and when it is due:
N/A

22. If anyone owes you money, state name, address, amount due, and when due:
Judges owe me money N/A

23. List any property you have transferred within the last three years, to whom and for what price:
N/A

24. List any other assets or expenses not previously mentioned:
N/A

* Exempt income – The Court may not consider this income. If this represents the sole source of income, the court may not issue a payment order.
** Potentially/partially exempt income – The Court may be unable to consider this income. Based upon the facts of the case, the Court may or may not issue a payment order.

**Case Name:** ______________________

**Case Number:** ______________________

**STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS**

***For non e-filed cases:***

I state that on this date I am ☑ mailing by U.S. mail, or ☐ Email (only when there is a prior agreement of the parties to use this method), or ☐ hand delivering a copy of this document to:

DANIEL MULLEN
Other party

Other party's attorney

**OR**

***For e-filed cases:***

☐ I state that on this date I am sending a copy of this document as required by the rules of the court. I am electronically sending this document through the court's electronic filing system to all ~~attorneys and to all~~ other parties who have entered electronic service contacts (email addresses) in this case. I am mailing or hand-delivering copies to all other interested parties.

JOSEPHINE AMATUCCI
Name of Filer

Josephine Amatucci
Signature of Filer

Date

N/A
Law Firm, if applicable

Bar ID # of attorney

603-569-2429
Telephone

JOSEPHINE – P.O. BOX 272
Address

E-mail

WOLFEBORO FALLS, N.H. 03896
City State Zip code

Case Name: JOSEPHINE AMATUCCI v. DANIEL [illegible]

Case Number: N/A

**STATEMENT OF ASSETS AND LIABILITIES FOR INDIVIDUALS AND SOLE PROPRIETORS**

## Notice of Protected (Exempt) Sources of Income

**PERIODIC PAYMENTS CANNOT BE ORDERED FROM THE FOLLOWING SOURCES OF INCOME (subject to some exceptions):**

- Social Security Old-Age, Survivors & Disability Insurance Benefits (42, U.S.C. § 407)
- Supplementary Security Income (SSI) for the Aged, Blind and Disabled (42 U.S.C. §407 and §1383(d)(1))
- Unemployment Compensation Benefits (RSA 282-A:159) (Exemption from payment orders except debts incurred for basic needs expenses for you or your family during the period of unemployment.
- Public Assistance Payments to the Blind, Aged or Disabled Persons and Dependent Children (ANB, OAA, APTD and TANF/FANF) (RSA 167:25)
- Veterans Benefits including: Retirement Benefits (10 U.S.C. §1440), Survivors' Benefits (10 U.S.C. §1450), Other Veterans Benefits (38 U.S.C. § 5301(a)), Medal of Honor Veterans Benefits (38 U.S.C. § 1562)
- Workers Compensation Benefits (RSA 281-A:52) (Exemption from payment orders except debts for medical and related care for the compensated injury and claims for legal fees approved by the Superior Court for prosecuting the workers compensation claim.
- Retirement funds including Individual Retirement Accounts, Stock Bonus, Pension, Profit-Sharing, Annuity or Similar Qualified Plan (RSA 511:2(XIX)). Exempt from periodic payments up to $362.50 per week. If income and expenses are shared with another person with whom you live and the other person also receives income from such a retirement plan or arrangement, the exemption is up to $725.00 per week.
- Civil Service Retirement Benefits (5 U.S.C. § 83466(a)
- Armed Forces Retirement Pay (10 U.S.C. § 1440)
- Railroad Retirement Act Annuities and Pensions (45 U.S.C. § 231m)
- Fireman's Retirement Pay (RSA 102:23)
- Fireman's Relief Payments (RSA 402:69)
- Foreign Services Retirement and Disability Payments (22 U.S.C. § 4060(c))
- Injury or Death Compensation Payments from War Risk Hazards (42 U.S.C. § 1717) (With exception of monies paid as reimbursement for funeral expenses or as reimbursement with respect to payments of worker's compensation or in the nature of worker's compensation benefits.)
- Lighthouse Keepers Widow's Benefits (33 U.S.C. §775)
- Wages of Fisherman, Seaman and Apprentices (46 U.S.C. § 11109) (With exception for an order of a court about the payment by a master or seaman of any part of the master's or seaman's wages for the support and maintenance of the spouse or minor children of the master or seaman, or both).
- Longshoremen's and Harbor Worker's Compensation Act Death and Disability Payments (33 U.S.C. § 916)

**PLEASE NOTE: IF YOU HAVE INCOME FROM ANY OF THE SOURCES LISTED ABOVE, PLEASE BRING VERIFICATION (FOR EXAMPLE, YOUR AWARD LETTER) TO COURT WITH YOU.**

NONE

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: CARROLL SUPERIOR COURT
Case Name: JOSEPHINE AMATUCCI V. ATTORNEY DANIEL MULLEN
Case Number: N/A
(if known)

## MOTION FOR EXCEPTION FROM ELECTRONIC FILING DUE TO EXTRAORDINARY CIRCUMSTANCES

1. Your name: JOSEPHINE AMATUCCI
   Residence address: 350 GOVERNOR WENTWORTH HIGHWAY WOLFEBORO 03894
   Mailing address (if different): P.O. BOX 272, WOLFEBORO FALLS NH 03896
   Telephone number: (603) 569-2429
2. Other party(s) names:
3. Do you have access to a computer?
   ☒ Yes
   ☐ No
4. Do you have transportation to your local courthouse or to a place where there is a public computer available (i.e. your local library)?
   ☒ Yes
   ☐ No
5. Provide any additional information you want the court to consider in this Motion for Exception from Electronic Filing Due to Extraordinary Circumstances:

I AM DESTITUTE. EVERY MONTH I HAVE TO BORROW MONEY FROM MY LOCAL CHURCH AS I DO NOT MAKE IT FINANCIALLY TO THE END OF MONTH AFTER PAYING ALL MY BILLS. I PAY THEM WHEN I GET MY SOCIAL SECURITY PAYMENT ON THE 3RD OF EACH MONTH AND IT CONTINUES EACH AND EVERY MONTH.

**Case Name:** Josephine Amatucci vs Daniel Mullen and Judge LaPlante

**Case Number:** ______

**MOTION FOR EXCEPTION FROM ELECTRONIC FILING – EXTRAODRINARY CIRCUMSTANCES**

I state that on this date I provided a copy of this document by U.S. mail or hand-delivery to:

Daniel Mullen or ______

(other party) (other party's attorney)

Filing Party's Verification: I verify the truth and accuracy of all facts alleged within this document to the best of my belief and further verify that all facts contained in this document are alleged in good faith. By affixing my electronic signature to this document I acknowledge my understanding that any false statements made in this document are punishable as perjury which may include a fine or imprisonment or both.

Oct 14 2020
Date

Josephine Amatucci
Signature

Josephine Amatucci
Name of Filer

Josephine Amatucci
Signature of Filer Date

______
Law Firm, if applicable Bar ID # of attorney

(603) 569-2429
Telephone

______
Address

______
E-mail

______
City State Zip code

**FOR COURT USE ONLY:**

☐ The Motion for Exception from Electronic Filing is hereby **GRANTED**. Paper filings will be accepted from you. You must forward all filings to the other party via U.S. mail or hand-delivery. See attached instructions.

☐ The Motion for Exception from Electronic Filing is hereby **DENIED**. You must register/login and provide your valid e-Mail address **within 10 days** or your case/filing is subject to dismissal or default. See attached instructions.

______
Date

______
Presiding Justice

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: CARROll SUPERIOR COURT

Case Name: JOSEPHINE AMATUCCI V. ATTORNEY DANIEL MULLEN

Case Number: (if known)

## MOTION FOR WAIVER OF FILING FEE

I, [signature] JOSEPHINE AMATUCCI, hereby request that the Court waive the filing fee in this case as I do not have the financial ability to pay these fees at this time.

I have completed a Statement of Assets and Liabilities which is being filed with this motion.

In support of this motion, it is stated as follows:

I CANNOT MAKE IT FINANCIALLY TO THE END OF THE MONTH, THEREFORE I HAVE TO GO TO MY LOCAL CHURCH WHO ALLOWS ME TO BORROW MONEY FROM THEM, WHICH I PAY WHEN I GET MY SOCIAL SECURITY PAYMENT ON THE 3RD OF THE MONTH. THIS CONTINUES EVERY MONTH.

Wherefore, it is respectfully requested that this Court waive the filing fee in this case.

JOSEPHINE AMATUCCI
Name of Filer

[signature]
Signature of Filer | Date

N/A
Law Firm, if applicable | Bar ID # of attorney

(603) 569-2429
Telephone

P.O. BOX 272
Address

RT109 @ METROCAST.NET
E-mail

WOLFEBORO FALLS N.H. 03896
City | State | Zip code

Case Name: ______________________________

Case Number: ______________________________

MOTION FOR WAIVER OF FILING FEES

**FOR COURT USE ONLY**

☐ Motion Granted. ☐ Motion Denied

☐ Motion granted, in part. Filing fee reduced, party to pay $ ____________

______________ ______________________________

Date



EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

COPY

| | |
|---|---|
| JOSEPHINE AMATUCCI<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF WOLFEBORO, SHANE EMERSON and STUART CHASE<br><br>Defendants. | 1:17-cv-237-JL<br>September 24, 2018<br>10:28 a.m. |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

Appearing Pro Se: Josephine Amatucci

For the Defendants: Daniel J. Mullen, Esq.
Ransmeier & Spellman

Mark H. Puffer, Esq.
Preti Flaherty Beliveau Pachios LLP

Court Reporter: Liza W. Dubois, RMR, CRR
Official Court Reporter
U.S. District Court
55 Pleasant Street
Concord, New Hampshire 03301
(603) 225-1442

PAGE 2

P R O C E E D I N G S

THE CLERK: The Court has before it for consideration this morning a motion hearing in civil case 17-cv-237-JL, Amatucci versus Chase, et al.

THE COURT: All right. We're here for a hearing on the motions for summary judgment. Mrs. Amatucci has two motions for summary judgment, documents 109 and 123. NEW SUMMARY JUDG. DID NOT INCLUDE ANY STATE LAW ONLY UNDER FED. LAW

Defendants objected to that and defendants have their own motion for summary judgment, document number 138.

This morning Mrs. Amatucci filed a motion for leave to file I guess a new one -- a motion for leave to file a summary judgment document that's never been ruled on --

MS. AMATUCCI: That's not -- that's not a new one.

THE COURT: Yeah, it's the old one. Right.

MS. AMATUCCI: It's -- it's -- it's -- it's adding what you required. You said that I have to put those issues in my heading, so I put them in.

Now, let's make it clear --

THE COURT: That's granted.

MS. AMATUCCI: -- I did not -- what?

THE COURT: I'm going to grant this. This is

granted.

THE CLERK: Thank you, Judge.

THE COURT: So you have leave to file this. You're good to go.

It says Motion for Leave to File --

MS. AMATUCCI: Wait. Let's get it clear. I did not file two summary judgments. I filed one because the original one, I dismissed it --

THE COURT: That's true.

MS. AMATUCCI: -- in court.

THE COURT: Yeah.

MS. AMATUCCI: So, actually, you should have never let these lawyers respond to two summary judgments when there was only one.

THE COURT: Okay.

MS. AMATUCCI: Could I get a few things clear before we start?

THE COURT: Sure. But I've got to make one more thing clear first.

The Court ordered the defendants to provide some discovery after reviewing the file after the last hearing.

Did you provide the discovery?

MR. MULLEN: I gave Ms. Amatucci a packet from the town of Wolfeboro today and I also met Assistant

Attorney General Galdieri who gave me redacted copies of the pages that you ordered -- gave in your order.

It was our understanding that you were going to provide Mrs. Amatucci with the rest of the AG documents because I don't have them.

THE COURT: Okay.

MS. AMATUCCI: Are you saying that these are the documents -- these are the police files?

THE COURT: Yes.

MS. AMATUCCI: These are -- these are what were in the town, what the town gave you, handed you --

THE COURT: This is --

MS. AMATUCCI: -- when you requested the files for the investigations?

THE COURT: Yes. What happened was the -- like my orders say, the defendants provided me the records from the town and the police department and the Attorney General provided me their file. I looked at everything very carefully and I ordered that it be produced to you. And --

MS. AMATUCCI: When did you do that?

THE COURT: I think it was Friday.

THE CLERK: Friday afternoon, Judge.

THE COURT: Friday afternoon.

MS. AMATUCCI: But you didn't tell me. What

did you do? You called them?

THE COURT: No, I think I just issued an order.

THE CLERK: We mailed out the order, Judge, on Friday afternoon, so Ms. Amatucci probably hasn't received it yet.

THE COURT: Oh. Oh, she doesn't have ECF?

THE CLERK: She does not, Judge.

THE COURT: Ah, well, I ordered them -- those are the records you requested in discovery. And I ordered -- I read them and ordered that they be produced to you on Friday. And they've been produced to you, apparently.

MS. AMATUCCI: So this is everything?

THE COURT: It's everything except it sounds like the lawyers just told me that the Attorney General's records that you have --

MS. AMATUCCI: I don't care about the Attorney General, her records.

THE COURT: I don't care if you don't care. Let me finish my sentence.

MS. AMATUCCI: Yeah.

THE COURT: Stop interrupting me. We're not going to go down this road today of you interrupting me. I'm telling you to stop. Because you're entitled to

5 (c)

6

this information, so I want to make sure you get it.

They've provided me redacted copies from the Attorney General. I'm providing you with unredacted copies that we have apparently and I will -- I'll get you those copies with no redactions. Okay?

MS. AMATUCCI: I'm surprised.

THE COURT: Okay.

MS. AMATUCCI: Okay.

THE COURT: Now, there's --

MS. AMATUCCI: Now, an important issue --

THE COURT: I'm not done.

My order -- I want to amend my order of the 21st where I granted your motion to seal the defendant's motion to seal the -- I want to unseal the memorandum, document number 162, and the privilege log document, 162-1, and I want to provide those documents to Mrs. Amatucci. Let's give them to her today --

THE CLERK: Okay, judge.

THE COURT: -- after the hearing.

Okay. Now, go ahead.

MS. AMATUCCI: Okay. I want to make it clear that the reason why you said you wasn't going to do anything but have a hearing was because of the two issues that I had to -- I had to do, which I handed you this morning, that I had to add -- that I had asked you

to accept my summary judgment and I had to put that you never -- you never decided a summary judgment. That's what you said was keeping you from -- from allowing my summary judgment today, which you're going to do. You are going to allow my summary judgment.

And we will talk about that and I -- I -- they have issues that are holding back -- that might be holding back claims that might be holding back my summary judgment and I have reviewed them and their summary judgment motion --

THE COURT: Yeah.

MS. AMATUCCI: -- and I'd like to talk about -- talk about what they're saying, why -- what their defenses are. And we have to review that first to show that they -- they have no defenses to my --

THE COURT: Right.

MS. AMATUCCI: -- my claim.

THE COURT: That's what today's hearing is about, yes. Do you want to go first?

MS. AMATUCCI: Yeah, all right.

THE COURT: Okay.

MS. AMATUCCI: Okay. This is a review of their summary judgment.

They said that the crux of her claims is failure to investigate police misconduct. That's not

7 (c)

true.

The -- the reason -- the Monell claim is based not on the -- not on the town refusing to investigate police misconduct, but it's based on the fact that policymakers of the town were the cause for my -- the violation of my Fourth Amendment malicious prosecution. That is the basis of my claim. It's not -- on my Monell claim.

So when they say the whole claim is about failure to investigate police misconduct --

THE COURT: Uh-huh.

MS. AMATUCCI: -- they're wrong. And I -- I stated that in several of my motions, that -- in fact, in my summary judgment, that's the first thing I talked about.

THE COURT: Tell me a little bit more about that one.

So you're saying that it's not about that there's a town policy to refuse to investigate these types of claims.

MS. AMATUCCI: Yeah.

THE COURT: What exactly is it?

MS. AMATUCCI: It's about -- let me -- it's about that the policymakers of the town, who are Chase and the prosecutor --

THE COURT: Yeah.

MS. AMATUCCI: -- Tim Morgan --

THE COURT: Yup.

MS. AMATUCCI: -- they are the direct and proximate causal link of my injuries, of my prosecution, my unlawful prosecution, my unlawful detention, and deliberate indifference in their practices and policies. And in doing so, they violated my Fourth Amendment constitutional right to be free from unlawful seizures.

THE COURT: I see.

MS. AMATUCCI: And that is the -- that is the crux of my --

THE COURT: It's that -- okay. It's that Chase and Morgan, as policymakers, were responsible for this violation of your Fourth Amendment rights?

MS. AMATUCCI: Direct -- directly responsible.

THE COURT: All right. All right.

MS. AMATUCCI: Okay?

THE COURT: Yeah.

MS. AMATUCCI: Another thing I'd like -- before I continue with their defenses -- you know what I have to make clear?

THE COURT: What?

MS. AMATUCCI: No, I'll make it clear when we come to it.

All right. That was their first dispute.

Their second dispute -- you know what? Why don't you clear this up right now. What is your -- how do you interpret this? You know, what are you going to -- I did this -- I said this in my summary judgment on the first page, that this was my -- my -- the crux of my claims. It was not -- although, you know, they did not investigate, I have proof, but my claim is based on policymakers' actions.

THE COURT: Your Monell claim?

MS. AMATUCCI: What?

THE COURT: Your Monell claim?

MS. AMATUCCI: Yeah.

THE COURT: Okay.

MS. AMATUCCI: And, really, the -- even the Fourth Amendment claim. It's the same thing. I mean, they caused that violation. They were the proximate cause, the proximate cause.

THE COURT: Yeah. I understand your point. It's just that I want to make sure you understand.

I think the reason that they are framing the claim that way is that for there to be -- it's one thing for there to be liability against the people involved -- right? -- the defendants that you've sued. They can be liable under some circumstances that you have to prove

in court.

MS. AMATUCCI: I'm not going to prove anything in court.

THE COURT: All right. That you -- that you -- that you would -- when you have a case, you have -- that one who has a case like this has the burden of proof to prove in court. When you sue somebody, you have a burden of proof. And you say you've already satisfied it, I know, but I'm trying to make the difference between that type of thing for you and a Monell claim.

A Monell claim is a special type of claim where you want to hold the town liable and the law is that it's just -- it's not enough that it happened or that these defendants committed the conduct.

For a Monell claim, it has to be a policy or practice of the town to do that type of -- to undertake that type of conduct.

Do you follow me?

MS. AMATUCCI: Policymakers.

Lie, Lie, Lie

THE COURT: Yeah. Well, no, not policymakers. X X

It must be the policy of the town or the practice of the town. It's not just that it happened and the people who did it were policymakers. It must be that it was the town's policy or practice to violate rights in the way

11 (c)

that you've alleged in this case.

MS. AMATUCCI: No, it -- no, you're wrong. It was the -- it has to be the causal -- it has to be caused by policymakers, not the town. It has -- Monell is --

THE COURT: Okay.

MS. AMATUCCI: -- a case against policymakers, not against the town.

THE COURT: Okay.

MS. AMATUCCI: And they have to be the causal effect of my injury. Their actions --

THE COURT: The proximate cause.

MS. AMATUCCI: -- have caused my injury, not the town. The policymakers. That's Monell.

THE COURT: Okay.

MS. AMATUCCI: So I won that. I won that. Now --

THE COURT: Is that your ruling today, that you won?

MS. AMATUCCI: Yeah.

THE COURT: Okay.

MS. AMATUCCI: I won.

THE COURT: Okay.

MS. AMATUCCI: Because --

THE COURT: You don't have to tell me.

12 (c)

MS. AMATUCCI: You're wrong, because the Monell claim is direct cause -- a direct cause by policymakers. That's a Monell claim.

Now, do you agree?

THE COURT: No.

MS. AMATUCCI: You don't? All right. I have a Monell claim right here. We'll look it up.

So you think it's the town and not the direct policymakers?

THE COURT: Well, the direct policymakers can be part of your proof, that can be part of your case, but what you have to prove for a Monell claim to prevail --

MS. AMATUCCI: It has to be directly injuries from policymakers.

THE COURT: No.

MS. AMATUCCI: Yeah. Could you please look up Monell?

THE COURT: It actually doesn't -- actually, that makes your burden of proof harder than it really is. You don't have to make -- you don't have to --

MS. AMATUCCI: No, I -- this is the truth. I'm telling the truth.

THE COURT: All right.

MS. AMATUCCI: Chase -- Chase and the

prosecutor are the -- what am I going to do with a judge that doesn't even know the law?

THE COURT: I don't know.

MS. AMATUCCI: Can you look up -- I want you to look it up and we'll talk about it.

THE COURT: No.

MS. AMATUCCI: No, you have to. Everything has to be cleared today.

THE COURT: Right.

MS. AMATUCCI: Today. Three -- three, four days before my trial; you think that's fair --

THE COURT: Mrs. --

MS. AMATUCCI: -- that this is all going on.

THE COURT: Mrs. Amatucci, you're going to have a ruling before your trial. All right? You have my word. But you need to listen to me. I --

MS. AMATUCCI: I want you to look up Monell.

THE COURT: I've --

MS. AMATUCCI: I'm not listening to you because you're wrong and I'm right.

THE COURT: All right.

MS. AMATUCCI: So the only way to resolve this is to look up a Monell claim.

THE COURT: Move on to your next argument.

MS. AMATUCCI: No, I --

THE COURT: I've looked up --

MS. AMATUCCI: I have to clear every issue.

THE COURT: I've looked up Monell hundreds of times --

MS. AMATUCCI: Look it up now.

THE COURT: -- in my career.

MS. AMATUCCI: Look it up now.

THE COURT: Mrs. --

MS. AMATUCCI: We have to clear this claim --

THE COURT: Mrs. Amatucci --

MS. AMATUCCI: -- right away.

THE COURT: Mrs. Amatucci, don't interrupt me again. Make your next point or I'm going to move on to the defense so they can make their arguments. I'm not looking up any law for you sitting here at the bench right now. That's not what I'm doing. I'm listening to your oral argument. You can continue with your oral argument or I'm going to ask the defendants to make theirs.

MS. AMATUCCI: No, you know what? This -- this hearing is to --

THE COURT: It's to decide your --

MS. AMATUCCI: Wait a minute.

This hearing is all based on the law and you are not stating the law.

THE COURT: I am stating the law. And I'm telling you -- first of all, I'm telling you to sit down. Have a seat.

Stop shouting at the Court all the time.

MS. AMATUCCI: This is -- this is my voice. I don't have --

THE COURT: You've told me that so many times.

MS. AMATUCCI: I don't have a low voice.

THE COURT: And many, many times, Mrs. Amatucci, you've addressed the Court in a very reasonable tone. You've done it many times. But you get upset and you start yelling and pointing. There's no reason for it. I can hear you fine.

MS. AMATUCCI: Oh, there's no reason to get upset. I'm glad to hear that.

THE COURT: Now, look. I understand the law.

MS. AMATUCCI: I --

THE COURT: I don't need to hear you --

MS. AMATUCCI: I'm going to see if I have the Monell claim here.

THE COURT: All right.

MS. AMATUCCI: No, we're not going to go to the second point until we clear the Monell claim.

THE COURT: I'm not giving you a ruling on that from the bench. This is oral argument. It

16 (c)

doesn't -- I don't always rule everything from the bench. You make your arguments. You're not entitled to a ruling on every argument you make.

Now, make your next argument, or make more of a Monell argument, or I'm going to move on to the defendants.

MS. AMATUCCI: Excuse me.

THE COURT: That's your choice.

MS. AMATUCCI: Excuse me. This is not a ruling. This is clearing the law. The law. This -- this case is all about the law, not about your interpretation of the law. I don't care how you interpret it. We have to -- we have to direct the law. That's how we have to run this case.

THE COURT: But your statement of the law, Mrs. Amatucci, is incorrect. Lie Lie

MS. AMATUCCI: And I say it's correct.

THE COURT: Well --

MS. AMATUCCI: So we have to look it up. We have --

THE COURT: Unfortunately, Mrs. Amatucci, in a litigation, you get to make an argument and the Court gets to make a ruling. And I'm telling you that --

MS. AMATUCCI: And the law has to be clearly determined.

17(c)

THE COURT: Yes, absolutely.

MS. AMATUCCI: So I say you are not determining the law.

THE COURT: I'm determining --

MS. AMATUCCI: So we have to clear the law.

THE COURT: Let me tell you what I'm determining; that the way you just described Monell, the Monell doctrine as applied to a town, is incorrect. It's not correct. That's the ruling.

Lie - Applied To A Policy of Policymakers

MS. AMATUCCI: All right. What are you -- what -- how -- what is correct, according to your interpretation?

THE COURT: I've already repeated it three times. It is not --

MS. AMATUCCI: You said --

THE COURT: It is not -- it is not that policymakers are the proximate cause of your injury, the proximate cause of the violation. It is that the -- it is that the conduct undertaken by everyone involved in the case -- or anyone involved in the case -- is based on a policy or practice of the town. All right? That's what you have to prove --

MS. AMATUCCI: Okay.

THE COURT: -- not just that -- not just that a policymaker is the one that committed it. That's a

Lie. Pattern

different type of claim. It's a different burden of proof.

I'm not going to belabor it. I'm just going to ask you --

MS. AMATUCCI: Okay. I -- I have it clear now what you're trying to say.

Are we talking about my Fourth Amendment malicious prosecution?

THE COURT: Yes.

MS. AMATUCCI: And you're saying the town has to be the one which -- what do you mean by the town --

THE COURT: Yeah.

MS. AMATUCCI: -- and --

THE COURT: What the law --

MS. AMATUCCI: -- isn't Chase the town and the prosecutor the town?

THE COURT: Chase and the prosecutor, yes, are agents of the town, and the town can be liable for their conduct under certain circumstances that the law provides for. One of them is your Monell claim. But to prove it -- you don't just have to prove that they were policymakers and that they undertook this conduct. You have to prove that the conduct was pursuant to a policy or practice of the town. I DID PROVE IT

MS. AMATUCCI: That's right. So what they

did, what Chase and -- what Chase and the prosecutor did proved -- as policymakers of the town shows that that was a pattern by the town because they are the town. Who's more the town than the chief and the prosecutor?

THE COURT: I understand.

MS. AMATUCCI: Okay?

THE COURT: Yeah.

MS. AMATUCCI: So now --

THE COURT: But here's the difference. Here's the difference. Here's maybe what you're not appreciating. I -- I mean this when I say this. I'm not going to stand here with you today and argue about the law all day, but here's the difference.

The fact that they are the town, as you say, the -- the chief and the prosecutor, the fact that they are the town isn't always enough because suppose this was like an isolated incident -- I'm not suggesting it is, I have no idea -- but suppose it was an isolated incident and what they did went against the town's policy; the town had a policy and they adhered to it in their practice every day to do something different to a -- to operate differently than the way they did with you, your evidence would not be enough to establish a Monell claim of liability against the town because you have to show not just that they did it, not just that

they ARE The TOWN The IT WAS A POLICY OF THE TOWN AS POLICY MAKER

20 (c)

they caused it, but they did it pursuant to a policy or practice of the town; it's the town's custom or policy to do to citizens what it did to you. That's your burden. No BURDEN AS EVEN A SINGLE INCIDENT BY POLICY MAKERS IS A POLICY

MS. AMATUCCI: Okay. Wait. Even if they did it once --

THE COURT: Yeah.

MS. AMATUCCI: -- that is a policy and pattern --

THE COURT: No. LIE, LIE, LIE

MS. AMATUCCI: -- if it is the policymakers. Yes.

THE COURT: I see your argument --

MS. AMATUCCI: Yes.

THE COURT: I see --

MS. AMATUCCI: I have the evidence. It isn't -- it is accepted that even if it has been done --

THE COURT: But look at --

MS. AMATUCCI: -- once --

THE COURT: It doesn't make it -- you already have a case against Chase. You have a case against Chase.

MS. AMATUCCI: No, I want this issue cleared. I want --

THE COURT: Listen, I'm telling you --

MS. AMATUCCI: I want the -- I want -- I want to --

THE COURT: Okay.

MS. AMATUCCI: -- prove my point.

THE COURT: Let me try it this way. Let me try it this way.

What is your evidence --

MS. AMATUCCI: For what?

THE COURT: Well, let me finish the question.

MS. AMATUCCI: Well, which -- which evidence are you looking for?

THE COURT: Let me finish the question.

What is your evidence that what Chase and the prosecutor -- what's the prosecutor's name again?

MS. AMATUCCI: Tim Morgan.

THE COURT: Thank you.

What is your evidence that Chase and Morgan's conduct in this case was --

MS. AMATUCCI: Did you say -- Chase and Morgan's what?

THE COURT: Conduct.

MS. AMATUCCI: Oh.

THE COURT: In this case was consistent with or pursuant to the policies and practices of the town of Wolfeboro. Never said that. It was one incident by the policymakers that made it a policy.

MS. AMATUCCI: Because they're policymakers.

THE COURT: Okay. Is there anything else?

MS. AMATUCCI: Do you want better than that?

THE COURT: Well, this -- actually, it's --

MS. AMATUCCI: They're the head of the town.

THE COURT: I understand your answer, but this shows how, unfortunately, you don't -- you don't really understand the law of Monell.

MS. AMATUCCI: Okay. So tell me what the answer would be, the correct answer.

THE COURT: Well, the normal -- the correct answer would be if you had evidence of habitual practice like this on the part of the town, discussions among town officials that supported this type of conduct, evidence that they knew about it, what happened to you, over time and were indifferent to it, they had been -- people like you had repeatedly brought this up and they ignored it or they approved it. That would be evidence of the custom, policy, practice of the town.

It's not just that it happened once and that important town officials like Chase and Morgan did it. You'd have -- for a Monell claim. I don't mean your other claims. I mean your Monell claim against the town. You have to show not just that they did it and that they're important officials. You have to show that

AGAINST POLICYMAKERS

it's a policy, the practice, the custom of the town. Lie, Lie, Lie

MS. AMATUCCI: Okay. I have to get to -- I might have it here to show that even one incident, if it's by a policymaker, that declares a pattern -- a practice. Forget the pattern. It could be a pattern or a practice.

So if that practice was done by policymakers, it's a practice.

THE COURT: I guess if -- I guess in a situation where -- I guess if the, I don't know, I'm trying to --

MS. AMATUCCI: Forget pattern. Forget pattern. If they did it, it's a practice.

THE COURT: No, that's -- that's exactly the opposite of the law. That's -- that's 100 percent incorrect.

MS. AMATUCCI: What, that practice is not in there, in the law?

THE COURT: No, that even if they did it just one time it's a practice, which is what you just said. That's not the law. PRACTICE AND POLICY IS THE SAME

MS. AMATUCCI: If it -- if it's done one time, that's enough for my claim.

THE COURT: No.

MS. AMATUCCI: All right. I have -- I have --

24 (c)

I have it here.

THE COURT: All right. Well --

MS. AMATUCCI: We'll clear that. Before the day is over, we will clear that even done once, you have the claim. They don't have to do it a second time.

THE COURT: All right. Is there anything else you want to say?

MS. AMATUCCI: Well, I have to -- I have to -- I have to defend all their claims that they said. The point is -- the point is it's not what they said. It's not about the town not investigating -- which I have proof beyond a reasonable doubt, and I've got it here, tons of papers showing the town refused to investigate police misconduct.

And Chief Chase himself, when I went -- and this is how this all happened, because he refused to investigate Rondeau. And I showed him the evidence that Rondeau was accusing me of -- of a bogus traffic violation when I wasn't even in Wolfeboro that day. And what does he do? He throws the paper in my face and he pushes me out the door.

So -- so I proved that just that alone shows how they don't investigate police misconduct. This -- this is all about how they don't investigate police misconduct. This is what happened. This is how it

started when the chief threw me out the door, which he did to Cynthia Kennedy, too, when he was terminated from Danvers police -- as a Danvers police chief. A repute -- a repeat performance. He did a repeat performance, which is what he is, which shows a pattern and practice.

So now we resolved the fact that it's true that the town does not investigate because you can just look at what he did to Cynthia Kennedy to show your pattern and practice.

So that one's resolved. So even though it just depends on what they said, even if the case depends on, well, did the town investigate, I just proved they don't.

So whether you determine the Monell -- whether you determine that it has to be the direct cause of policymakers or if the town does not investigate, you can lean on that the town doesn't investigate if you're -- if you're -- if you want -- if you want to.

So, actually, what they're saying is -- they're saying that the town did -- I'm not -- it's not true that the town does not investigate. So I just proved it with Chase. The whole case is because the town doesn't investigate.

So now we proved that -- that, that they're

wrong.

Now they said -- where's page 1?

All right. So we did failure to investigate and they're saying that's not true. And we proved it's true.

Now, let's prove the next one. They're saying qualified immunity. They're saying -- they're basing their qualified immunity on the -- the speeding -- the speeding, whether Emerson had a right to stop me for speeding. But my Fourth Amendment malicious prosecution is not about speeding. It's about the arrest. That's what was unlawful. Maybe Emerson had a right to stop me, if he didn't -- but he didn't. But he did not have a right to arrest me, put me in jail, detain me and prosecute me.

So that's what the -- they have no immunity. It's not about the stop. They're saying that he had a right to stop me because he -- I would -- even the judge said I was going 11 miles over the limit.

THE COURT: Yeah.

MS. AMATUCCI: It's not about that. A Fourth Amendment malicious prosecution is regarding an unlawful seizure.

THE COURT: Yeah.

MS. AMATUCCI: And when they arrested me and

put me in jail and detained me and prosecuted me, that's an unlawful seizure. So there's no defense for that.

THE COURT: Let me ask you two questions -- let me ask you a couple questions about that because you're right, I think, about the law that ...

First of all -- but the Court did find you guilty of disobeying a police officer, right?

MS. AMATUCCI: I'm glad you said that.

THE COURT: Don't interrupt. Let me ask the question. All right?

There were two charges. You were found not guilty. Even though the Court found that there was testimony you went 41, there was no evidence about the weather or the road conditions and the Court said not guilty of speeding. Right?

MS. AMATUCCI: (Nods head.)

THE COURT: But the Court said guilty of disobeying.

MS. AMATUCCI: That has nothing to do with speeding.

THE COURT: Well --

MS. AMATUCCI: That's a different claim.

THE COURT: That's my question, though. See, because here's my question for you.

MS. AMATUCCI: Yeah.

THE COURT: If you were also -- I mean, you were also at the same time arrested, detained and prosecuted for -- all those conditions that happened to you for the speeding also happened to you for the -- the disobeying.

The -- the -- the bond, the bail bond that was -- the state of New Hampshire bond in criminal case says offenses --

MS. AMATUCCI: That's right, too.

THE COURT: -- failure to stop, disobeying --

MS. AMATUCCI: No.

THE COURT: -- an officer.

MS. AMATUCCI: Two separate.

THE COURT: Yeah.

MS. AMATUCCI: Two separate. So --

THE COURT: That's my point --

MS. AMATUCCI: So they --

THE COURT: I know it's two -- hey. I know it's two separate -- I know.

MS. AMATUCCI: We're only talking about the speeding.

THE COURT: Well, that's my question, though.

If you were detained -- if you were arrested, detained and prosecuted anyway, how could you have been damaged by the -- the arrest, detention and prosecution

for speeding?

MS. AMATUCCI: Because there were two claims. So I was -- I was detained for the speeding and I was detained for the -- for the disobeying --

THE COURT: I understand.

MS. AMATUCCI: -- for both. I was detained for the speeding. That's all you have to know.

Now, let's say a little bit about the disobeying. Okay?

THE COURT: One more question.

MS. AMATUCCI: By the way, there's a lawsuit in this court --

THE COURT: One -- one more question, though, about this speeding part.

MS. AMATUCCI: Okay.

THE COURT: Because I -- I completely agree with you, two separate charges.

MS. AMATUCCI: Right.

THE COURT: We agree.

The Court found -- the Court found that the reason -- the reason you were acquitted, found not guilty, was the -- no -- no evidence about the weather or the road conditions.

MS. AMATUCCI: Yeah.

THE COURT: So even if you were going 41 --

even if you were going 41, that's not necessarily speeding.

MS. AMATUCCI: Yeah.

THE COURT: Not guilty.

I don't have evidence in the record that -- they have put in an affidavit from the officer that says she was going 41 and the Court made a finding that he at least testified you were going 41.

There's nothing in the record where you say how fast you were going or anything like that. Maybe you just think it doesn't make any difference because --

MS. AMATUCCI: It is -- it is in the record.

THE COURT: What is -- tell me.

MS. AMATUCCI: Are you ready?

THE COURT: Yeah. Absolutely.

MS. AMATUCCI: The order after trial on the merits --

THE COURT: Tell -- tell me what you're reading.

MS. AMATUCCI: This is the trial -- the trial.

THE COURT: Is there a document number on it? I mean, I'm asking just so I can note it for the record.

MS. AMATUCCI: 00836.

THE COURT: 00836. No, no, no.

00 -- Charli, can you look at what she's

holding so I can get --

THE LAW CLERK: I know. It's Judge Patten's order.

THE COURT: Oh, you mean the judge's order, the judge's verdict, Mrs. Amatucci?

MS. AMATUCCI: Oh, are you talking to me? I'm sorry.

THE COURT: Yeah.

MS. AMATUCCI: What?

THE COURT: Are you reading from the judge's order?

MS. AMATUCCI: Yeah, the judge's order after trial on the merits.

THE COURT: Thank you. Go ahead.

MS. AMATUCCI: Okay. Now, the judge did say I did disobey the police when I didn't stop. Is that what you're talking about? Or you're talking about the speeding?

THE COURT: Yeah.

MS. AMATUCCI: All right.

THE COURT: I'm saying -- you just said to me --

MS. AMATUCCI: Okay. That's right.

THE COURT: Right. So --

MS. AMATUCCI: He -- he says that it was a

setup; that my speeding -- that I never was speeding. The judge goes on to explain that according to his proof, it was a setup; that -- that the police actually were -- were detaining me as a setup. And here's how the judge mentions that that -- that -- when they -- the pursuit by the police was a setup; that Emerson was told to -- to chase me. He was told to pursue me before I got to the sheriff's office. And that's what the -- how the judge defends me.

And he's saying --

THE COURT: I'm pulling it up right now, Mrs. Amatucci. Just a second. I want to read --

MS. AMATUCCI: Oh, yeah.

THE COURT: -- it with you.

MS. AMATUCCI: That's better.

THE COURT: It's document 138.

MS. AMATUCCI: What? Document 464-2014-CR-00836.

THE COURT: Hold on. Okay. I have it. Yeah.

MS. AMATUCCI: All right. So get to page 2.

THE COURT: Page 2. Yup. What paragraph?

MS. AMATUCCI: Okay. The first paragraph.

THE COURT: Where it says, the evidence presented?

MS. AMATUCCI: Yeah. Okay.

THE COURT: I'll read it out loud.

The evidence presented through the officer's testimony shows that he was traveling toward the downtown area of Wolfeboro on Center Street and was advised by district that the person of interest involved in the incident he was responding to had left that location. It is shown by dispatch log State's Exhibit 7 that the officer had been advised of a description of the defendant's car. Although he testified that he was not on the lookout for her, it is reasonable to infer that he was, indeed, on the lookout for the defendant. The dispatch log, Exhibit 7, appears to support the inference.

MS. AMATUCCI: Okay?

THE COURT: Yeah.

MS. AMATUCCI: He was on the lookout for me. It was --

THE COURT: I agree.

MS. AMATUCCI: Okay.

THE COURT: That's the evidence, yeah.

MS. AMATUCCI: But that's not all.

THE COURT: Okay.

MS. AMATUCCI: Now, on the one, two -- on the third paragraph --

THE COURT: Yeah.

MS. AMATUCCI: -- on the end of the third paragraph, what does it say?

It also appeared -- read that.

THE COURT: It also appeared -- I don't --

MS. AMATUCCI: The third paragraph.

THE COURT: Yeah, I'm looking at it.

MS. AMATUCCI: Two under that one.

THE COURT: I don't have "it also appeared." I have -- the third paragraph says, "The officer testified."

MS. AMATUCCI: Wait a minute. It starts with "it is at this point."

The paragraph starts --

THE COURT: That's two paragraphs down, okay.

MS. AMATUCCI: Yeah.

THE COURT: Quote --

MS. AMATUCCI: The end of it.

THE COURT: The end?

MS. AMATUCCI: At the very end.

THE COURT: Okay.

In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his cell phone about who he should be pursuing.

MS. AMATUCCI: About who he should be

pursuing. It was a setup. It was a setup.

THE COURT: I -- I agree that the officer --

MS. AMATUCCI: I was never speeding.

THE COURT: Can you let me finish my sentences, please? I agree with you -- I'm saying I agree with you.

Is it -- am I -- Mrs. Amatucci, let me ask you a question. Am I allowed to speak today?

MS. AMATUCCI: Are you obviously what?

THE COURT: Am I allowed to speak in here today, in this courtroom? Is it okay with you? Because I'm expressing that I agree with you; the evidence appears very much that he was looking for you. Yes. Okay?

MS. AMATUCCI: Which means I'm innocent.

THE COURT: Okay, but I asked you a question a minute ago and you told me you were going to show me the answer --

MS. AMATUCCI: Okay.

THE COURT: -- in the record. I'm going to try it one more time.

This order says that the officer testified that you were clocked at 42 miles per hour. I asked you, have you put in the record evidence of how fast you were going? And you said yes. I can't find it in the

record where you say how fast you were going.

MS. AMATUCCI: You know what I said? I was not speeding.

THE COURT: Speeding. Because --

MS. AMATUCCI: And I have proof by two people.

THE COURT: Well, do you -- right. Because the judge said you were not guilty, right?

MS. AMATUCCI: The judge said I was not speeding.

THE COURT: Well, see, the --

MS. AMATUCCI: The judge said I was not speeding. Wait a minute. Let me get that.

THE COURT: I have it. It's right in front of me. I can see it.

MS. AMATUCCI: No. No.

THE COURT: You have to let me ask my questions, Mrs. Amatucci, or I'm not going to spend any more time listening to you.

MS. AMATUCCI: That's answering your question.

THE COURT: Well, it's a -- you were found not guilty of speeding. Okay? That's -- that's different than finding how fast you were going. You were not guilty of the crime of speeding because even if you were going 42 --

MS. AMATUCCI: But I wasn't.

THE COURT: That's my question. When you say I wasn't, right --

MS. AMATUCCI: And the judge says I wasn't.

THE COURT: Where does he say that?

MS. AMATUCCI: Yeah, that's what I'm trying to tell you. Wait a minute.

Okay.

THE COURT: Yeah.

MS. AMATUCCI: On page 2 at the very end --

THE COURT: Yeah.

MS. AMATUCCI: -- read where he says the defendant -- read on the right, "the defendant," go ahead.

THE COURT: The defendant continued to travel northbound on Center Street, Route 28, albeit apparently not speeding along the way --

MS. AMATUCCI: Ha-ha-ha.

THE COURT: -- for approximately four miles before she pulled over.

Right.

MS. AMATUCCI: I was not -- when he was saying albeit not speeding, he knows I was not speeding.

THE COURT: That's -- that's -- he's saying you weren't speeding after the police tried -- started to pursue you and even the officer said you weren't

speeding at that point.

I'm asking you about when you were first observed by the officer, when he determined you were going 42 --

MS. AMATUCCI: Yes.

THE COURT: -- I'm just asking you what evidence in the record is there, what have you put in the record to establish your rate of speed at that point?

MS. AMATUCCI: I was not speeding. That's my rate of speed. I was -- I never speed. I've never got a speeding record. I'm 80 years old. I've never got a speeding record in my entire life.

THE COURT: But what's the -- but what's in the -- I have to decide summary judgment on the record evidence, on what they put in and what you put in.

MS. AMATUCCI: All right. You want evidence that I was not speeding?

THE COURT: Listen.

MS. AMATUCCI: I got tons of evidence.

THE COURT: Listen. But I want you to -- yes, but I want you to understand what I mean by that.

I know you were found not guilty of speeding, the crime of speeding -- or the violation of speeding. It's not a crime. You were found not guilty. But

Speeding is not a crime

Lie, lie

37 (c)

I'm -- I'm not asking about the word speeding. I'm asking about what evidence is there in the record, because I cannot find any except for what the officer said in his affidavit, what evidence is there in the record, the summary judgment record of sworn affidavits and records, that establishes your rate of speed?

MS. AMATUCCI: In the summary judgment?

THE COURT: Record.

MS. AMATUCCI: In my summary judgment?

THE COURT: In the summary judgment record, meaning all the documents and affidavits they put in and all the documents and affidavits you put in. That's what's called the summary judgment record. And I don't see evidence where you have established your rate of speed, not the guilt of the offense of speeding, but your rate of travel when the officer observed you and swore under oath you were going 42.

MS. AMATUCCI: I did put in the record --

THE COURT: Tell me.

MS. AMATUCCI: -- that there were two cars in front of me.

THE COURT: Yeah.

MS. AMATUCCI: So how could I be speeding? And even the judge mentioned it, that how could I be speeding if there were two cars in front of me?

THE COURT: Show me that.

MS. AMATUCCI: Let me think where he -- if it's not here, I have it -- I have where he said it. Wait. Where he said that --

THE COURT: I see it.

MS. AMATUCCI: Let me put --

THE COURT: I see it.

MS. AMATUCCI: You see it?

THE COURT: It's in the paragraph between the two that we just read.

MS. AMATUCCI: All right.

THE COURT: So it says --

MS. AMATUCCI: There were two cars in front of me.

THE COURT: Here's the paragraph. I'm going to read it to you. This is the one I think you're talking about, the same order. We're at document number 138-5, which is -- which is Judge -- Judge Patten's order in the case where he found you not guilty of speeding. And it -- and we're on page 3, page 3 of 5.

And it says: The officer testified that when he was near what is commonly referred to as the Mast Landing area, he observed a vehicle come around the curve which appeared to be speeding. He testified that he activated his radar at a point that two vehicles were

in the radar's range of reception.

MS. AMATUCCI: Here we go.

THE COURT: Let me finish.

The radar picked up the signal from the car moving the fastest and it was ultimately determined that vehicle was driven by the defendant and the radar readout showed the defendant was traveling 42 miles per hour in a posted 30 mile per hour zone. This area, showing the officer's point of view, is depicted on the two photographs entered as State's Exhibit 6.

So he mentioned two vehicles, but I don't see where he said how could she be speeding. I don't -- I don't see that in the record. I don't see him questioning --

MS. AMATUCCI: Why don't you use common sense.

THE COURT: All right.

MS. AMATUCCI: If I'm behind two cars, how could I be speeding?

THE COURT: Well, first of all, if you read this carefully, he doesn't say you were behind two cars. He said the officer saw --

MS. AMATUCCI: Well, I was. I'm telling you, there were two cars in front of me and I have proof.

THE COURT: I know, but what you tell me today isn't the summary judgment record. A summary judgment

42 ...

record is the officer's affidavit, this court order and the records in the record, not just what you decide to say to me today.

MS. AMATUCCI: The judge said -- the judge said there were two cars in front. He said --

THE COURT: Who --

MS. AMATUCCI: He mentioned --

THE COURT: Mrs. Amatucci, I just read to you what he said. He said that there were two cars coming around the turn, one of which was yours. He didn't say two in front of you.

MS. AMATUCCI: No, there were two in front of me. And I'll prove it.

THE COURT: I know that's what you say, but --

MS. AMATUCCI: Well, I'll prove it.

THE COURT: I'm going to ask -- listen, I'm going to ask you one more time.

Show me in the record where you have established or even alleged your rate of speed at the time the officer clocked you at 42. Because he has sworn to that. It is in the record. I need to know where it says -- not that you claim that I was not guilty of speeding or I was not committing the offense of speeding. I need to know where you have shown that you were not traveling at a rate of speed in excess of

the posted speed limit.

MS. AMATUCCI: But even if I was, it's not -- it's not the crime. It's not a crime. Even if I was, it's not a crime. So what are we talking about here?

THE COURT: Here's what we're talking about here. The statute says that if you're just -- even if it's not a crime, if you're going faster than the speed limit, it's a prima facie case, probable cause. You have to be able to prove there was no probable cause, okay, in this case.

MS. AMATUCCI: I don't care about the speeding. I care about the -- the unlawful arrest. Forget speeding.

THE COURT: The unlawful arrest is for speeding. And --

MS. AMATUCCI: You don't get arrested for speeding in New Hampshire.

THE COURT: Well, that's -- that's usually true, but --

MS. AMATUCCI: I --

THE COURT: -- it doesn't -- but it doesn't mean you can't in New Hampshire.

MS. AMATUCCI: Can you make this easy for me, please? I'm not guilty of nothing. And my -- and their summary judgment -- let's continue with their summary

judgment.

THE COURT: All right.

MS. AMATUCCI: So that we can cover all these issues.

THE COURT: Okay.

MS. AMATUCCI: All right.

So now -- now they're saying Emerson had probable cause, but they're talking about the speeding. He did not have probable cause to arrest me. So their --

THE COURT: Mrs. Amatucci --

MS. AMATUCCI: -- probable cause issue --

THE COURT: Mrs. Amatucci, you disobeyed a police officer over and over. You probably --

MS. AMATUCCI: We are not talking about the offense -- and we're going to talk about that after.

We are not talking with the offense of disobeying a police officer. I was stopped for speeding.

THE COURT: You -- you were also stopped and you were detained --

MS. AMATUCCI: We're not talking about what I --

THE COURT: I know you think we're not -- we can't take -- we can't take --

MS. AMATUCCI: This case is not about disobeying the police officer. This case is about --

THE COURT: Yes.

MS. AMATUCCI: -- my unlawful arrest for speeding.

THE COURT: I understand that.

MS. AMATUCCI: All right.

THE COURT: I understand that.

MS. AMATUCCI: So?

THE COURT: But -- here's the so.

But you can't -- you can't just divorce from the reality of the facts of the case. You were still also stopped, arrested, detained and prosecuted --

MS. AMATUCCI: Yeah.

THE COURT: -- for disobeying an officer and you were found guilty.

MS. AMATUCCI: But that's a separate -- well, right. But that --

THE COURT: I know it's a separate --

MS. AMATUCCI: Let me answer that.

THE COURT: I know it's a separate --

MS. AMATUCCI: Let me answer that.

THE COURT: Okay.

MS. AMATUCCI: According to the courts -- okay, and I got that information -- according to the

courts, if the arrest was unlawful to begin with, because they claimed they arrested me for speeding and that's why they were chasing me, right? All right.

So you're chasing me because I'm speeding and I disobeyed you by not stopping because I had no right to not stop. I had no right to not stop.

THE COURT: Yeah.

MS. AMATUCCI: However, if the speeding was unlawful, which is why they were chasing me -- that's why they were chasing me -- if the speeding was unlawful, then I could never have been put in jail for the disobeying a police officer. Because if I wasn't speeding, why would it be a defense to disobey them to stop when I didn't have to stop because I was never speeding?

THE COURT: Well, we're --

MS. AMATUCCI: You can't -- you can't deny it. I've got -- I've got the --

THE COURT: So you --

MS. AMATUCCI: The Court said it.

THE COURT: I just tried to go through that with you, though, and you wouldn't -- not only would you not listen, you couldn't point me to any evidence that you weren't going 42 miles an hour.

MS. AMATUCCI: I wasn't speeding. It

doesn't -- it doesn't matter if I was going one mile an hour or 30 miles an hour. I wasn't speeding. And I got proof I was never speeding.

THE COURT: I think it does --

MS. AMATUCCI: And you just --

THE COURT: I think it does matter.

MS. AMATUCCI: -- saw that it was a setup. It was a setup to get me. It was a setup to get me. Not because I was speeding. It was a setup.

THE COURT: All right. What's your next point?

MS. AMATUCCI: I'm not going to win here. I'm not going to win here. I want to go over -- so the point is there was no probable cause because the -- because they had no right to arrest me for speeding. So Emerson had no probable cause to arrest me, period. All right?

Forget the probable -- because that's -- that's what the Fourth Amendment malicious prosecution is about. It's about the unlawful seizure. And there is only one claim in this case, the Fourth Amendment malicious prosecution. And that is -- that's about an unlawful seizure, not about speeding.

Now, now they say Chase did not participate in your arrest. He didn't? Okay. Let's get -- let's get

4P (c)

the affidavit of Emerson -- okay? -- Emerson -- Emerson's affidavit about my -- why he arrested me.

THE COURT: Yeah.

MS. AMATUCCI: And what does he say? Amatucci failed to -- so they're trying to say that Chase had nothing to do with this.

THE COURT: Uh-huh.

MS. AMATUCCI: Amatucci failed to yield to both -- both, both -- fully marked Wolfeboro police cruisers. Both. That was Chase. Who had -- both who had their emergency lights and sirens activated at the time. Both. Chase was there, chasing me. He was involved. And let's get -- let's get the deputy sheriff's statement that Chase was -- Chase was part of this arrest.

He's -- the deputy sheriff said: Amatucci was then taken into custody by Officer Emerson, the Wolfeboro Police and I.

So now they have no defense that Chase was not involved. So I got that over with.

So now --

THE COURT: Yeah.

MS. AMATUCCI: Now they say Chase -- Chase assumed the arrest was proper when she failed to stop.

The arrest? That was a seizure. The arrest

was not proper because the seizure was unlawful. The seizure was unlawful. And I -- they had no right to arrest me.

Okay. So that's out of the question. That's out of the question.

Now they talk about official immunity and all kinds of immunity. There is no immunity, neither by the state or the federal government, when an officer acts against the federal civil rights laws.

So if Emerson is guilty of an unlawful seizure when he arrested me, put me in jail, detained me and prosecuted me, then there's no -- there's no immunity at all.

Now we get to the next thing, a malicious prosecution. What they are saying is she was maliciously prosecuted because the officer had probable cause.

There's no probable cause for an unlawful seizure under the federal constitution. An unlawful seizure, an unlawful incarceration, an unlawful detention. It's all about detention. I was detained for more than a year.

Under the Fourth Amendment, the federal constitution, there was no probable cause to arrest me, to detain me, to put me in jail.

Now we'll get the next one.

So there was no -- no -- there was no right for a prosecution, to prosecute me. No right whatsoever.

And that's all, unless they have others --

THE COURT: Okay.

MS. AMATUCCI: -- they have other reasons --

THE COURT: I'll listen to them -- I'll listen to them and then if you want to respond to what they said, I'll give you another chance.

MS. AMATUCCI: What?

THE COURT: I will listen to them. They're allowed to speak, too. And after they're done speaking, if you want to respond, I'll give you an opportunity. Okay? Is that okay with you?

MS. AMATUCCI: Yeah.

MR. MULLEN: Thank you, your Honor.

Your Honor, feel free to interrupt if you have any questions as I'm going through the argument today.

It's my understanding that we're only here on the federal claim, too. Our summary judgment addressed the state law claims that were at issue at the time and I believe there's only one claim left.

THE COURT: Ms. Amatucci has tried to withdraw her state law claims many times, but I'm leaving them in

NO STATE LAW CLAIMS ALLOWED IN MY SUMMARY JUDG.

N

51 (c)

He CANNOT LEAVE IN CLAIMS THAT ARE NOT IN MY SUMMARY JUDGMENT

the case because -- for her protection mostly. FRAUD

MS. AMATUCCI: Wait. Excuse me, please? Don't protect me. I'll protect myself.

THE COURT: Well, do you --

MS. AMATUCCI: The state law claims are not in this case, period.

THE COURT: Fine. Done. They're out of the case. YET THIS BIAS JUDGE DISMISSED MY SUMMARY JUDG. AND ALLOWED THE DEFENDANTS JUDGMENT BASED ON A STATE LAW CLAIM OF UNDER MALICIOUS PROSECUTION

MR. MULLEN: Your Honor, the first argument we had is that there was probable cause for the stop here.

As the Court has I think understood in the order that was issued by Judge Patten, I believe in June of 2015, he states on several occasions that she was going 42 miles per hour in a posted 30 mile per hour zone. And that's a finding of the Court. And that in and of itself gives Officer Emerson a reason to stop her and make inquiry and decide whether to cite her for speeding or not.

THE COURT: I understand your argument about that, but what do you say is a finding of the Court? Is the finding that she was going 42 or that the officer said she was going 42?

MR. MULLEN: I -- the find -- we're saying that the officer -- the Court said on -- there's at least two occasions in the order and I can read from the

order that the Court --

THE COURT: I'm not sure I agree with you, to be honest. I'm not sure I agree with you about that. But go ahead.

MS. AMATUCCI: When he says these, can I abut them as he goes along? Because then it'll all get confused.

It's not about the stop.

THE COURT: Stop. He's allowed to --

MS. AMATUCCI: It's about the arrest.

THE COURT: He's allowed to make an argument.

MS. AMATUCCI: No, but let's end it now. Let's -- let's deal with each issue as he talks about it. It's not about the stop. He did have probable cause --

THE COURT: Stop shouting at the lawyer. Behave yourself, please.

MS. AMATUCCI: You wouldn't want to be in my position. Believe me, you wouldn't sit here talking sweet.

The point is it was not about the stop. It's about the arrest. A Fourth Amendment malicious prosecution is a seizure, which was the arrest, and the incarceration. All right? So that's -- that's moot.

THE COURT: Please proceed --

53 (c)

MS. AMATUCCI: That's moot.

THE COURT: I want you to answer my question because I read that order not to be a finding that she was going 42. I read it to be a finding that the officer's evidence was that she was going 42. But you tell me. I'm listening.

MR. MULLEN: On page 3 of the order, your Honor, it starts out: RSA 265:60-I prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards that then existed.

Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limits specified, in this case, 42 miles per hour in the posted 30 mile per hour zone, shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

That's one -- that's one area where he says in this case.

THE COURT: Yeah, that's arguable. What -- show me -- what page is that on again?

MR. MULLEN: Page 3 of the Court's order, your Honor, of Judge Patten's order.

THE COURT: And that --

MR. MULLEN: It's the paragraph that begins

with RSA 265:60.

THE COURT: Yeah. My -- my pages don't match your pages. Hold on.

There it is, yeah. That's my page 4, not page 3. It's page 3 of the order, page 4 of the document that you filed.

MR. MULLEN: Right.

THE COURT: Okay. Let me look at it again.

Yeah.

MR. MULLEN: It says --

THE COURT: The applicable statute prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards that existed.

Subsection two of the applicable statute provides that the speed of a vehicle in excess of the limits specified, in this case, 42 miles per hour in a posted 30 mile per hour zone, shall be prima facie evidence that the speed is not reasonable or prudent, that it is unlawful, unquote.

And that's -- that's -- prima facie evidence equals probable cause for the purposes of this.

MR. MULLEN: Correct. Correct.

THE COURT: So your view is that the

reference, "in this case, 42 miles per hour," that's a finding of her rate of speed?

MR. MULLEN: Yes, your Honor. And --

MS. AMATUCCI: That's not a Fourth Amendment malicious prosecution.

MR. MULLEN: Further on in that paragraph, your Honor, a sentence that begins: Here we have the seem -- I think it's a typo, but -- it says seemly, but seemingly conflicted --

THE COURT: Seemingly conflicted evidence.

MR. MULLEN: In that no specific conditions presented that there were actual or potential hazards at the place and time that the defendant was traveling 12 miles per hour over the posted speed limit.

THE COURT: Yeah.

MR. MULLEN: He states it again.

And then, although not stated here, but I think reasonably inferred, he would not have had to have gone to the rationale that the speed that she was traveling was reasonable and prudent under the conditions if he didn't determine that she was in excess of the posted speed limit.

So he had to make a determination that she was in excess of the posted speed limit in order to reach the next prong which was that even if she was going 42

in a 30, that that speed was not unreasonable for the conditions that were presented as evidence.

THE COURT: Well, let me ask you this, though. Let's assume I accept your argument that the Court actually found that she was traveling 42. What about, you know -- so for collateral estoppel purposes, though, does a finding made pursuant to an acquittal, right -- this was pursuant to an acquittal, so it wasn't a necessary finding for the ruling.

Is that binding on Mrs. Amatucci? I'm not sure it is under the doctrine of -- it's not res judicata; it's a collateral estoppel issue. This is a civil case. And the Court did find it -- if I accept your proposition -- but a finding that was made pursuant to an acquittal, I'm not sure if it has collateral estoppel effect.

MR. MULLEN: Well, your Honor, I would argue it does.

THE COURT: Yeah.

MR. MULLEN: First of all --

THE COURT: If I asked you for authority for that -- I don't think have you it handy, right?

MR. MULLEN: Not with me, your Honor.

THE COURT: All right.

MR. MULLEN: I don't have it handy.

But in this particular case, you know, the fact that the judge clearly made a determination in this case and said she was going 12 miles per hour, he had to make the determination in order to reach the --

MS. AMATUCCI: No, he went by --

MR. MULLEN: -- elements of --

MS. AMATUCCI: He went by --

MR. MULLEN: -- 265:60.

MS. AMATUCCI: -- the testimony of the cop. And he says it right here; he went by their testimony, not by facts.

So of course the cop is going to say what I -- that I was doing that to defend himself. He went by the testimony of the police officer, not by the facts in front of him.

THE COURT: Okay. Ms. Amatucci, do you see how the lawyer's standing up at the podium and he's talking to me? That means, under the rules of court or the customs of court, you should not interrupt him.

MS. AMATUCCI: But you said that I could -- I can -- I can --

THE COURT: First of all, I never said you could do this point by point. You asked if you could or you shouted and demanded it --

MS. AMATUCCI: But this is the time when

you --

THE COURT: -- as you were doing -- I know. But at least let him finish his points instead of just -- he never interrupted you one time when you were speaking.

MS. AMATUCCI: Because he's got nothing to say.

THE COURT: No, he's got plenty --

MS. AMATUCCI: He's got defense on what I'm saying.

THE COURT: Well, I -- listen. He would know better to interrupt you even if he had something to say and he's saying it right now. You're being very impolite. All right? And you're being disruptive. I'm going to ask you to restrain yourself. I gave you every opportunity to say everything you wanted and you repeated yourself four or five times on every point.

MS. AMATUCCI: Yeah, but you just said that I can -- I can --

THE COURT: I did not say that, number one; you demanded it, and I did not say it was fine. The fact that you demand things --

MS. AMATUCCI: How can I defend myself?

THE COURT: The fact -- you do get to defend yourself, but we take turns speaking in court. It's

like a dinner table. Only one person at a time can speak. It's especially important here because we have a court reporter who's trying to type everything we say. So when you interrupt repeatedly, it makes it difficult for her. Don't do it again, please.

Go ahead, Mr. Mullen.

MR. MULLEN: Thank you, your Honor.

So I think the Court did make a finding. And over and above that, so with that finding of 42 in a 30, Officer Emerson had the right to stop her to inquire about whether -- what her speed was. NOT TO ARREST FOR SPEEDING

Then she continued, as the Court knows, for four miles and then he had the right to stop her for disobeying an officer, because he had his strobe lights and siren going.

The second argument we make is that -- with regard to probable cause is that we submitted the affidavit of Officer Emerson in which he stated that he was a certified radar operator, that his radar machine had been certified and tested; at that particular time it was within the certification period, and the radar showed that he -- that she was going 42 miles per hour in a 30 mile per hour zone. And that has not been contradicted.

Given that --

60 (c)

THE COURT: Let me ask you about that.

I'm asking you, Mr. Mullen, as an officer of the court --

MR. MULLEN: Yes.

THE COURT: It's important to me that Mrs. Amatucci, who is *pro se*, gets every benefit here --

MR. MULLEN: I understand, your Honor.

THE COURT: -- when it comes to inferences of proof. Because I've combed the record carefully; the Court has really exhaustively examined this record. I'm trying to find evidence where Mrs. Amatucci ever said how fast she was going or even said she wasn't going 42, ever. She always has said I wasn't speeding --

MR. MULLEN: Correct.

THE COURT: -- but that's the same to the Court as saying I was found not guilty of speeding or I wasn't committing the offense of speeding.

But I can't find any evidence that contradicts the officer's observation that she was going 42 or the Court's finding of it, as you point out.

So -- so have you also examined the record on this question? Have you looked carefully for -- and I'm asking you as an officer of the court, have you found any evidence where Mrs. Amatucci has put in, you know, competent, admissible, summary judgment record evidence

61 (c)

9/24/18

of her rate of speed?

FRAUD, FRAUD RATE OF SPEED DOESN'T MATTER - THE UNLAWFUL ARREST MATTERS

MR. MULLEN: I have not found any evidence where she -- about her rate of speed. I did see one comment, I believe, in a pleading where I think the Court said I was not speeding.

THE COURT: Yeah.

MR. MULLEN: I -- but I have not seen any evidence in -- in this case and in a previous case that was dismissed last year, your Honor, where she said what her rate of speed was.

THE COURT: Okay. Let me ask -- she has her hand up. I want to give her a chance to add something.

Yes, Mrs. Amatucci?

MS. AMATUCCI: Hello? This is not about speeding.

THE COURT: I knew you were going to say that.

MS. AMATUCCI: It's about the Fourth Amendment, which is the arrest. So tell him to stop it. I don't want to hear about speeding.

THE COURT: Please proceed.

MR. MULLEN: Okay. So, your Honor, I think I've talked about with regard to his affidavit, he's -- that's not been contradicted by anybody. So on that basis, we believe that he had probable cause and having probable cause, the malicious prosecution claim fails.

IT IS NOT A MALICIOUS PROSECUTION 6 2 (C) CLAIM, IT IS A 4th AMEND. CLAIM

MAYBE - FOR THE STOP BUT NOT TO ARREST

EXHIBIT 4

With regard to Chief Chase I make another argument. Chief Chase has submitted an affidavit which we filed with our motion for affidavit in which he states he followed -- he got there after she was in custody and in handcuffs and was in the process of being put in the back seat of the vehicle. He did not arrest her, he did not give any instructions on how the officer was to proceed, and he did not participate in her prosecution. LIE - See Deputy Sheriff's Testimony - he, Emerson and Police Chief Chase who was in the 2nd cruiser Arrest Her

So that fact -- those facts show that Chief Chase had no involvement with regard to her arrest and he should be dismissed as an individual defendant because of that.

We also make a qualified immunity argument to the extent that the Court believes that both Officer Emerson and Officer Chase participated in the arrest of Ms. Amatucci. We claim, and there's been no contradictory evidence to the contrary, that Officer Emerson, again, through his radar clocking, had her going 42 miles per hour in a posted 30 mile per hour zone. Any reasonable officer could have then decided to stop the individual for speeding and that is not an unreasonable act. And given that, even if the fact that the --

THE COURT: What about arrest? What about

arrest?

MR. MULLEN: The arrest in this case is -- and I'm -- I thought it was clear and that it would be -- I'll take the -- I'll apologize for that, but the arrest was for disobeying a police officer, your Honor.

MS. AMATUCCI: It was both.

MR. MULLEN: The stop was for speeding.

MS. AMATUCCI: It was --

MR. MULLEN: Initially was supposed to be for speeding. If she had stopped -- and I'm speculating here. If she had stopped, I fully believe she would have been given a warning, your Honor, but she continued for four miles and that's -- that's what precipitated the arrest and the seizure and the booking and the prosecution on the misdemeanor charge. I PROVED I WAS ARRESTED & DETAINED FOR SPEEDING

That's what she was arrested for. She was given a citation on the -- for -- on the complaint, it said violation. Show up in court on such and such a date. And -- but the arrest was for disobeying a police officer, which is a misdemeanor; at the time, misdemeanor A, which was subsequently reduced to a misdemeanor B.

THE COURT: Do we have that citation in the record then?

MS. AMATUCCI: Why was I prosecuted for the

speeding? Why was I prosecuted for the speeding?

MR. MULLEN: I believe that I did put it in the record with the documents from the appeal to the New Hampshire Supreme Court. I think those were attached. But if the Court would like, I can get those documents to you.

THE COURT: I -- I actually -- well, the reason I -- I raised that is because that citation to appear, in conjunction with this bond, which is for -- which shows that her detention appears to have been for disobeying and failure to stop, that would -- that would strengthen the inference that the arrest, detention, prosecution -- well, at least the -- not the prosecution, but the arrest and detention, actually don't attach to the speeding charge..

MR. MULLEN: And I -- I can get a copy of that. I thought I provided it to your Honor, but I have not -- and I will look at one of my attachments.

THE COURT: Yeah.

MR. MULLEN: If I haven't, I can -- I can get that for you, your Honor. I have a copy of the citations.

THE COURT: All right. I'm curious to see that. But go ahead.

I don't think I'm going to ask you to

supplement the record --

MR. MULLEN: Okay.

THE COURT: -- at this point --

MR. MULLEN: All right.

THE COURT: -- unless I give Mrs. Amatucci the same opportunity.

MR. MULLEN: Okay. Then -- and then the last is, as I think we discussed, the Monell claim. I think Mrs. Amatucci confirmed it; there's absolutely no evidence of custom or policy of the town and here we're asking to prove a negative. We don't have a custom or policy.

I took directly from her complaint and from her reply to our motion for summary judgment what her Monell claim was and I kind of quoted exactly from her complaint and what her reply to the motion -- our motion for summary judgment and stated from that, assuming that's what she was claiming the policy or custom of the town was. And this basically stated and gave you an affidavit from the town manager and -- that there's no custom or policy in the town of Wolfeboro not to investigate police misconduct.

I think the Court might be able to take -- I'll call it judicial notice, but have seen documents in which the town does investigate police misconduct and is

aware of that. So ...

THE COURT: Yeah. Yeah.

MR. MULLEN: So, I mean, that would be our argument, your Honor. We believe that --

MS. AMATUCCI: Excuse me. What did you say yeah for? Your Honor, what did you say yeah for? What are you -- what are you determining is the truth when you said yeah?

THE COURT: Nothing.

MS. AMATUCCI: Because this whole case is about the police chief not wanting to investigate, the whole case is that, and how he retaliates when I accused the police of misconduct. This whole case. So there's no yeah, yeah. There's no no.

MR. MULLEN: Your Honor, based on that and based on our submissions, we would ask that summary judgment be granted to the town on the Monell claim against both Officer Chase and former chief -- excuse me -- Officer Emerson and Former Chief Chase, on the claims against them.

Unless the Court has any questions, we don't have anything further.

THE COURT: All right.

MS. AMATUCCI: He's still basing everything on the speeding. This is a Fourth Amendment malicious

prosecution. The fact was -- all right, I was going a hundred miles an hour. Okay? You want to hear that? Let's say I was going a hundred miles an hour. He still could not have arrested me because speeding is not a crime in New Hampshire.

So if you don't -- listen. You are giving me a hard time because you're not fair. You're not actually coming out and saying this is all baloney.

THE COURT: It's not baloney.

MS. AMATUCCI: I --

THE COURT: It's not baloney.

MS. AMATUCCI: My foot -- you're sitting there to determine the law, the federal law. That's all you're supposed to do. You only have to say that I was arrested unlawfully, seized unlawfully, because speeding is not a crime.

THE COURT: It appears to --

MS. AMATUCCI: That's all you have to say.

THE COURT: It appears to me you were arrested lawfully for disobeying a police officer and failing to stop.

MS. AMATUCCI: This is not about disobeying a police officer. This is not about that. That's a separate claim.

THE COURT: That's what -- that's what you

say, but the evidence suggests that that's why you were stopped. The fact that you say it's not true, you would have to present evidence to show --

MS. AMATUCCI: He was saying I was speeding. He just got through telling ten minutes to say I was speeding.

THE COURT: Well, that's because --

MS. AMATUCCI: He's not saying --

THE COURT: That's --

MS. AMATUCCI: I was not stopped because I was disobeying.

THE COURT: You --

MS. AMATUCCI: He just got through saying that I was stopped because I was speeding.

THE COURT: You were -- you were --

MS. AMATUCCI: I don't want to hear another word.

THE COURT: Okay.

MS. AMATUCCI: I don't want to hear you on that.

So now we know that I was arrested unlawfully --

THE COURT: I'm going to take a --

MS. AMATUCCI: -- and speeding has nothing to do with it.

9/24/18

Now, disobeying police officer -- I should have never went to prison, I should have never went to jail, because the stop was unlawful. So when the stop is unlawful, even though they -- they claim I disobeyed a police officer, I don't go to jail. So that's another Fourth Amendment malicious prosecution. You don't go to jail if the stop was unlawful to begin with.

THE COURT: All right. I'm going to take a brief recess, talk to my law clerk for a few minutes, and I'll come back out in just a few minutes.

MR. MULLEN: Thank you, your Honor.

(Recess taken from 11:38 a.m. until 11:43 a.m.)

THE COURT: All right. The Court does not have any more questions, but if there's anything else that either side wants to say to the Court, this is your -- yes, Mrs. Amatucci?

MS. AMATUCCI: I want to deal with the summary judgment. I want --

THE COURT: That's what we've been doing all day today.

MS. AMATUCCI: No, that -- that has nothing to do with the summary judgment. I --

THE COURT: Just tell me what you want me to do and I'll listen to you.

MS. AMATUCCI: I want you to allow my summary

Not to answer that I should never have been stopped if I was not speeding as proven by trial judge deputy sheriff Thompson

Now, disobeying police officer -- I should have never went to prison, I should have never went to jail, because the stop was unlawful. So when the stop is unlawful, even though they -- they claim I disobeyed a police officer, I don't go to jail. So that's another Fourth Amendment malicious prosecution. You don't go to jail if the stop was unlawful to begin with.

THE COURT: All right. I'm going to take a brief recess, talk to my law clerk for a few minutes, and I'll come back out in just a few minutes.

MR. MULLEN: Thank you, your Honor.

(Recess taken from 11:38 a.m. until 11:43 a.m.)

THE COURT: All right. The Court does not have any more questions, but if there's anything else that either side wants to say to the Court, this is your -- yes, Mrs. Amatucci?

MS. AMATUCCI: I want to deal with the summary judgment. I want --

THE COURT: That's what we've been doing all day today.

MS. AMATUCCI: No, that -- that has nothing to do with the summary judgment. I --

THE COURT: Just tell me what you want me to do and I'll listen to you.

MS. AMATUCCI: I want you to allow my summary

Not to answer that I should never have been stopped if I was not speeding as proven by trial judge deputy sheriff Thompson

judgment, which is only based on a Fourth Amendment malicious prosecution based on the unlawful arrest.

And I -- and -- I want -- under due process, you have to allow my summary judgment because you yourself made a statement that -- that you allowed my Fourth Amendment malicious prosecution. You allowed it, which means where the summary judgment is based on the Fourth Amendment malicious prosecution, the violation under federal law -- you already allowed it. You already determined that there was a First Amendment -- Fourth Amendment malicious prosecution.

So it's like you're saying that there is a summary judgment -- that the summary judgment -- I have to issue the summary judgment because it's mandated once you determine that there was a Fourth Amendment malicious prosecution.

THE COURT: None of that's --

MS. AMATUCCI: You can't find it.

THE COURT: None of that's true. None of that's accurate.

MS. AMATUCCI: But you didn't -- you didn't allow my Fourth Amendment malicious prosecution?

THE COURT: I allowed it to proceed. I didn't allow it --

MS. AMATUCCI: Right.

THE COURT: -- in terms of granting it.

MS. AMATUCCI: All right. Before you allow it, what do you have to do? You have to investigate it, don't you?

THE COURT: No, I don't investigate. I just decide on evidence that you produce. This Court --

MS. AMATUCCI: Okay.

THE COURT: This isn't Europe.

MS. AMATUCCI: All right.

THE COURT: The courts don't investigate things.

MS. AMATUCCI: There we go. So you -- you decided on the evidence --

THE COURT: I allowed the case to proceed. I didn't grant summary judgment for you.

MS. AMATUCCI: No, that's right, because I never had it before you. You never gave me a chance to talk about the summary judgment.

THE COURT: You had -- you had it today. That's what --

MS. AMATUCCI: That's right.

THE COURT: Okay.

MS. AMATUCCI: Now I'm telling you that in order for you to allow my Fourth Amendment malicious prosecution, you determined that on the evidence beyond

a reasonable doubt before you made that statement that you was going to allow it.

THE COURT: I never --

MS. AMATUCCI: You wouldn't allow something that you don't --

THE COURT: I never --

MS. AMATUCCI: -- didn't investigate.

THE COURT: I never -- I never made any determination beyond a reasonable doubt. This is a civil case. I don't know what you're talking about.

MS. AMATUCCI: Well, that -- what made you allow it? What made you allow the Fourth Amendment malicious prosecution?

THE COURT: Because you stated -- you stated a claim. You asserted a claim. You pleaded the facts.

MS. AMATUCCI: Yeah, but before you allow it, you have to investigate it.

THE COURT: No.

MS. AMATUCCI: Oh.

THE COURT: No.

MS. AMATUCCI: Really?

THE COURT: Really.

MS. AMATUCCI: So if I said that I committed murder, then you allow it? I mean, don't you have to investigate? If someone says, I committed murder --

THE COURT: Yeah.

MS. AMATUCCI: -- don't you have to investigate before you say, oh, it's true, it's not true.

THE COURT: I -- Mrs. Amatucci, I really apologize. I just can't follow you right now. I don't know what you're saying. I -- I don't know what you're talking about.

MS. AMATUCCI: So you're saying that -- that you took my word for it.

THE COURT: At the -- at the initial stage of the pleading, I allowed your case to proceed. We all -- we always take the plaintiff's word for it at the beginning of a case and then we get to a part of the case called summary judgment and then trial.

MS. AMATUCCI: Yeah.

THE COURT: At that point, we stop taking people's word for it and we make them produce evidence.

MS. AMATUCCI: No. At summary judgment you do have to take a word for it. Summary judgment --

THE COURT: I know what you mean. You mean that --

MS. AMATUCCI: Not -- in order for you to determine summary judgment, you have to look at all the evidence.

Did you look at all the evidence?

THE COURT: Yes.

MS. AMATUCCI: Okay. Did you see where the arrest is considered unlawful in New Hampshire for speeding? Did you see that?

THE COURT: I -- what I saw was that you were arrested for -- you were arrested for failing to obey a police officer and failing to stop. That's what I saw happened in this case.

MS. AMATUCCI: A Fourth Amendment malicious prosecution, which is what you allowed, is all about the unlawful arrest, not about --

THE COURT: I know, but the evidence doesn't -- the evidence does not establish that you were arrested for speeding. The evidence establishes that you were arrested for failing to obey and disobeying a police officer and refusing to stop. That's what the evidence suggests. And you haven't done anything --

MS. AMATUCCI: I was --

THE COURT: -- to rebut that.

MS. AMATUCCI: -- prosecuted for speeding.

THE COURT: But I --

MS. AMATUCCI: Is that evidence?

THE COURT: Yes, but you were also prosecuted at the very same time --

MS. AMATUCCI: Also -- I could have been also been prosecuted for kidnapping, but we're not talking about also. We're talking about what's before this Court.

THE COURT: But the also -- see, what you don't understand is that the also does matter. The also does matter. Because everything that happened to you, all right, for the speeding citation --

MS. AMATUCCI: But we're only talking about the --

THE COURT: You're --

MS. AMATUCCI: We're only talking about one issue.

THE COURT: You're only talking about one issue, but I have to talk about reality and the facts and what happened in the case. I have to look at evidence. They've provided evidence. And despite many, many times of explaining that --

MS. AMATUCCI: They never provided evidence for the unlawful arrest, the unlawful arrest, the unlawful arrest. What evidence did they produce for the unlawful arrest? Nothing. They cannot tell you that I was lawfully arrested.

THE COURT: And --

MS. AMATUCCI: That's the issue. And

you're -- you -- you -- you better allow my summary judgment today because if not, you're warring against the Constitution and I'm going to have you disbarred. I'm going to have -- you according to the law, you have to allow my summary judgment, because --

THE COURT: For the record, Mrs. Amatucci's standing, screaming, and --

MS. AMATUCCI: Due process --

THE COURT: -- and pointing at the Court.

MS. AMATUCCI: -- due process -- you are ignoring due process summary judgment. You have to process that summary judgment today. Deny it -- deny it or allow it.

THE COURT: I -- I promise you by the end of today you'll have a court order ruling on your motion for summary judgment, Mrs. Amatucci, and ruling on your motion for summary judgment, Mr. Mullen. I promise.

MS. AMATUCCI: What -- wait a minute. Their motion for summary judgment is based on the stop, the speeding. This is not about the speeding. You can't even allow their summary judgment based on speeding because this case is not based on speeding.

So how are you going to judge that? That's moot. That has nothing to do with a Fourth Amendment malicious prosecution. A prosecution is due to the

8-31 2018

seizure, the unlawful seizure, which was the arrest, which was the incarceration --

THE COURT: But that --

MS. AMATUCCI: -- which was the detention, which was the prosecution --

THE COURT: But the evidence --

MS. AMATUCCI: It has --

THE COURT: The evidence is that all of that was based on a failure to stop and a disobeying a police officer.

MS. AMATUCCI: No, the failure to stop was based on the unlawful speeding. They were -- they were --

THE COURT: But, see -- okay. Let me explain -- let me explain it to you.

The evidence says that you were found not guilty of speeding, but the evidence also says that when the officer tried to pull you over for speeding, that was lawful. That was lawful.

I was never speeding I was a set-up

MS. AMATUCCI: Why was it lawful --

THE COURT: Because --

MS. AMATUCCI: -- if I wasn't speeding?

THE COURT: Because you were traveling 42 miles an hour. And the statute --

MS. AMATUCCI: But that's -- that's not a

crime.

THE COURT: Let -- you need to read the --

MS. AMATUCCI: I shouldn't have been stopped.

THE COURT: Stop interrupting me.

The statute -- there's a statute that says it's prima facie evidence for the case if you were traveling over the speed limit. That's the problem. The stop was lawful because you were traveling over the speed limit. All the evidence shows that. The stop was lawful. All right?

Maybe there's an argument somewhere that the prosecution was unlawful. The problem is that prosecution was run parallel with a very lawful prosecution of which you were found guilty for disobeying an officer and failing to stop, which was supported by probable cause and proven after a trial.

MS. AMATUCCI: Okay. The law of speeding. You claim -- you claim that he had a right to stop me because he claimed I was speeding. But under the law, I could speed 11 miles over the limit.

THE COURT: Yes.

MS. AMATUCCI: Right?

THE COURT: Yes.

MS. AMATUCCI: Which means he had no probable cause to stop --

9/24/18

THE COURT: No --

MS. AMATUCCI: -- me --

THE COURT: -- see that's the problem.

MS. AMATUCCI: Wait a minute.

Plus it was determined that the weather was not -- the weather was good, it was a good day, and they had no -- they had no reason --

THE COURT: That's what -- that's right.

MS. AMATUCCI: -- to stop me.

THE COURT: That's why you were found not guilty.

MS. AMATUCCI: That's right.

THE COURT: But that doesn't mean the stop was unlawful.

MS. AMATUCCI: Yes. The judge -- you're forgetting. The judge said --

THE COURT: Mrs. Amatucci, every day --

MS. AMATUCCI: -- that I was not speeding.

THE COURT: Mrs. Amatucci, you don't -- you just don't get it.

Every day in this country people are found not guilty of crimes. That doesn't mean their arrests were unlawful. If the arrests were supported by probable cause, the arrests are still lawful. The judge never made a finding that that stoppage of you was unlawful or

Oh yes he did - he said it was a set-up - the pursuit was a set up

80 (c)

that attempting to pull you over for speeding was unlawful.

MS. AMATUCCI: He never found it was unlawful?

THE COURT: No.

MS. AMATUCCI: I was found not guilty.

THE COURT: That's different.

Listen, I can't do this anymore. I'll explain it the best I can --

MS. AMATUCCI: No, wait a minute. He also found that I was not speeding.

THE COURT: He found you were not guilty --

MS. AMATUCCI: He found -- it was a --

THE COURT: Stop interrupting me.

MS. AMATUCCI: You are going to allow my summary judgment based on the unlawful arrest, incarceration, and forget the speeding.

THE COURT: Stop.

MS. AMATUCCI: This is not about weather.

THE COURT: Stop screaming at the Court and sit down, please. Stop screaming at the Court.

MS. AMATUCCI: Even if he had probable cause --

THE COURT: Stop screaming at the Court and sit. You'll have my order by the end of the day.

You should be ashamed of the way you've

behaved in this court.

MS. AMATUCCI: No. I should -- you should be ashamed of what you -- you're not standing by me. You should be ashamed that you're warring against the Constitution by not --

THE COURT: I understand that's how you feel. I do. But the fact of the matter is, Mrs. Amatucci --

MS. AMATUCCI: But wait a minute. You are not determining the law when you're determining my summary judgment. We're talking about the law, not about your opinion. We're talking about an unlawful seizure, an unlawful arrest, and you don't want to talk about that.

THE COURT: I --

MS. AMATUCCI: You keep saying, oh, you were speeding, you were speeding, you were speeding --

THE COURT: Mrs. Amatucci, you are incorrect. I have explained to you now repeatedly why your stop was lawful.

MS. AMATUCCI: You have no --

THE COURT: You happen to disagree with me. Be seated.

MS. AMATUCCI: You have no --

THE COURT: Be seated, please.

MS. AMATUCCI: I am going to sit here until you let my summary judgment pass.

THE COURT: You may not sit there, because I have to go back to my chambers and issue an order in this case. You are not going to be permitted to sit here until that happens. You're going to be escorted from the courtroom by a court security officer if you don't leave voluntarily. This isn't a campsite. If you want to wait.

MS. AMATUCCI: I'm going to wait for my order --

THE COURT: If you want to wait for the order -- if you want to wait for the order --

MS. AMATUCCI: Yeah.

THE COURT: -- you can wait downstairs in the lobby.

MS. AMATUCCI: No, tell me now. Tell me now.

THE COURT: I'm not deciding now.

MS. AMATUCCI: There's no decision to make. You have to go by the law. The law says I should never have gotten arrested.

THE COURT: I --

MS. AMATUCCI: That's the case.

THE COURT: The -- the law says to me --

MS. AMATUCCI: Yeah.

THE COURT: Having read all the facts in here, the law says to me --

MS. AMATUCCI: No, there's one fact; was I lawfully arrested. Answer that. Answer that right now.

THE COURT: Yes.

MS. AMATUCCI: Was I lawful -- I was lawfully arrested?

THE COURT: Yes.

MS. AMATUCCI: But according to New Hampshire, speeding is not a crime. So how could I be arrested if it's not a crime?

THE COURT: The evidence shows you were arrested for --

MS. AMATUCCI: Wait a minute. Just talk to me. Never mind the evidence.

If speeding is not a crime, how could I be arrested? Answer that.

THE COURT: You could be arrested for a crime you committed at the same time as you were speeding --

MS. AMATUCCI: No, I'm talking about speeding. This is all about speeding.

THE COURT: That -- it's not.

MS. AMATUCCI: It's speeding.

THE COURT: It's not --

MS. AMATUCCI: No, I was prosecuted for speeding.

THE COURT: We're adjourned.

THE CLERK: All rise.

MS. AMATUCCI: This -- you are corrupt to the core.

He thinks he's going to get away with this. I'm going to have him disbarred.

(Proceedings concluded at 11:56 a.m.)

25(c)

C E R T I F I C A T E

I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 11/19/18

Liza W Dubois
LIZA W. DUBOIS, RMR, CRR