8354

THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Josephine Amatucci

v.

Attorney Mullen, officially, Joseph Laplante individually

Stuart Chase, officially and indivdually, Town of Wolfeboro, offically

Ransmeier & Spelling.


SEEE EVIDENCE ATTTACHED

AN UNLAWFUL PROSECUTION FOR SPEEDING,

FRAUD HAS NO STATUTE OF LIMITATIONS

ANY DECISION OF THE COURT DOES NOT OVERIDE THE

FEDERAL CONSTITUTION, THE LAW OF THE LAND


JURISDICTION

This cause of action happened in New Hampshire. The Complaint that is before the Court AGAIN AGAIN AGAIN AGAIN, is under 42 U.S. 1983.

PARTIES

1.   Attorney Daniel J. Mullen, individually and Ransmeier & Spellman officially,

2.   Mr. Joseph Laplante, INDIVIDUALLY.

3.   Town of Wolfeboro

RELEVANT FACTS

4.   This case is .....ONLY BASED ON THE VIOLATION OF THE FEDERAL CONSTITUTION.

1

where evidence in the Court will show There is....." NO DISPUTE"....that the Plaintiff was MALICIOUSLY PROSECUTED for speeding, when speeding is not a crime in New Hampshire. A violation of the Fourth Amendment of an unlawful detention of her liberty rights, a violation of Due Process, under the Fourteenth and Sixth Amendments, an unlawful trial in violation of the Sixth Amendment, and a violation f a speedy trial clause. HELLOOOOOOOOOOOOOOOO honey, Speeding is not a crime in New Hampshire, yet see the evidence in the files, before the Court, that proved that the Plaintiff was UNLAWFULLY PROSECUTED FOR SPEEDING. PROSECUTED FOR SPEEDING, PROSECUTED FOR SPEEDING. ...............did you hear me, that Therefore, this was a Fourth Amendment violation. The Plaintiff was PROSECUTED FOR SPEEDING, PROSECUTED FOR SPEEDING, a violation NOT A CRIME. that the Plaintiff was being MALICIOUSLY PROSECUTED for speeding. That this court UNDER THE LAW, will put this case before a jury IMMEDIATELY, after years and years where this case was not resolved under the Federal Constitution, for rights for damages as allowed under 1983. Or there will be great reprecussions for the Courts and the defendants ...........ABUSE OF THE ELDERLY.. Where the defendants all of the defendants each and every one of the defendants committed DELIBERATE FRAUD to deny the Plaintiff her constitutional rights, in TRESPASSING THE LAW OF THE LAND, where there are reprecussions.

5.      The prosecution of the Plaintiff for speeding, was a violation of the Fourth Amendment, of an unlawful seizure without Probable Cause, and a violation of the time limit allowed for a trial under the Sixth Amendment, and where speeding is not a crime in New Hampshire, and under a Monell claim, agaisnt the Town of Wolfeboro, for the acts of police chief Stuart Chase . All in violation of Due Process. Also, that Chase went inside the Plaintif's car without a warrant , stole her evidence,

and had her car towed, all without a warrant.

6.      All the facts as stated above by the former Police Chief Stuart Chase, eventually led to his termination as a police chief in the Town of Wolfeboro.

7.      An unlawful prosecution, an unlawful Fourth Amendment seizure, and an unlawful trial in violation of the Sixth Amendment, all in DENIAL OF THE PLAINTIFF'S FEDERAL CONSTITUTIONAL RIGHTS, a DEPRIVATION OF HER LIBERTY RIGHTS, where:

"No person shall be derpived of life, liberty or property without Due Process of Law."

WHEREFORE, Due to the Fraud of the defendants and in violaltion of the Plaintiff's Federal Civil Rights, against an elderly person, of 83 years old, The Plaintiff has doubled her damages, due to the fact that the defendants have in a continuing course of conduce have denied the Plaintiff her rights to a jury trial for the violation of these rights, for so long a time period, causing her so much pain and suffereing, under fraudulent misrepresentation, where there is NO STATUTE OF LIMITATION, where fraud is never final, where this claim was never addressed or ruled on by the Court, Therefore, and due to the excessive and continuous fraud, the Plaintiff will ask a jury of her peers for one million dollars TRIPLE DAMAGES for the pain and suffering of an elderly person of 85 years old who has in a continuing conduct by the defendants has suffered from the Fraudulent Misrepresentations of the Plaintiff's claims, by distorting the records, perverting the meaning of the Plaintiff's claims, in a corruption which lies in the process. depriving the Plaintiff of a realistic assessment of her claims, when the defendants showed their agenda of lying, distortion, and all other forms of intellectual dishonesty. After many years looking for justice, this case will go before a jury of her peers WITHOUT FURTHER DELAY, FOR THE UNLAWFUL MALICIOUS PROSECUTION, WITHOUT PROBABLE CAUSE . By the defendants.

Respectfully,

Josephine Amatucci

April 11, 2024

c. Ransmeier & Spelling. Town of Wolfeboro

*Josephine Amatucci*

3

6/25/15

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Carroll County                                                                  3rd Circuit Court-District Division

IN RE: STATE OF NEW HAMPSHIRE V. JOSEPHINE AMATUCCI

*ONe MilliON DollARS*

464-2014-CR-00836

"2015"
9 YEARS AGO

ORDER AFTER TRAIL ON THE MERITS

This matter came on for a trial on the merits of two complaints entered against the defendant. The State and defendant participated. After due consideration of the testimony and other evidence submitted, as well as the court's view of the roadway area involved, the court enters the following findings of fact, rulings of law and order. The defendant is found NOT GUILY of the violation offense of *NOT CRIMINAL* speeding, complaint and GUILTY of the class B misdemeanor for disobeying a police officer.

The State entered two complaints against the defendant. The violation level offense alleges an event of what is commonly referred to as speeding. The specific allegations are that on May 7, 2014, the defendant drove her vehicle on a way, identified as Center Street, Wolfeboro, NH, at a speed greater than was reasonable and prudent under the conditions prevailing, and specified that defendant was traveling at a speed of 42 mile per hour, when the prima [sic] "facia" lawful speed at the time and place of violation being 30 mph. The class B misdemeanor offense alleges that on the same date and location, while operating her motor vehicle, she purposely neglected to stop when signaled to stop by law by a law enforcement officer, who was in a fully marked police cruiser and who signaled defendant to stop by use of emergency lights and sirens.

The evidence presented at trial shows, beyond a reasonable doubt, that defendant was operating her motor vehicle on a public way in New Hampshire, being Center Street in Wolfeboro, NH, on May 7, 2015. The evidence also shows that the officer who filed the complaint was a certified radar operator and that the radar unit in the officer's cruiser was certified and still within the certification period when the

cruiser by using preset tuning forks, both before and after his shift, and found determined the radar unit to be operating properly and accurately.

The evidence presented through the officer's testimony shows that he was traveling toward the downtown area of Wolfeboro on Center Street, and was advised by dispatch that the person of interest involved in the incident he was responding to had left that location. It is shown by dispatch log, State's exhibit 7, that the officer had been advised of description of the defendant's car. Although he testified that he was not on the look-out for her, it is reasonable to infer that he was indeed on the look-out for the defendant. The dispatch log, State's Exhibit 7, appears to support this inference.

The officer testified that when he was near what is commonly referred to as the "Mast Landing" area, he observed a vehicle come around the curve which appeared to be speeding. He testified that he activated his radar at a point that two vehicles were in the radar's range of interception. The radar picked up the signal from the car moving the fastest. It was ultimately determined that vehicle was driven by the defendant and the radar readout showed that defendant was traveling 42 miles per hour in a posted 30 mile per hour zone. This area, showing the officer's point of view, is depicted on the two photographs entered as State's exhibit 6.

It is at this point that the officer advised dispatch that he was "attempting to stop her on Center Street" and gives dispatch the defendant's license plate number. Exhibit 7 at 1252. At 1253, the officer advises dispatch that the "reason for the stop was 42 in a 30 by Mast Landing". Exhibit 7. Clearly the implication of this exchange is that the officer knew that the vehicle he observed was the defendant and he was going to try and stop her. In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his cell phone about who he should be pursuing. ← /RAP

The officer testified that he activated his blue strobe lights and siren on his cruiser, pulled into the Mast Landing parking lot to turn around and began to pursue the defendant. The defendant continued to travel northbound on Center Street, Route 28, albeit apparently not speeding along the way, for approximately four miles, before she pulled over in response to a Carroll County Sheriff's Department standing in the road and signaling her to stop.

There was some conflicting evidence presented in the officer's report which referred to two cars being situated ahead of the defendant's vehicle, whereas in his testimony, he stated that there only two cars, of which defendant was one, and the one that was traveling the fastest. Otherwise, there was no specific testimony about the road or whether conditions, the amount of traffic on the road generally, or on any side street, any pedestrian activity, or any other specific evidence of actual or potential hazards under those circumstances on the date and time of the alleged offense. The court's view of the location where defendant is alleged to have been speeding shows a well-traveled, narrow roadway, with multiple intersecting streets and driveways, but a clear view of the roadway ahead in either direction for some distance.

RSA 265:60, I prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in the posted 30 miles per hour zone, "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Here we have the seemly conflicting evidence of no specific conditions presented that there were actual or potential hazards at that place and time that the defendant was traveling 12 miles per hour over the posted speed limit, but that that speed is prima facie unreasonable and imprudent. This conflicting evidence leaves the court with no basis for a finding, beyond a reasonable doubt, that the defendant was traveling at a speed which was unreasonable and imprudent for the conditions existing, having in mind the actual and potential hazards associated with those conditions. Therefore, there must be a finding of not guilty.

As to the complaint alleging the class B misdemeanor for disobeying a police officer, RSA 265:4, I, (c) instructs that while driving a vehicle, no person shall purposely neglect to stop when signaled to stop by any law enforcement officer who signals the person to stop by means of audible or visual emergency warning signals. Clearly the evidence presented shows, beyond a reasonable doubt, that the defendant did not stop when signaled to do so by the officers, using his emergence warning lights and

esented, the circumstances presented by the evidence allows for no other conclusion than that the defendant acted purposefully in choosing to not stop as directed by the officer. Therefore, she is found guilty of the charge of disobeying a police officer.

While the specific statute specifies that a person who violates the provisions of RSA 265:4, I, (c) shall be guilty of a class A misdemeanor, the State made the choice before the beginning of trial to prosecute the matter as a class B misdemeanor, even after the defendant had had the benefit of a court appointed counsel through portions of the pre-trial proceedings, and then discharged her counsel by her own choice, and pursued the matter as a self-presented defendant.

The clerks' office will scheduled the matter for a sentencing hearing on the class B misdemeanor conviction for disobeying a police officer.

So Ordered.

_____6/25/2015_____
Date

_____[signature]_____
Judge
James R. Patten, Justice
3rd Circuit Court

*[handwritten: 1/27/17  BINGO]*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
Plaintiff,

v.    Case No.: 15-CV-00356-JL *[handwritten: Void]*

James O'Brien, et al.,
Defendants.

*[handwritten: NOW CASE 00237 DID A VOLUNTARY DISMISSAL]*

### DEFENDANT CHASE'S OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC 149) OF JUDGE LAPLANTE'S ORDER (DOC 147) BASED ON THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC 142)

Defendant Chase, through counsel, objects to plaintiff's Motion for Reconsideration (Doc 149) for the following reasons:

The plaintiff's Motion for Reconsideration is based on the premise that Judge Laplante misunderstood plaintiff's proposed claim regarding alleged malicious prosecution. There is no evidence the Judge misunderstood anything or that the claimed misunderstanding would have mattered. Rather, he approved the Magistrate Judge's Report and Recommendation (Doc 142) which lays out the bases in detail for denying plaintiff's proposed amendment as futile.

The plaintiff's Motion for Reconsideration also falsely argues that Judge Patten, in the criminal case against her, found no probable cause. On the contrary, there is no place in that Judge's order where he finds "no probable cause" expressly or impliedly. Ms. Amatucci was charged with speeding and failure to obey an officer. The judge in that case specifically found that Ms. Amatucci was driving 42 mph in a 30 mph zone and found that she failed to stop for police pursuing her for about four miles. See Defendants' Motion for Judgment on the Pleadings and exhibits to that motion. Thus, there was probable cause for her arrest and prosecution on

*[handwritten: The Judge LAPLANTE is Trying to say MY ARREST WAS ONLY For the DisoBeying offense. This Proves otherwise.]*

both speeding and failure to obey.[1] The trial judge found that Ms. Amatucci was not guilty of speeding (even though she exceeded the speed limit by 12 mph) solely because the prosecutor failed to introduce evidence of road conditions that day. That does not mean that there was no probable cause for the arrest or the prosecution.

The prosecutor's failure to put in such evidence, or even Ms. Amatucci's success in beating the speeding violation, does not retroactively create lack of probable cause for the arrest and prosecution. In fact, the trial court found (and Ms. Amatucci is bound by collateral estoppel on that point), that she exceeded the speed limit by 12 mph. Moreover, the trial judge found that she failed to obey police officers pursuing her for almost four miles and that she was guilty of the crime she was charged with, failing to obey. Thus, the trial court's findings clearly establish the opposite of what Ms. Amatucci now argues. The trial judge's rulings, contrary to Ms. Amatucci's arguments, show there was, in fact, probable cause.

Moreover, as argued in defendant's original objection (doc 137), this proposed claim is barred both by res judicata and collateral estoppel for all the reasons argued in defendants' Motion for Judgment on the Pleadings (Doc 132).

While Judge Laplante has not yet ruled on the Magistrate Judge's Report and Recommendation (Doc 144), the Magistrate Judge's Report and Recommendation has proposed that the Court dismiss all plaintiff's claims against Chief Chase because those claims are barred by res judicata. The proposed malicious prosecution claim (whether under common law or as a Section 1983 claim) also would be barred by res judicata as it arises out of the same transaction or occurrence as the prior case, and thus, the proposed amendment would be futile. The claim,

---

[1] If Ms. Amatucci had not refused to stop, it is doubtful, however, that she ever would have been arrested for speeding alone.

speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so for over 4 miles and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose, but it would not have mattered to them, and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response, above, to Paragraph 7. Defendant O'Brien further specifically denies all the allegations against him. His involvement in this matter, contrary to the plaintiff's false and groundless allegations, was extremely limited.

- Mr. O'Brien responded, as he was legally required to do, to a call from police dispatch that Ms. Amatucci was causing a disturbance at the Town offices. By the time Ofc. O'Brien arrived at the Town offices, Ms. Amatucci had already left. Mr. O'Brien's sole involvement after that was to make a radio call back to police dispatch confirming that Ms. Amatucci was no longer at Town Hall. O'Brien did not make a phone call to Ofc. Emerson, did not call the Sheriff's Department and did not request anyone to chase or stop or arrest Ms. Amatucci. He was not in any way involved in the pursuit of Ms. Amatucci and was not present when she was pursued, stopped or arrested. After Ms. Amatucci was arrested and taken away, Officer O'Brien went to the location of Ms. Amatucci's car to relieve Chief Chase so that Chief Chase did not have to wait for the tow truck to arrive. As to the statement in the police log about Ofc. Emerson trying to stop "her," that was not a quote of Ofc. Emerson's police call to dispatch, but rather a conflation in the log prepared by the dispatcher, William Riley, of Emerson's statement that he was turning around to chase a speeding car (which he did not know was Ms. Amatucci). Officer

9

*[Handwritten annotations: "ARREST FOR SPEEDING ✗", "AND", "This verifies my entire First Amendment claim - I WAS UNLAWFULLY ARRESTED FOR SPEEDING", "PROSECUTED FOR SPEEDING"]*

Pasteurize
For Repair



Josephine Anatucci
PO Box 272
Wolfeboro Falls, NH 03896-0272

United States District Court
Office of the Clerk
55 Pleasant St. Room 110
Concord, N.H. 03301

