9099

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Town of Wolfeboro, Linday Murray, in her

official and individual status

### JURISDICTION

1.    This action is broght pursuant to 42 U.S.C. 1983 . Jurisdiction is founded upon 28 U.S.C. 133 (1x3x4)

### PARTIES

2.    Town of Wolfeboro, 84 South Main St. Wolfeboro , NH 03894

### RELEVANT FACTS

3.    This is a 1983 Suit Against the Town, a Municipality,   A FINAL DECISIONMAKER OF POLICY, in a suit for a Monell Claim as outlined in the 1978 case of Monell v. Department of Soceial Services of City of New York, 436 U.S. 658. And violation of the Right to Know Law.

4.     That The Plaintiff will show (1) the violation of a constitutional right (2) by an official act (3) that resulted from a "government policy or custom".   Proof by preexisting paterns (Connick v. Harris) of conscience disregard, of failure to supervise, in a pattern of similar violations of he Plaintiff's Constitutional Rights, of indifference to the consequences, of

1

conscience disregard, of a DE-FACTO POLICY.

5.      That the policy/custom of the Town exhibited a "deliberate indifference" to the

Plaintiff's Constitutional rights. Dwares v. City of New York, 985 F.2d 94, 100-1001 (2d cir.

1993).

6.      That the Plaintiff will show a "government policy or custom" sufficient to establish

municipal liability under Monell as established by ONE of four ways, as stated below.

        (1)The existence of a formal policy which if officially ENDORSED by the Municipality;
(2) actions taken or decisions made by municipal OFFICIALS with FINAL DECISION MAKING
authority, which caused the alleged violation of the Plaintiff's civil rights; (3) in a practice so
persistent and widespread that it constitutes a custom of which constructive knowledge can be
implied on the part of the policymaking officials; (4) and fairlure by policymakers to proeperly
train or SUPERVISE their subordinates, amounting to "deliberate indifference" to the Plaintiff's
rights when they come in contact with the municipal employees. See Castanza v. Town of
Brookhaven and Bd. of Cty. Comm'rs of Bryan Ctyl, Okl. v. Brown, Davis v. City of New York.
Dwares v. City of Nl.Y.

7.      Where under r Monell there is ..........NO QUALIFIED IMMUNITY Defense available to a

municipality . See the case of Owen v. City of Independence, 455 U.s. 622, 657 (1980)

("municipalities have no immunity frm damges liability flowing from their constitutional

violations") As the Second Circuit succinctly explained in Askins v. Doe. (Cir. 2013).

Municipalities are held liable if they adopt customs or policies that violate FEDERAL law and

result in tortious violations of a plaintiff's rights, regardless of whether it was clear at the

time of the adoption

        "WHETHER THE ACTION IS TAKEN ONLY ONCE OR TO BE TAKEN REPEATEDLY"

8.      A Plaintiff can establish liability even for a single incident under a Monell policy

claim. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125-26 (2d cir. 2004) ("It is not

necessary for plaintiff to prove that a municipality has followed a particular course of action

repeatedly in order to establish the existence of municipal policy, RATHER, A SINGLE ACTION

TAKEN BY A MUNICIPALITY IS SUFFICIENT TO EXPOSE IT TO LIABILITY." See Pembaur v. City of

2

Cincinnati, 475 U.S. 469, 480 (1986).

9.      "If the decision to adopt a particular course of action is directed by those WHO

ESTABLISH GOVERNMENTAL POLICY, the municipality is equally responsible whether that

action is to be taken........... ONLY ONCE .......(MONELL) or to be taken repeatedly."

        "THERE IS NO QUALIFIED IMMUNITY DEFENSE AVAILABLE TO A MUNICIPALITY" see Owen
v. City of Independence (1980) ("municipalities have NO IMMUNITY from damages liability
flowing from THEIR CONSTITUTIONAL VIOLATIONS"). Towns and Counties do not enjoy
immunity from suit - either absolute or qualified-under 1983.

10.     The Plaintiff will establish a violation of her constitutional rights, for the liability

of the municipality under Monell.   Liability under 1983 is imposed on a municipality when it

has a custom or poicy that violates federal law and, pursuant to that policy,

        See case of Segal v. City of New York. ("Monell extends liability to a municipal
......ORGANIZATION.... where that organization's failure TO TRAIN, or the policies or customs
that it has sanctioned, led to an independent constitutional violation".

11.     To establish a judgment and liability against the Town, against a municipal

organization, the Plaintiff will show that she suffered a tort in violation of FEDERAL LAW,

committed by the municipal actors, a result from a custom or policy of the municipality. See

Monell and Also Jones v. Town of E.Haven (2d Cir. 2012). Wilson v. town of Mendon.

12.     Qualified Immunity is a defense available only to "individuals" from damages for

liabiity flowing from their constitutional vioaltions. A municipality may not assert qualified

immunity. Municipalities are held liable if they adopt customs or policies that violate

FEDERAL LAW and result in a violation of the plaintiff's rights.

        TOWN'S CUSTOMS POLICIES ACTS THAT VIOLATED THE PLAINTIFF'S FEDERAL CIVIL RIGHTS

                                        ARE AS FOLLOWS


..........................................................................................................................................

                                            3

### JANUARY 4, 2004

At this time the Plaintiff was incarcerated by police officer James O'Brien, only to find out that O'Brien was not a police officer at the time, that he had transfferred to the Moultonborough Police Department, which was in December 2003. That the Town in its custom/policy continuously denied that O'Brien was not a police officer when he came to the jailhouse, clothed in a police uniform, in a police cruiser, where he put her the day before, and took her to the Arraignment at the Courthouse where he was accusing her of a crime she never committed, WHEN HE WAS NOT AN EMPLOYEE OF THE TOWN OF WOLFEORO. Where the Town in a continuing conduct of customs and policies OF DECEIT denied that the payroll history of O'Brien showed that he was not an employee of the Town of Wolfeboro at the time he came to the Jailhouse IN A POLICE UNIFORM to take the Plaintiff to an Arraignment for a crime the town knew she never committed. When the Town falsely stated that O'Brien terminated January 4, 2004 when the truth is that was that January 4th was when his last day of payroll was available due to the fact that his first week of employmet with the town was held back until termination, when this week was paid the last week of termination from the town. After termination of one's employment. When the first week of payment is held back until the last week of employment. And in denial by the Town of O'Brien's violation of her Federal Constitutional Rights, when he falsely accused her of a crime she never committed, of violating a criminal protective Order, when the Order issued by the court was actually a ....Civil Restraining Order in Equity.... as verified by the issuing Judge, where the police have no authority under Civil Orders.

..............................................................................................................................................

### NOVEMBER 13, 2014

A statement UNDER OATH by the town Manager Dave Owen, stating,

"Without limitation, your blaiming and/or suing James O'Brien jared Wleman, Stuart

4

chase, Robert Houseman and others for REASONABLE ACTIONS that they took in response to
your ABUSIVE, OUT-OF-CONTROL and UNLAWFUL CONDUCT. Your behavior includes but is not
limited to : your erratic driving in August 2013, and your conduct on May 7, 2014 .

Here the Town Manager is calling my claim of an unlawful prosecution for speeding by Chase
as unawful conduct, and unlawful conduct of Houseman who put me in a room and closed
the door in the Town Hall where I had gone to report Chief Chase threatening me, when
Houseman called the police to come and get me, accusing me of causing a disturbance in the
town hall, because I was complaining about Chase when I went inside the police station to
accuse Officer Dean Rondeau, and when in retaliation Chase attacked me for doing so,
when chase threatened me and told me that if I accuse his men of misconduct he will get me
and put me in jail, which he did, when he falsely accused me of speeding and prosecuted
me for speeding, when speeding is not a crime in New Hampshire, and when the trial court
Judge found me NOT GUILTY of speeding..

.......................................................................................................................................

### AUGUST 1, 2018

### IN A DOCUMENT SUBMITTED TO THE COURT REGARDING

### JOSEPHINE AMATUCCI V. STUART CHASE

### UNDER SEAL FOR A IN-CAMERA REVIEW

This is regarding the unlawful prosecution of the Plaintiff for speeding, by the FORMER
Police Chief Stuart Chase, when speeding is not a crime in New Hampshire. And the trial
court judge Patten also found her NOT GUILTY of speeding and the Judge also stated, "the
Officer advised dispatch that he was "ATTEMPTING TO STOP HER ON CENTER STREET" Clearly
the implication of this exchange is that the officer KNEW that the vehicle he observed was
the defendant and HE WAS GOING TO TRY AND STOP HER." Here the Judge is admitting
stopping the Plaintiff was a set-up and that she was NEVER SPEEDING.

5

Attached with the Documents submitted to the Court for IN-CAMERA REVIEW by the Court,

the Town Manger submitted the following statements:

"the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affidavit submitted on her on February 4, 2015, and find THERE IS NO REASONABLE BASIS FOR CONCLUDING THAT CHIEF CHASE OR ANY OTHER MEMBER OF THE WOLFEBORO POLICE DEPARTMENT ENGAGED IN UNLAWFUL CONDUCT; and "Therefore the Selectmen DECLINE to conduct any further INVESTIGATION on Chief Chase or any other member of the Wolfeboro Police Department concerning Ms. Amatucci's allegations, and ......"DECLINE TO ASK AN OUTSIDE AGENCY TO DO SO."

Here is further evidence that the town officials do do do investigate and do ignore police

misconduct, that they continued to ignore the violations of the Federal Constitutional rights

of the Plaintiff, in a sanctioned a policy and custom that lead to the furtherance of future

violations of the Plaintiff's Civil Rights by the police.

........................................................................................................................................

### 2018

Letter from then Town Manger Becky Merrow, who states that the Town has NO AUTHORITY TO INVESTIGATE CHARGES AGAINST POLICE PERSONNEL.

........................................................................................................................................

### FEBRUARY 3, 2020

On February 3, 2020 Town Manager James Pineo wrote to Plaintiff Josephine Amatucci stating

the following:

"You have requested a meeting or hearing with me as Town Manager and with the Board of Selectmen. You have rquested that the Town terminate Robert maloney, Stephen Champaigne and Police Chief Rondeau. You have requested that an OUTSIDE INVESTIGATOR be hired to look into the situation. Respectfully, I am DENYING your request for a hearing with me and the Selectmen; and denying your request that an outside investigator be hired".

### town manager investigated

"I........" HAVE INVESTIGATED" YOUR ALLEGATIONS ...........ENOUGH TO KNOW THAT A MEETING OR A HEARING ON THE CONDUCT OF MALONEY, CHAMPAIGNE OR CHIEF RONDEAU .............IS NOT REQUIRED..........and would not be productive. Nor do I believe that

6

an OUTSIDE INVESTIGATION IS WARRANTED".

Here, the Town Manager Pineo by .... REFUSING TO INVESTIGATE, it appears he has the

authority to investigate , but is refusing to investigate, and he states that he has the

authority over all subordinate officers and employee under his control and duty, under RSA

37:6, 11 to "appoint" upon MERIT AND FITNESS ALONE, and to remove, all subordinate

officers and employees under .....MY CONTROL.

.....................................................................................................................................

a newspaper publication ....(attached)

In a newspaper publication the former Police Chief Stuart Chase stated "Amatucci's complaints
are in Lt. Dean Rondeau's office in the ......

" PERSONNEL RECORDS".....NOT IN THE PERSONNEL FILES.

.....................................................................................................................................

JANUARY 13, 2020

In January 13, 2020 The Town Manager Pineo responded to my January 13, 2020 letter and

other letters, that the town terminate employee Robert Maloney, Steven Champaigne and

Police Chief Dean Rondeau. You have also rrequested that an OUTSIDE INVESTIGATOR BE

HIRED TO LOOK INTO THE SITUATION."

"I ......HAVE INVESTIGATED.....the ASSAULT CHARGES ......prosecuted by the Belnap county
Attorney's office, (however it was Rondeau who ORDERED the Belnap county Sheriff's Dept.
to prosecute me for an Assault when they all knew an Assault never occurred.) as in the files
was a statement by the alleged victim of the Assault, Mr. Maloney, stating he had NO INJURY.
Pineo further stated, "NOR DO I BELIEVE THAT AN OUTSIDE INVESTIGATION IS WARRANTED.

Here Mr. Pineo is admitting that the Town officials DID  INVESTIGATE POLICE MISCONDUCT .

DID INVESTIGATE THE .......the ......"FILES"......but not the ........."PERSONNEL RECORDS"

......WHERE I ACCUSED RONDEAU OF AN UNLAWFUL MALICIOUS PROSECUTION ACCUSING ME

OF CAUSING AN ASSAULT TO MALONEY, WHEN BEFORE HIM WAS A STATEMENT BY MALONEY

7

THAT HE HAD .......NO INJURY.

And as it turned out a witness to the event that occurred at the Town Dump, stated that

Maloney was not in the office at the Dump when I appeared, and therefore there was NO

ASSAULT that occurred on Maloney in the office of the town dump.

This evidence was all before Mr. Pineo. Where his actions and reactions to this event proves

that the Town, the Town manager, is GUILTY of a custom and or policy to deny, ignore police

misconduct which led to a continuous conduct of the police to violate the Plaintiff's Federal

Constitutional rights.

...............................................................................................................................................

### AUGUST 16, 2021

In an email stating by the Town, "There are no concerns which would cause an ADDITIONAL
INVESTIGATION ......"BY THE TOWN"......or by other agencies to INVESTIGATE chief Rondeau or
others .

...............................................................................................................................................

### DECEMBER 21, 2023

In an email by the Town it states "The Town Manager's ........OFFICE.......does not have any

files for Mr. Rondeau or Mr. Chase, and as I have said in prior emails this department (Town

Manager's Dept.) has not investigaed either employee. Yet see the August 1, 2018 evidence

above, stating that the .....TOWN...maybe not the ManAger's Dept but the TOWN admits

they have INVESTIGATED.

...............................................................................................................................................

### DECEMBER 26, 2023

In an email the Town states, "you are not entitled to review the FILES (personnel files) and

only information available to the public is dates of employment. RSA 91-A:5,IV generally

exempts from disclosure 'PERSONNEL.....and other FILES whose disclosure would constitution

8

invasion of privacy".   Hellooooo I asked to review the....." PERSONNEL RECORDS".... not the

PERSONNEL FILES.

Not so with the Right to Know Law.

.............................................................................................................................................

### MAY 15, 2024

On May 15, 2024 Town Manager James S. Pineo  responded and stated to the Plaintiff that he

looked in the DISCIPLINARY RECORDS AND INVESTIGATIVE RECORDS............NOT IN THE

PERSONNEL RECORDS .

HE LOOKED IN THE " DISCIPLINARY"  RECORDS OF "INVESTIGATIVE"  RECORDS

HE DIDN'T LOOK IN THE ................PERSONNEL RECORDS

 Town Manager Pineo FRAUDULENTLY STATED    "we have construed your request as seeking
any  DISCIPLINARY  RECORDS (not personnel RECORDS)  ...or  investigative RECORDS  in the
PERSONNEL    "FILE" . We can advise you tht the Town ...."does not have any
.....MATERIALS....responding to this request in the respective .........."PERSONNEL FILES".

Helloooo as stated by  the former Police Chief Stuart Chase,  a review of my complaints would
be in the .........."PERSONNEL RECORDS"......not in the PERSONNEL FILES.

           it is evident that there is indeed a policy of the  Town to investigate,  as  he stated
............"I HAVE INVESTIGATED" .........  a policy /custom for the Town to investigate,
complaints of police misconduct,  but that in fact there is a POLICY /CUSTOM of the town to
tolerate police misconduct ,  when the Town Manager James Pineo did indeed   inspected the
evidence of my Complaints that were  in the  ......."PERSONNEL FILES" ........AND IN THE
PERSONNEL RECORDS.....  here we see the Town manager refusing to admit the violations of the
Plaintiff's  civil rights  that are in the PERSONNEL ........."RECORDS".

           As it is therefore obvious that the Town  has a custom/policy to tolerate  POLICE

MISCONDUCT.  And in doing so TOLERATING  the police  violations of  the Plaintiff's  Federal

Constitutional rights.  oF A POLICY AND CUSTOM THAT IS SANCTIONED THAT LED TO MY

continuous CONSTITUTIONAL VIOLATIONS by the police over the years.

.........................................................................................................................................

 WHEREFORE:  That the court will allow the Plaintiff a right to a jury trial of her peers for

9

damages as allowed under 1983 for the violations of her Federal civil Rights,  as allowed   with exculpatory evidence of the Town's  POLICY OR CUSTOM to sanction  police misconduct,   a causual connection between the continuing violations of the Plaintiff's  civil rights,  by the police,  where such acts or inacts have  proven a Monell claim against the Town,  where the Town adopted a particular course of action a single decision that was improperly made,  to ignore police misconduct,  to deny the violations of the Plaitniff's  Federal Constitutional rights, as stated in the case of Pembaur v. City of Cincinnati (1978) where the acts of the police were officially..... "SANTIONED"....(encourage, allow,  tolerate)  when the violations of the Plaintiff civil rights by the police were  denied by the Town officials,  as evidence proves.  By  Town officials who establish governmental policy,  making the municipality equally responsible whether that action  is  taken only  ONCE or to be taken repeatedly under Monell.

Respectfully,

Josephine Amatucci

June 3, 2024

c.  Town of Wolfeboro

Josephine Amatucci