9099

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Town of Wolfeboro, Linday Murray, in her

official and individual status

#2 Reference

JURISDICTION

1. This action is broght pursuant to 42 U.S.C. 1983 . Jurisdiction is founded upon 28 U.S.C. 133 (1x3x4)

PARTIES

2. Town of Wolfeboro, 84 South Main St. Wolfeboro , NH 03894

RELEVANT FACTS

3. This is a 1983 Suit Against the Town, a Municipality, A FINAL DECISIONMAKER OF POLICY, in a suit for a Monell Claim as outlined in the 1978 case of Monell v. Department of Soceial Services of City of New York, 436 U.S. 658. And violation of the Right to Know Law.

4. That The Plaintiff will show (1) the violation of a constitutional right (2) by an official act (3) that resulted from a "government policy or custom". Proof by preexisting paterns (Connick v. Harris) of conscience disregard, of failure to supervise, in a pattern of similar violations of he Plaintiff's Constitutional Rights, of indifference to the consequences, of

conscience disregard, of a DE-FACTO POLICY.

5. That the policy/custom of the Town exhibited a "deliberate indifference" to the Plaintiff's Constitutional rights. Dwares v. City of New York, 985 F.2d 94, 100-1001 (2d cir. 1993).

6. That the Plaintiff will show a "government policy or custom" sufficient to establish municipal liability under Monell as established by ONE of four ways, as stated below.

(1)The existence of a formal policy which if officially ENDORSED by the Municipality; (2) actions taken or decisions made by municipal OFFICIALS with FINAL DECISION MAKING authority, which caused the alleged violation of the Plaintiff's civil rights; (3) in a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; (4) and fairlure by policymakers to proeperly train or SUPERVISE their subordinates, amounting to "deliberate indifference" to the Plaintiff's rights when they come in contact with the municipal employees. See Castanza v. Town of Brookhaven and Bd. of Cty. Comm'rs of Bryan Ctyl, Okl. v. Brown, Davis v. City of New York. Dwares v. City of NI.Y.

7. Where under r Monell there is ..........NO QUALIFIED IMMUNITY Defense available to a municipality . See the case of Owen v. City of Independence, 455 U.s. 622, 657 (1980) ("municipalities have no immunity frm damges liability flowing from their constitutional violations") As the Second Circuit succinctly explained in Askins v. Doe. (Cir. 2013). Municipalities are held liable if they adopt customs or policies that violate FEDERAL law and result in tortious violations of a plaintiff's rights, regardless of whether it was clear at the time of the adoption

"WHETHER THE ACTION IS TAKEN ONLY ONCE OR TO BE TAKEN REPEATEDLY"

8. A Plaintiff can establish liability even for a single incident under a Monell policy claim. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125-26 (2d cir. 2004) ("It is not necessary for plaintiff to prove that a municipality has followed a particular course of action repeatedly in order to establish the existence of municipal policy, RATHER, A SINGLE ACTION TAKEN BY A MUNICIPALITY IS SUFFICIENT TO EXPOSE IT TO LIABILITY." See Pembaur v. City of

Cincinnati, 475 U.S. 469, 480 (1986).

9. "If the decision to adopt a particular course of action is directed by those WHO ESTABLISH GOVERNMENTAL POLICY, the municipality is equally responsible whether that action is to be taken........... ONLY ONCE .......(MONELL) or to be taken repeatedly."

"THERE IS NO QUALIFIED IMMUNITY DEFENSE AVAILABLE TO A MUNICIPALITY" see Owen v. City of Independence (1980) ("municipalities have NO IMMUNITY from damages liability flowing from THEIR CONSTITUTIONAL VIOLATIONS"). Towns and Counties do not enjoy immunity from suit - either absolute or qualified-under 1983.

10. The Plaintiff will establish a violation of her constitutional rights, for the liability of the municipality under Monell. Liability under 1983 is imposed on a municipality when it has a custom or poicy that violates federal law and, pursuant to that policy,

See case of Segal v. City of New York. ("Monell extends liability to a municipal ......ORGANIZATION.... where that organization's failure TO TRAIN, or the policies or customs that it has sanctioned, led to an independent constitutional violation".

11. To establish a judgment and liability against the Town, against a municipal organization, the Plaintiff will show that she suffered a tort in violation of FEDERAL LAW, committed by the municipal actors, a result from a custom or policy of the municipality. See Monell and Also Jones v. Town of E.Haven (2d Cir. 2012). Wilson v. town of Mendon.

12. Qualified Immunity is a defense available only to "individuals" from damages for liabiity flowing from their constitutional vioaltions. A municipality may not assert qualified immunity. Municipalities are held liable if they adopt customs or policies that violate FEDERAL LAW and result in a violation of the plaintiff's rights.

TOWN'S CUSTOMS POLICIES ACTS THAT VIOLATED THE PLAINTIFF'S FEDERAL CIVIL RIGHTS ARE AS FOLLOWS

..............................................................................................................................................

JANUARY 4, 2004

At this time the Plaintiff was incarcerated by police officer James O'Brien, only to find out that O'Brien was not a police officer at the time, that he had transfferred to the Moultonborough Police Department, which was in December 2003. That the Town in its custom/policy continuously denied that O'Brien was not a police officer when he came to the jailhouse, clothed in a police uniform, in a police cruiser, where he put her the day before, and took her to the Arraignment at the Courthouse where he was accusing her of a crime she never committed, WHEN HE WAS NOT AN EMPLOYEE OF THE TOWN OF WOLFEORO. Where the Town in a continuing conduct of customs and policies OF DECEIT denied that the payroll history of O'Brien showed that he was not an employee of the Town of Wolfeboro at the time he came to the Jailhouse IN A POLICE UNIFORM to take the Plaintiff to an Arraignment for a crime the town knew she never committed. When the Town falsely stated that O'Brien terminated January 4, 2004 when the truth is that was that January 4th was when his last day of payroll was available due to the fact that his first week of employmet with the town was held back until termination, when this week was paid the last week of termination from the town. After termination of one's employment. When the first week of payment is held back until the last week of employment. And in denial by the Town of O'Brien's violation of her Federal Constitutional Rights, when he falsely accused her of a crime she never committed, of violating a criminal protective Order, when the Order issued by the court was actually a ....Civil Restraining Order in Equity.... as verified by the issuing Judge, where the police have no authority under Civil Orders.

.......................................................................................................................................

NOVEMBER 13, 2014

A statement UNDER OATH by the town Manager Dave Owen, stating,

"Without limitation, your blaiming and/or suing James O'Brien jared Wleman, Stuart

chase, Robert Houseman and others for REASONABLE ACTIONS that they took in response to your ABUSIVE, OUT-OF-CONTROL and UNLAWFUL CONDUCT. Your behavior includes but is not limited to : your erratic driving in August 2013, and your conduct on May 7, 2014 .

Here the Town Manager is calling my claim of an unlawful prosecution for speeding by Chase as unawful conduct, and unlawful conduct of Houseman who put me in a room and closed the door in the Town Hall where I had gone to report Chief Chase threatening me, when Houseman called the police to come and get me, accusing me of causing a disturbance in the town hall, because I was complaining about Chase when I went inside the police station to accuse Officer Dean Rondeau, and when in retaliation Chase attacked me for doing so, when chase threatened me and told me that if I accuse his men of misconduct he will get me and put me in jail, which he did, when he falsely accused me of speeding and prosecuted me for speeding, when speeding is not a crime in New Hampshire, and when the trial court Judge found me NOT GUILTY of speeding..

..........................................................................................................................................

AUGUST 1, 2018

IN A DOCUMENT SUBMITTED TO THE COURT REGARDING

JOSEPHINE AMATUCCI V. STUART CHASE

UNDER SEAL FOR A IN-CAMERA REVIEW

This is regarding the unlawful prosecution of the Plaintiff for speeding, by the FORMER Police Chief Stuart Chase, when speeding is not a crime in New Hampshire. And the trial court judge Patten also found her NOT GUILTY of speeding and the Judge also stated, "the Officer advised dispatch that he was "ATTEMPTING TO STOP HER ON CENTER STREET" Clearly the implication of this exchange is that the officer KNEW that the vehicle he observed was the defendant and HE WAS GOING TO TRY AND STOP HER." Here the Judge is admitting stopping the Plaintiff was a set-up and that she was NEVER SPEEDING.

Attached with the Documents submitted to the Court for IN-CAMERA REVIEW by the Court, the Town Manger submitted the following statements:

"the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affidavit submitted on her on February 4, 2015, and find THERE IS NO REASONABLE BASIS FOR CONCLUDING THAT CHIEF CHASE OR ANY OTHER MEMBER OF THE WOLFEBORO POLICE DEPARTMENT ENGAGED IN UNLAWFUL CONDUCT; and "Therefore the Selectmen DECLINE to conduct any further INVESTIGATION on Chief Chase or any other member of the Wolfeboro Police Department concerning Ms. Amatucci's allegations, and ......"DECLINE TO ASK AN OUTSIDE AGENCY TO DO SO."

Here is further evidence that the town officials do do do investigate and do ignore police misconduct, that they continued to ignore the violations of the Federal Constitutional rights of the Plaintiff, in a sanctioned a policy and custom that lead to the furtherance of future violations of the Plaintiff's Civil Rights by the police.

.......................................................................................................................................

2018

Letter from then Town Manger Becky Merrow, who states that the Town has NO AUTHORITY TO INVESTIGATE CHARGES AGAINST POLICE PERSONNEL.

..............................................................................................................................................

FEBRUARY 3, 2020

On February 3, 2020 Town Manager James Pineo wrote to Plaintiff Josephine Amatucci stating the following:

"You have requested a meeting or hearing with me as Town Manager and with the Board of Selectmen. You have rquested that the Town terminate Robert maloney, Stephen Champaigne and Police Chief Rondeau. You have requested that an OUTSIDE INVESTIGATOR be hired to look into the situation. Respectfully, I am DENYING your request for a hearing with me and the Selectmen; and denying your request that an outside investigator be hired".

town manager investigated

"I........" HAVE INVESTIGATED" YOUR ALLEGATIONS ...........ENOUGH TO KNOW THAT A MEETING OR A HEARING ON THE CONDUCT OF MALONEY, CHAMPAIGNE OR CHIEF RONDEAU .............IS NOT REQUIRED..........and would not be productive. Nor do I believe that

an OUTSIDE INVESTIGATION IS WARRANTED".

Here, the Town Manager Pineo by .... REFUSING TO INVESTIGATE, it appears he has the authority to investigate , but is refusing to investigate, and he states that he has the authority over all subordinate officers and employee under his control and duty, under RSA 37:6, 11 to "appoint" upon MERIT AND FITNESS ALONE, and to remove, all subordinate officers and employees under .....MY CONTROL.

..................................................................................................................................

a newspaper publication ....(attached)

In a newspaper publication the former Police Chief Stuart Chase stated "Amatucci's complaints are in Lt. Dean Rondeau's office in the ......

" PERSONNEL RECORDS".....NOT IN THE PERSONNEL FILES.

..................................................................................................................................

JANUARY 13, 2020

In January 13, 2020 The Town Manager Pineo responded to my January 13, 2020 letter and other letters, that the town terminate employee Robert Maloney, Steven Champaigne and Police Chief Dean Rondeau. You have also rrequested that an OUTSIDE INVESTIGATOR BE HIRED TO LOOK INTO THE SITUATION."

"I ......HAVE INVESTIGATED.....the ASSAULT CHARGES ......prosecuted by the Belnap county Attorney's office, (however it was Rondeau who ORDERED the Belnap county Sheriff's Dept. to prosecute me for an Assault when they all knew an Assault never occurred.) as in the files was a statement by the alleged victim of the Assault, Mr. Maloney, stating he had NO INJURY. Pineo further stated, "NOR DO I BELIEVE THAT AN OUTSIDE INVESTIGATION IS WARRANTED.

Here Mr. Pineo is admitting that the Town officials DID INVESTIGATE POLICE MISCONDUCT .

DID INVESTIGATE THE .......the ......"FILES"......but not the ........."PERSONNEL RECORDS"

......WHERE I ACCUSED RONDEAU OF AN UNLAWFUL MALICIOUS PROSECUTION ACCUSING ME OF CAUSING AN ASSAULT TO MALONEY, WHEN BEFORE HIM WAS A STATEMENT BY MALONEY

THAT HE HAD .......NO INJURY.

And as it turned out a witness to the event that occurred at the Town Dump, stated that Maloney was not in the office at the Dump when I appeared, and therefore there was NO ASSAULT that occurred on Maloney in the office of the town dump.

This evidence was all before Mr. Pineo. Where his actions and reactions to this event proves that the Town, the Town manager, is GUILTY of a custom and or policy to deny, ignore police misconduct which led to a continuous conduct of the police to violate the Plaintiff's Federal Constitutional rights.

..........................................................................................................................................

AUGUST 16, 2021

In an email stating by the Town, "There are no concerns which would cause an ADDITIONAL INVESTIGATION ......"BY THE TOWN"......or by other agencies to INVESTIGATE chief Rondeau or others .

..........................................................................................................................................

DECEMBER 21, 2023

In an email by the Town it states "The Town Manager's ........OFFICE.......does not have any files for Mr. Rondeau or Mr. Chase, and as I have said in prior emails this department (Town Manager's Dept.) has not investigaed either employee. Yet see the August 1, 2018 evidence above, stating that the .....TOWN...maybe not the ManAger's Dept but the TOWN admits they have INVESTIGATED.

..........................................................................................................................................

DECEMBER 26, 2023

In an email the Town states, "you are not entitled to review the FILES (personnel files) and only information available to the public is dates of employment. RSA 91-A:5,IV generally exempts from disclosure 'PERSONNEL.....and other FILES whose disclosure would constitution

invasion of privacy". Hellooooo I asked to review the....." PERSONNEL RECORDS".... not the PERSONNEL FILES.

Not so with the Right to Know Law.

..........................................................................................................................................

MAY 15, 2024

On May 15, 2024 Town Manager James S. Pineo responded and stated to the Plaintiff that he looked in the DISCIPLINARY RECORDS AND INVESTIGATIVE RECORDS...........NOT IN THE PERSONNEL RECORDS .

HE LOOKED IN THE " DISCIPLINARY" RECORDS OF "INVESTIGATIVE" RECORDS

HE DIDN'T LOOK IN THE ................PERSONNEL RECORDS

Town Manager Pineo FRAUDULENTLY STATED "we have construed your request as seeking any DISCIPLINARY RECORDS (not personnel RECORDS) ...or investigative RECORDS in the PERSONNEL "FILE" . We can advise you tht the Town ...."does not have any .....MATERIALS....responding to this request in the respective .........."PERSONNEL FILES".

Hellоооо as stated by the former Police Chief Stuart Chase, a review of my complaints would be in the ..........."PERSONNEL RECORDS"......not in the PERSONNEL FILES.

it is evident that there is indeed a policy of the Town to investigate, as he stated ............"I HAVE INVESTIGATED" ......... a policy /custom for the Town to investigate, complaints of police misconduct, but that in fact there is a POLICY /CUSTOM of the town to tolerate police misconduct , when the Town Manager James Pineo did indeed inspected the evidence of my Complaints that were in the ......."PERSONNEL FILES" ........AND IN THE PERSONNEL RECORDS..... here we see the Town manager refusing to admit the violations of the Plaintiff's civil rights that are in the PERSONNEL ........."RECORDS".

As it is therefore obvious that the Town has a custom/policy to tolerate POLICE MISCONDUCT. And in doing so TOLERATING the police violations of the Plaintiff's Federal Constitutional rights. oF A POLICY AND CUSTOM THAT IS SANCTIONED THAT LED TO MY continuous CONSTITUTIONAL VIOLATIONS by the police over the years.

..........................................................................................................................................

WHEREFORE: That the court will allow the Plaintiff a right to a jury trial of her peers for

damages as allowed under 1983 for the violations of her Federal civil Rights, as allowed with exculpatory evidence of the Town's POLICY OR CUSTOM to sanction police misconduct, a causual connection between the continuing violations of the Plaintiff's civil rights, by the police, where such acts or inacts have proven a Monell claim against the Town, where the Town adopted a particular course of action a single decision that was improperly made, to ignore police misconduct, to deny the violations of the Plaitniff's Federal Constitutional rights, as stated in the case of Pembaur v. City of Cincinnati (1978) where the acts of the police were officially..... "SANTIONED"....(encourage, allow, tolerate) when the violations of the Plaintiff civil rights by the police were denied by the Town officials, as evidence proves. By Town officials who establish governmental policy, making the municipality equally responsible whether that action is taken only ONCE or to be taken repeatedly under Monell.

Respectfully,

Josephine Amatucci

June 3, 2024

c. Town of Wolfeboro

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH 03896



United States District Court
District of New Hampshire
Office of The Clerk
55 Pleasant St.
Room 110
Concord, N.H. 03301